1 │ Samuel R. Watkins, Esq. (State Bar No. 272162)
2 │ swatkins@tocounsel.com
  │ THEODORA ORINGHER PC
3 │ 10880 Wilshire Boulevard, Suite 1700
  │ Los Angeles, California 90024-4101
4 │ Telephone: (310) 557-2009
  │ Facsimile: (310) 551-0283
5 │
6 │ Attorneys for Plaintiffs Coach, Inc. and
  │ Coach Services, Inc.
7 │
8 │



FILED
CLERK, U.S. DISTRICT COURT

NOV - 9 2012

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

9 │
    **UNITED STATES DISTRICT COURT**
    **CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| COACH, INC., a Maryland Corporation; and COACH SERVICES, INC., a Maryland Corporation, <br><br> Plaintiffs, <br><br> vs. <br><br> CELCO CUSTOMS SERVICE CO., a California Corporation; SHEN HUEI FENG WANG, aka "CELINE" WANG, an individual; and DOES ONE through TEN, inclusive, <br><br> Defendants. | Case No. CV11-10787 MMM (FMOx) <br><br> **SECOND AMENDED COMPLAINT FOR:** <br><br> **(I)  LANHAM ACT – § 32 (15 U.S.C. § 1114);** <br> **(II)  LANHAM ACT – § 43(a) (15 U.S.C. § 1125(a));** <br> **(III)  LANHAM ACT – § 42 (15 U.S.C. § 1124);** <br> **(IV)  TARIFF ACT – § 526 (19 U.S.C. § 1526(a)); and** <br> **(V)  CIVIL CONSPIRACY.** |

Plaintiffs Coach, Inc. and Coach Services, Inc. ("Plaintiffs" or "Coach") for their Second Amended Complaint against Defendants Celco Customs Service Co. ("Celco"), Shen Huei Feng Wang, aka "Celine" Wang ("Wang"), and Does One through Ten, inclusive (collectively "Defendants"), respectfully allege as follows:

**NATURE OF THE ACTION**

1.    This is an action for: (i) infringement of registered trademarks in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114; (ii) false designation of origin and trademark and trade dress infringement in violation of Section 43(a) of the Lanham

1  Act, 15 U.S.C. § 1125(a); (iii) unlawful importation of goods bearing infringing

2  trademarks in violation of Section 42 of the Lanham Act, 15 U.S.C. § 1124; (iv)

3  unlawful importation of goods bearing registered United States trademarks in violation

4  of Section 526(a) of the Tariff Act, 19 U.S.C. § 1526(a); and (v) civil conspiracy to

5  commit each of the foregoing violations of law.

6      2.      As described more fully herein, Wang and her company Celco played a

7  very specific, yet critical role as members of a conspiracy to import massive quantities

8  of counterfeit Coach® brand handbags and wallets into the United States.  Some

9  members of the conspiracy, named herein as John Doe defendants, had the

10  responsibility of manufacturing the counterfeit handbags and wallets in China.  Other

11  John Does had the responsibility of arranging for the transportation of the fake

12  handbags and wallets from China to the Port of Los Angeles/Long Beach aboard a

13  steamship.

14      3.      Still other John Does had the responsibility of providing the financing for

15  the manufacture and transportation of the fake handbags and wallets.  Still other John

16  Does had the responsibility of stealing the identity of an innocent company and creating

17  fraudulent import documents in the name of that company so that, if the counterfeit

18  handbags and wallets were detected and seized by the U.S. Bureau of Customs and

19  Border Protection ("CBP"), the innocent company would take the fall, and not the

20  conspiracists.

21      4.      Wang and Celco, in their positions of trust as licensed Customs brokers,

22  participated in and advanced the objectives of the conspiracy by receiving those

23  fraudulent import documents from a co-conspirator and, knowing that the documents

24  were fraudulent, willfully and personally using those documents as the basis for filing

25  fraudulent entry papers with CBP.

26      5.      Wang and Celco also prepared an official document, called a Delivery

27  Order, that would grant a trucking company access to the gated and guarded container

28  yard at the Port of Los Angeles for the purpose of picking up and transporting the

THEODORA ORINGHER
COUNSELORS AT LAW

1  counterfeit handbags and wallets to parts unknown within the United States.  By

2  preparing the Delivery Order, Wang and Celco directly facilitated the transportation of

3  the counterfeit COACH brand handbags and wallets in commerce in the U.S.

4      6.     For their active and personal efforts to facilitate the importation and local

5  delivery of counterfeit COACH brand handbags and wallets, Wang and Celco are liable

6  for direct infringement under the Lanham Act and Tariff Act.  Wang and Celco are also

7  vicariously liable for the acts of direct infringement committed by their co-conspirators

8  under theories of agency and joint tortfeasor liability.

9  **THE INTERACTION OF CUSTOMS BROKERS AND COUNTERFEITERS**

10     7.     When goods are imported into the United States, formal entry for those

11 goods must be filed with CBP.  If formal entry is not filed, the goods will not be

12 physically released by CBP to the importer and thus the goods will not be released into

13 commerce.  Wang and Celco, by filing formal entry papers with CBP in this case,

14 intended that CBP would physically release the counterfeit handbags and wallets into

15 the hands of their co-conspirators.

16     8.     Formal entry of goods is accomplished through the submission of certain

17 documents and the payment of applicable duties to CBP.  Customs brokers traditionally

18 perform this function on behalf of importers.  When Customs brokers file entry on

19 behalf of importers, they are required by law and regulation to obtain a *valid* Power of

20 Attorney ("POA") from the importer.

21     9.     The applicable regulation at 19 C.F.R. § 141.46 states, in part, "Before

22 transacting Customs business in the name of his principal, a customhouse broker is

23 required to obtain a valid power of attorney to do so."  Simply put, without a valid

24 POA, a Customs broker may not conduct Customs business.  It is the responsibility of

25 the Customs broker to validate any POA that it relies upon to conduct Customs

26 business.

27     10.    Counterfeiters typically import illicit goods using one of two methods.  In

28 the first method, counterfeiters import in their own names or the names of companies

that they created for the express purpose of importing counterfeit goods. Under this method, there is no need to send a fraudulent POA to the Customs broker because the counterfeiters are being truthful about their actual identities. Under this method, when a Customs broker takes steps to verify the authenticity of the POA, they find that they are, in fact, filing entry papers on behalf of the actual importer of record. If a shipment of counterfeit goods imported under this method is detected and seized, however, the importer is readily identified and held accountable by the trademark owner and law enforcement.

11.    An example of this method is the case of Stanley Yang ("Yang"), the owner of DR Trade International, Inc. ("DR Trade"). Yang imported commercial quantities of counterfeit exercise equipment in the name of DR Trade. CBP detected and seized one of these shipments. As a result, the owner of the trademarks infringed by Yang sued him and DR Trade in U.S. District Court for the Central District of California, Case No. CV10 0624 MMM (MANX). Judgment against Yang and DR Trade was entered in that case in the amount of $8 million. Yang also pled guilty to federal criminal charges stemming from his counterfeit importation activities and he is currently awaiting sentencing.

12.    As the foregoing example shows, using one's actual identity to import counterfeit goods carries great risk of civil and criminal liability. To avoid these potential consequences, counterfeiters are increasingly using the second method for importing illicit goods, *i.e.*, identity theft.

13.    By stealing the identity of a person or business entity that has a prior track record of importing legitimate, lawful goods, counterfeiters seek to obtain two distinct benefits. First, their shipment will avoid enhanced scrutiny by CBP because it is being imported in the name of a person or entity that has established a clean track record with CBP of importing legitimate goods. Secondly, if the shipment is detected and seized by CBP, the counterfeiters' actual identities are concealed and thus they are more likely to escape civil and criminal sanction.

14. The identity theft method requires that the actual importer create a fraudulent POA, naming the victim of identity theft as the actual importer, to give to the Customs broker. When a shipment of counterfeit goods is seized by CBP, one of the first things the agency will seek to obtain is the POA relied upon by the Customs broker to enter the goods. A fraudulent POA is thus instrumental in throwing law enforcement off the tracks of the counterfeiters.

15. Giving a fraudulent POA to a Customs broker poses its own risks, however, because Customs brokers are required by law and regulation to verify the authenticity of the POA. As shown in paragraphs below, there are many effective ways for Customs brokers to verify the authenticity of a POA, including ways to establish the actual existence of the person signing the POA as well as that person's authority to sign the POA on behalf of a business entity.

16. Because it is very easy for Customs brokers to verify the authenticity (or lack thereof) of a POA given to them by a prospective importer, counterfeiters seek to use the services of corruptible Customs brokers who will, for a price, knowingly accept and use a fraudulent POA to file entry papers with CBP. In this case, Wang and Celco knowingly and willfully agreed to perform such service for their John Doe co-conspirators.

17. Plaintiffs do not allege that Wang and Celco are liable for trademark infringement simply because they failed to take precautionary steps that, if they had been taken, would have alerted them to counterfeiting activity. To the contrary, Plaintiffs specifically allege that Wang and Celco *already knew* about the counterfeiting activity. Furthermore, Plaintiff specifically allege that Wang and Celco agreed with their John Doe co-defendants *not to take* precautionary steps to verify the POA precisely for the reason that, had they done so, the victim of identity theft would have been alerted to the conspiracy and would have contacted law enforcement, including CBP, thus exposing the conspirators to civil and criminal sanction.

18.     While their John Doe co-conspirators hid anonymously behind fake names and untraceable, prepaid cell phones, Wang and Celco could not conceal their identities. Because their role in the scheme was to pass off fake documents with CBP, their actions had to occur transparently, out in the open. By exposing themselves to this heightened risk on behalf of the conspiracy, Wang and Celco were paid or promised a significant sum of money, far in excess of the $65 they claim to have made on this shipment.

19.     In this case, a *valid* POA would have revealed the true name, address, tax payer identification number, and other information about the actual importer of the counterfeit COACH brand handbags and wallets at issue.  The POA that Wang and Celco obtained from their co-conspirators, however, was not valid.  It did not identify the true importer of the counterfeit COACH brand handbags and wallets (*i.e.*, one of the John Doe defendants); it identified – or at least it attempted to identify – an innocent company that had nothing to do with the counterfeit goods.

20.     As described more fully below, the POA received by Wang and Celco was so patently false, fraudulent, and invalid on its face that no legitimate, law-abiding Customs broker would have relied upon it to file entry papers with CBP.  In fact, the POA at issue in this case reflects such an inept attempt at identity theft that Wang and Celco can have no plausible excuse for not having immediately rejected the POA and alerting CBP to the fraud.   The only plausible explanation for Wang and Celco overlooking the patent fraudulence of the POA is their active and knowing involvement in the conspiracy.   In fact, as explained in more detail below, *Wang and Celco took affirmative steps to correct the bungled attempt at identity theft* to keep the conspiracy alive.

## THE USE OF IDENTITY THEFT TO IMPORT COUNTERFEIT GOODS IS A HUGE PROBLEM FOR CBP AND AFFECTED BRAND OWNERS

21.     The rampant importation of counterfeit goods facilitated by fraudulent POAs is a huge problem for CBP as well as brand owners, like Plaintiffs, who

encounter fake POAs in an alarming number of instances.  In fact, CBP has recently undertaken an effort to crack down on the problem of Customs brokers accepting and using fraudulent POAs to enter counterfeit goods into the U.S.  This effort is known as CBP's Initiatives for 21st Century Trade.

22.     As part of CBP's Initiatives for 21st Century Trade, CBP hosted a series of public Webinars through the Summer and Fall of 2012 targeted at Customs brokers. One of these Webinars was titled "The Role of the Broker: Establishing *bona fides*."  A true and accurate copy of the PowerPoint presentation used by CBP during this Webinar is attached hereto as Exhibit 1.  Page 3 of Exhibit 1, titled "Validating importers," contains the following bullet point, among others, "How can brokers enhance their relationships with their importers, particularly those importers *who represent the greatest compliance risk for CBP (e.g., one-time/unknown importers)* (emphasis added).

23.     In this case, Wang and Celco claim to have never before entered goods on behalf of the entity identified in the fraudulent POA.  In addition, the POA specified that it was good for only eight days, from July 22, 2009 through July 30, 2009, and thus would support only a one-time importation.  A true and accurate copy of the POA is attached hereto as Exhibit 2.  In this case, the importer that Wang and Celco took on as a client was both supposedly "unknown" to them and a one-time importer, which, according to CBP, poses the "greatest compliance risk" for CBP and thus also for the owners of popular, heavily-counterfeited brands, like Plaintiffs.  Despite the "great compliance risk" posed by their new client, Wang and Celco took *no action whatsoever* to verify the client's *bona fides*.  No legitimate and law-abiding Customs broker would have failed to take even a single step to verify the authenticity of the POA.

24.     Page 5 of Exhibit 1, titled "CBP concerns (no particular order)," contains the following bullet points, among others, "The broker has not made sure that the IOR [Importer of Record] really is the owner/purchaser of the goods;" "Shell companies and identity theft;" "Brokers getting Powers of Attorney from third parties (usually a freight

1   forwarder);" "The broker may not have established direct communication with the IOR

2   if using a third party;" and "Billings are not from the broker to the IOR."

3       25.    Each of the foregoing concerns is at issue in this case.  Wang and Celco

4   did not make sure that the entity named in the POA was the actual purchaser or

5   importer of the goods.  The name of the entity as printed on the POA was "Pierce

6   Chemical Company" ("Pierce Chemical"), a company that Wang and Celco knew had

7   ceased to exist as a legal entity *more than seven years before the POA was executed* and

8   thus had no capacity even to execute the POA, much less import goods into the United

9   States.  Wang and Celco obtained the POA from a freight forwarder, and not directly

10   from their putative client.  Wang and Celco never had any direct contact with their

11   putative client.  Wang and Celco sent their bills for services to the freight forwarder and

12   not to their putative client who was responsible for paying them.  No legitimate and

13   law-abiding Customs broker would have conducted themselves in this manner.

14       26.    As the foregoing facts show, the method and manner about which Wang

15   and Celco took on their new client (a non-existent company), and obtained and then

16   failed to verify the POA, exhibits every high-risk characteristic that is of greatest

17   concern to CBP.  No legitimate, law-abiding Customs broker would have acted this

18   way.  Wang and Celco have been in the Customs brokerage business since at least

19   2002.  Wang and Celco understood, but intentionally disregarded, their obligations to

20   properly verify the identity of their new client because they already knew their client's

21   real identity.  As long-standing members of the Customs broker community, Wang and

22   Celco knew that instances of identity theft are highly correlated with the importation of

23   counterfeit goods.  By accepting the fraudulent POA that they knew misappropriated

24   the identity of an innocent company, Wang and Celco knew that the shipment contained

25   counterfeit goods.

26       27.    Having obtained the patently-fraudulent POA and other import records

27   from their co-conspirators, Wang and Celco filed formal entry papers with CBP.  To do

28   so, however, Wang and Celco first had to deal with a glaring discrepancy on the face of

THEODORA ORINGHER
COUNSELORS AT LAW

1    the POA.  In addition to naming Pierce Chemical as the importer of record, the POA

2    also contained a federal tax identification number that Wang and Celco needed to

3    provide to CBP as part of the formal entry process. The problem, however, was that the

4    tax identification number on the POA belonged to "Pierce Biotechnologies, Inc."

5    ("Pierce Bio"), and not Pierce Chemical.  The John Doe responsible for this aspect of

6    the conspiracy had bungled his task, and secured a tax identification number that did

7    not match the name of the intended victim of identity theft.  Wang and Celco needed to

8    correct this problem before filing formal entry papers with CBP.

9        28.    When filing entry papers with CBP, the name of the importer of record

10   *must* match the name associated with the federal tax identification number.  If it does

11   not, CBP's automated systems will prevent release of the goods and flag the shipment

12   for greater scrutiny, to include an inspection of the contents of the shipping container at

13   issue.  To avoid this potentially disastrous result, Wang and Celco inserted the name

14   "Pierce Biotechnologies, Inc." as the importer of record on Customs Form 7501 (at

15   blocks 25 and 26) and Customs Form 3461 (at blocks 10 and 11) that they filed with

16   CBP.  True and accurate copies of Customs Forms 7501 and 3461 filed with CBP by or

17   at the direction of Wang and Celco are attached hereto as Exhibit 3.

18       29.    Because the name of the importer of record on the POA was Pierce

19   Chemical, Wang and Celco had no legal authority to use a different name on the

20   Customs Forms.  No legitimate, law-abiding Customs broker would have used a name

21   on the Customs Forms that differed from the name on the POA.  A legitimate, law-

22   abiding Customs broker would have contacted Pierce Bio to seek verification of the

23   proper name of the company and to verify the broker's authority to enter goods on

24   behalf of Pierce Bio.  Wang and Celco intentionally failed to do either of these things.

25       30.    The POA was signed by a person purporting to be "Robert Laurance,"

26   Vice President of Pierce Chemical.  At one time, Pierce Bio had been known as Pierce

27   Chemical, but had changed its name on June 6, 2002, more than seven years before the

28   events at issue herein.  It is inconceivable that an actual *vice president* of Pierce Bio

THEODORA ORINGHER
COUNSELORS AT LAW

1  would execute a POA on behalf of his company in July 2009 using a name that the
2  company *ceased using more than seven years before*. Wang and Celco cannot credibly
3  claim that they believed "Robert Laurance" had simply forgotten the current name of
4  his employer and used a name seven years out-of-date. Even if they had entertained
5  this absurd belief, Wang and Celco simply had no legal authority to assume that
6  "Robert Laurance" had made such a colossal blunder and then correct the error on their
7  own when preparing the Customs Forms. As shown below, Wang and Celco had the
8  legal obligation to bring this discrepancy to the attention of their putative client, Pierce
9  Bio, and to require Pierce Bio to correct this discrepancy. They did not do so because it
10 would have alerted Pierce Bio to the fact that its identity had been stolen.

11      31.    The regulation at 19 CFR § 111.39(b) states: "(b) Error or omission by
12 client. If a broker knows that a client has not complied with the law or has made an
13 error in, or omission from, any document, affidavit, or other paper which the law
14 requires the client to execute, *he must advise the client promptly* of that noncompliance,
15 error, or omission." (emphasis added). In this case, Wang and Celco knew that the
16 POA was executed in the name of non-existent Pierce Chemical, and gave the tax payer
17 identification number for existent Pierce Bio. Any legitimate, law-abiding Customs
18 broker would have called Pierce Bio to seek clarification of this discrepancy and
19 require Pierce Bio to execute a new, lawful, and valid POA. Wang and Celco had
20 "Robert Laurance's" telephone and fax numbers and e-mail address, but made no effort
21 whatsoever to contact him, or anyone else who actually worked for Pierce Bio, to
22 clarify this discrepancy. Their failure can only be explained by their knowledge that
23 the POA was a fake.

24      32.    For these and other reasons discussed in greater detail below, Plaintiffs
25 allege that Wang and Celco knowingly and willfully participated in, and materially
26 advanced the objectives of, a conspiracy to import and locally transport massive
27 quantities of counterfeit COACH brand handbags and wallets.

28

33.     Given the size, scope, and complexity of the conspiracy, Plaintiffs believe, and thereon alleged, that the seized goods at issue in this complaint do not represent the first attempt at importing counterfeit COACH brand goods by Wang, Celco, and the John Doe Defendants.  Plaintiffs believe, and thereon allege, that Wang, Celco and the John Doe Defendants have previously – and successfully – imported, distributed, offered for sale, and/or sold commercial quantities of goods bearing counterfeit versions of federally-registered trademarks owned by Coach.  Defendants' conduct has produced and, unless enjoined by this Court, will continue to produce a likelihood of consumer confusion and deception as well as irreparable injury to Coach.

## JURISDICTION AND VENUE

34.     This Court has jurisdiction over this action pursuant to:  (i) 28 U.S.C. §§ 1331 and 1338(a) and (b), 15 U.S.C. § 1121, as an action for violation of the federal Lanham Act, and 19 U.S.C. § 1526(a) as a violation of the federal Tariff Act; and (ii) 28 U.S.C. § 1367(a), pursuant to the principles of supplemental jurisdiction.

35.     Coach is informed, believes, and thereupon alleges that venue is proper in this district pursuant to 28 U.S.C. § 1391(b), in that a substantial part of the events or omissions giving rise to the claims herein occurred in this judicial district.

## THE PARTIES

36.     Plaintiff Coach, Inc. is a corporation organized and existing under the laws of the State of Maryland, with its principal place of business in New York, New York.

37.     Plaintiff Coach Services, Inc., a wholly-owned subsidiary of Coach, Inc., is a corporation organized and existing under the laws of the State of Maryland, with its principal place of business in Jacksonville, Florida.

38.     Defendant Celco Customs Service Co. is a corporation organized and existing under the laws of the State of California, with its last known principal place of business at 9660 Flair Drive, Suite 226, El Monte, California 91731.  Celco is a licensed Customs brokerage.

39.     Defendant Shen Huei Feng Wang, aka Celine Wang, is an individual residing at 5734 Oak Ave., Temple City, California 91780. Wang is the sole owner and officer of Celco and a licensed Customs broker.

40.     Coach does not know the true names and capacities of the Defendants sued herein as Does One through Ten, inclusive, and therefore sues these Defendants by fictitious names. Does One through Ten conspired with Wang and Celco to import and distribute goods bearing counterfeit versions of one or more federally-registered trademarks owned by Coach. Coach will amend this Complaint to allege the true names and capacities of these Defendants when it ascertains the same. Coach is informed and believes, and thereon alleges, that Does One through Ten, inclusive, are responsible in some manner for the occurrences herein alleged and that damages as herein alleged were proximately caused by their acts. Wherever the term "Defendants" is used herein, it includes Does One through Ten, inclusive.

41.     Coach is informed and believes, and thereon alleges, that at all relevant times Does One through Ten (and each of them) were the agents and employees of the other Defendants, and in doing the acts mentioned below were acting within the scope of their authority as such agents and employees, and with the permission and consent of the other Defendants. Coach further alleges that the Defendants (and each of them) are responsible in some manner for the acts and omissions alleged in the claims set forth below, and that Plaintiffs' damages, both existing and prospective, are, were, and will be proximately caused by the acts and omissions of the Defendants.

## FACTS GIVING RISE TO THIS ACTION

### *The Infringed Trademarks*

42.     Coach was founded more than seventy years ago as a family-run workshop in Manhattan. Since then Coach has been engaged in the design, marketing and sale of fine leather and mixed material products including handbags, wallets, accessories, eyewear, footwear, jewelry and watches. Coach sells its goods through its own specialty retail stores, department stores, catalogs and via the Internet website at

THEODORA ORINGHER
COUNSELORS AT LAW

1   www.coach.com throughout the United States.

2       43.   Coach is the worldwide owner of the trademark "COACH" and various

3   composite trademarks and assorted design components (collectively, the "Coach

4   Marks").

5       44.   Coach has long been marketing and selling in interstate commerce high

6   quality leather and mixed material products under the Coach Marks.   These

7   registrations are valid and subsisting and many are incontestable pursuant to 15 U.S.C.

8   § 1065. Through longstanding use, advertising, and registration, the Coach Marks have

9   achieved a high degree of consumer recognition and constitute famous marks.

10      45.   Coach and its predecessors have continuously used the Coach Marks in

11  interstate commerce in connection with the sale, distribution, promotion, and

12  advertising of its goods for four decades.

13      46.   The Coach Marks are highly recognized by the public and serve to identify

14  the source of the goods as Coach.

15      47.   Coach has achieved sales volumes of over three billion dollars annually

16  and has spent hundreds of millions of dollars in advertising, promoting, and marketing

17  goods bearing the Coach Marks.   As such, the Coach Marks and the goodwill

18  associated therewith are valuable assets of Coach.

19      48.   Due to Coach and its predecessors' long use, extensive sales, and

20  significant advertising and promotional activities, the Coach Marks have achieved

21  widespread acceptance and recognition among the consuming public and trade

22  throughout the United States.   The arbitrary and distinctive Coach Marks identify

23  Coach as the source/origin of the goods on which they appear.

24      49.   Coach has filed and recorded copies of the registration certificates of its

25  Coach Marks with the U.S. Bureau of Customs and Border Protection ("CBP") in

26  accordance with Section 526(a) of the Tariff Act, 19 U.S.C. § 1526(a), and Section 42

27  of the Lanham Act, 15 U.S.C. § 1124.

28  *Defendants' Infringing Activities*

THEODORA ORINGHER
COUNSELORS AT LAW

50.   CBP inspects some of the merchandise imported into the United States. As a result of one such inspection on or about July 24, 2009, CBP discovered that a shipment imported into the Port of Los Angeles contained a commercial quantity of counterfeit handbags and wallets bearing spurious marks that were either identical with or substantially indistinguishable from one or more of the Coach Marks.

51.   In September 2009, CBP provided Coach with a Notice of Seizure of Infringing Merchandise (No. 2009-2704-001104) ("Notice of Seizure") naming "Pierce Biotechnologies, Inc.," as the party that imported 22,040 handbags and 10,300 wallets that infringed trademarks owned by Plaintiffs. According to the Notice of Seizure, the counterfeit handbags and wallets had been exported from China, and entered the United States at the Port of Los Angeles on or about July 24, 2009. A true and correct copy of the Notice of Seizure is attached hereto as Exhibit 4.

52.   The handbags seized by CBP bore counterfeit versions of the following Coach Marks:

| Registration No. | Mark | Registration Date | Image |
|---|---|---|---|
| 2,088,706 | COACH | September 19, 1997 | COACH |
| 2,045,676 | COACH & LOZENGE DESIGN | March 18, 1997 | COACH |
| 2,626,565 | CC & DESIGN (Signature C) | September 24, 2002 | |
| 3,441,671 | COACH LEATHERWARE EST. 1941 | June 3, 2008 | COACH LEATHERWARE EST. 1941 |
| 3,338,048 | COACH STYLIZED | November 11, 2007 | COACH |

| Registration No. | Mark | Registration Date | Image |
|---|---|---|---|
| 2,088,707 | COACH & TAG DESIGN | August 19, 1997 | |

53.   The wallets seized by CBP bore counterfeit versions of the following Coach Marks:

| Registration No. | Mark | Registration Date | Image |
|---|---|---|---|
| 2,088,706 | COACH | September 19, 1997 | COACH |
| 2,045,676 | COACH & LOZENGE DESIGN | March 18, 1997 | |
| 2,626,565 | CC & DESIGN (Signature C) | September 24, 2002 | |
| 3,441,671 | COACH LEATHERWARE EST. 1941 | June 3, 2008 | |

54.   True and accurate copies of photographs of a seized counterfeit handbag and a seized counterfeit wallet are attached hereto as Exhibit 5.

55.   Wang and Celco are Customs brokers. Customs brokers are authorized by law and regulation to formally enter goods into the United States on behalf of importers, whether they be individuals or business entities.

56.   Wang and Celco formally entered the counterfeit COACH brand handbags and wallets that had been imported in the name of "Pierce Biotechnologies, Inc." and that had been seized by CBP.

57.    Pierce Bio is a subsidiary of Thermo Fisher Scientific, Inc. ("Thermo Fisher"), and has its principal place of business at 3747 North Meridian Road, Rockford, Illinois 61105.    According to Pierce Bio's website at http://www.piercenet.com/browse.cfm?fldID=BADD314A-5056-8A76-4E05-DAA72F335BC2,

> Pierce Protein Research Products are the cornerstone of the proteomics portfolio for Thermo Fisher Scientific.  We offer kits, reagents and services that enable researchers to identify and understand proteins.  The proteomics unit is headquartered in Rockford, Illinois, where our ISO 9001 certified facilities comprise 185,000 square feet on 29.4 acres, which includes 41,000 square feet of distribution and shipping space and 23,000 square feet of research and development space.  In addition to our Rockford site, we have service-based sites in Ulm, Germany (custom oligopeptides); Huntsville, Alabama (custom antibodies); and distribution centers in Belgium, Japan, China, Hong Kong and Australia.

> We offer more than 40,000 products to customers located in 65 countries.  Life scientists and other researchers look to us for innovative, high-quality products, which include chemiluminescent and colorimetric substrates; assay reagents; sample-handling products; coated microplates; crosslinking reagents; fluorescent labels and probes; reducing agents; and immobilized affinity ligands. Additionally, major diagnostic, pharmaceutical and biotechnology companies rely on us for bulk chemicals, reagents and coated microplates.

58.    Also    according    to    Pierce    Bio's    website    at http://www.piercenet.com/browse.cfm?fldID=78C0D45B-A2D3-11D5-9E2A-00508BD9167A, Pierce Bio's e-mail address is pierce.cs@thermofisher.com, its telephone number is 1-800-874-3723, and its fax number is 1-800-842-5007.

59.    Pierce Bio is not in the business of importing counterfeit COACH brand handbags and wallets.  Pierce Bio was a victim of identity theft facilitated by Wang and

1    Celco who knowingly and willfully used a fraudulent POA in an attempt to conceal an
2    illegal scheme to import counterfeit goods into the United States.

3        60.    Before a licensed Customs broker may formally enter goods on behalf of
4    an importer, the Customs broker must first obtain a POA from the importer. Customs
5    brokers are free to prepare their own versions of a POA, but it must contain, at a
6    minimum, the terms set forth in the "Customs Power of Attorney," Customs Form
7    5291, a copy of which is attached hereto as Exhibit 6.

8        61.    According to the terms of Customs Form 5291, a POA permits a Customs
9    broker to, among other things, "make, endorse, sign, declare, or swear to any entry,
10   withdrawal, declaration, certificate, bill of lading, carnet or other document required by
11   law or regulation in connection with the importation, transportation, or exportation of
12   any merchandise shipped or consigned by or to said grantor; to perform any act or
13   condition which may be required by law or regulation in connection with such
14   merchandise; [and] to receive any merchandise deliverable to said grantor."

15       62.    Because Customs brokers may exercise such broad powers on behalf of
16   importers, federal law and regulations, *see, e.g.*, 19 C.F.R. § 141.46, require that
17   Customs brokers accept only *valid* POAs from their importing clients. This
18   requirement was specifically implemented by Congress and CBP to prevent the
19   importation of counterfeit goods by individuals who use fraudulent and/or stolen
20   identities when executing a POA.

21       63.    On April 20, 2005, CBP issued Administrative Message 05-0441 to all
22   users of CBP's Automated Commercial System ("ACS"). Users access the ACS via
23   the Automated Broker Interface ("ABI"), the electronic portal by which Customs
24   brokers file entry papers and otherwise communicate with CBP. Wang and Celco are
25   ACS/ABI users and access the ACS/ABI via NetCBH, a commercially-available, web-
26   based portal. On information and belief, Wang and Celco received a copy of
27   Administrative Message 05-0441 via the ACS/ABI.

28

THEODORA ORINGHER
COUNSELORS AT LAW

64.     Administrative Message 05-0441, a copy of which is attached hereto as Exhibit 7, contained guidance from CBP directed to Customs Brokers on the issue of "Validating the Power of Attorney." As stated in Administrative Message 05-0441,

> Because the POA can authorize the movement of conveyances and merchandise into the United States, it is critical that it be examined carefully. By ensuring that each POA is valid, the broker joins Customs and Border Protection on the national security frontlines in verifying the data used to screen what enters this country.
>
> In addition to security, the broker's own professional business interests and continuing obligation to demonstrate "reasonable care" require verification of the POA grantor's identity and legal authority (position in a company or partnership) to enter into a POA.
>
> Here are some ways the broker can validate a power of attorney.
>
> - To the greatest extent possible, have POAs completed in person so the grantor's personal identification (driver's license, passport, etc.) can be reviewed.
>
> - Check applicable web sites to verify the POA grantor's business and registration with state authorities.
>
> - If the principal uses a trade or fictitious name in doing business, confirm that the name appears on the POA.
>
> - Verify that the importer's name, importer number and employer identification number (also known as the federal tax identification number) on the POA match what is in ACS.

65.     The very same guidance that is contained in Administrative Message 05-0441 was also posted on CBP's website at http://www.cbp.gov/xp/cgov/trade/trade_programs/broker/validating_poa.xml, where it remains to this day. A copy of the screenshot of this webpage is attached hereto as Exhibit 8.

66. The foregoing guidance to Custom brokers is rooted in federal law and regulation, as is recognized by the U.S. Department of Justice. In the case of *Nike, Inc. v. Cathy Chiu Lam CHB et al.*, CV-10-1163 (Weinstein, J.) (Levy, M.J.), in the United States District Court for the Eastern District of New York, Ms. Lorretta E. Lynch, U.S. Attorney for the Eastern District of New York, filed a letter with the court at the request of Judge Weinstein that explained the obligations of Customs brokers to validate POAs. A copy of that letter is attached hereto as Exhibit 9.

67. In her letter, Ms. Lynch explained that,

> A customs broker is required to exercise "responsible supervision and control" over an import or export transaction. 19 C.F.R. § 111.28(a). … A customs broker, prior to engaging in an import or export transaction, must obtain a valid power of attorney from a principal. 19 C.F.R. § 141.46. As part of his or her obligation to exercise "responsible supervision and control," the customs broker must exercise reasonable care to ensure that the power of attorney in his or her possession is valid. Customs and Border Protection ("CBP") has published on its website guidance to brokers, which lists the methods by which brokers may validate a power of attorney.

68. At the time Wang and Celco filed entry papers for the counterfeit COACH handbags and wallets that were seized by CBP, Wang and Celco were well aware of their legal obligation to validate the POA that purportedly authorized them to enter those goods.

69. That POA, a copy of which is attached hereto as Exhibit 2, purportedly was executed by a Robert Laurance, Vice President of Pierce Chemical Company, located at 3747 North Meridian Road, Rockford, Illinois 61105, and having a taxpayer identification number of 36-2548893. This POA was fraudulently executed and invalid, a fact that Wang and Celco knew.

70. There is no Pierce Chemical Company located at 3747 North Meridian Road, Rockford, Illinois 61105. That address belongs to Pierce Biotechnologies, Inc.,

1  the entity named by CBP on the Notice of Seizure.  Taxpayer identification number 36-
2  2548893 does not belong to Pierce Chemical; it belongs to Pierce Bio.  There is no such
3  person as "Robert Laurance" working at Pierce Bio, much less a Vice President by that
4  name.  Wang and Celco knew these facts.

5      71.    The POA was not obtained by Wang and Celco directly from "Robert
6  Laurance," whoever he really is.  Instead, the POA was first obtained by a freight
7  forwarder, Eastern Direct Systems, Inc. ("Eastern Direct") located in Springfield
8  Garden, New York, which then faxed a copy of the POA, along with other documents,
9  explicitly addressed to Wang at Celco in California.  A copy of the cover sheet of the
10  five page fax transmission addressed to "Celine", *i.e.*, Wang, is attached hereto as
11  Exhibit 10.  Wang and Celco had no previous relationship with Eastern Direct and thus
12  had no reason to trust the validity of any POA received from Eastern Direct.

13      72.    At no time did Celco or Wang even attempt to contact "Robert Laurance"
14  to require him to provide (a) proof of his identity, *e.g.*, driver's license or passport, (b)
15  proof that Pierce Chemical actually existed and was located at the address listed on the
16  POA, (c) proof that he was a vice president of that company, or (d) proof that he had
17  authority to import goods on behalf of Pierce Chemical.  Any legitimate, law-abiding
18  Customs broker would have done these things because they comply with the methods
19  for validating POAs set forth in Administrative Message 05-0441.  The fact that Wang
20  and Celco did none of these things shows that they already knew the POA was a fake
21  and that "Robert Laurance" was one of their co-conspirators.  By accepting a fake POA,
22  Wang and Celco knowingly violated 19 C.F.R. § 111.28(a) and 19 C.F.R. § 141.46,
23  which required them accept only a valid POA.

24      73.    All entries of goods into the United States are made subject to a bonding
25  requirement intended to ensure that proper customs duties are paid to the United States.
26  Customs brokers, like Wang and Celco, are responsible for ensuring that this bonding
27  requirement is met by their importing clients before filing entry papers.  If a bond
28  covering the shipment at issue is not in place, the goods will not be formally entered

THEODORA ORINGHER
COUNSELORS AT LAW

1  and thus will not physically be released to the importer.  Accordingly, it was critical

2  that a bond be in place for the shipment of counterfeit COACH brand handbags and

3  wallets.

4      74.   In this case, Wang queried the ACS/ABI system using the taxpayer

5  identification number 36-2548893 that appeared on the POA to confirm that a bond was

6  already in place.  When Wang made that inquiry, the ACS/ABI system reported that a

7  $50,000 continuous bond, as opposed to a single use bond, had been in place for this

8  taxpayer identification number since October 2, 2005.  A true and accurate copy of an

9  ACS/ABI report requested and printed out by Wang for taxpayer identification number

10  36-2548893 is attached hereto as Exhibit 11.

11      75.   As reflected in the ACS/ABI report requested and printed out by Wang,

12  taxpayer identification number 36-2548893 belongs Pierce Bio and not to Pierce

13  Chemical.   In other words, the importer's name on the POA does not match the

14  importer's name in ACS.  Any legitimate, law-abiding Customs broker would have

15  immediately sought clarification of this discrepancy from Pierce Bio because

16  Administrative Message 05-0441 states that Customs broker should "[v]erify that the

17  importer's name, importer number and employer identification number (also known as

18  the federal tax identification number) on the POA match what is in ACS."  This

19  mismatch of names on the POA and in ACS is a *per se* example of an invalid POA.

20  Despite this overwhelming evidence that the POA was invalid, Wang and Celco took

21  no action to contact Pierce Bio, or anyone else, to correct the discrepancy.  Their failure

22  to do so can only be explained by the fact that they already knew that the POA was

23  fake.

24      76.   Wang and Celco do claim, however, that they searched the Illinois

25  Secretary of State's data base for information regarding Pierce Bio.  Plaintiffs' dispute

26  this claim and allege that Wang and Celco did not conduct such a search in or around

27  July 2009.  Even if Wang and Celco did conduct such a search at that time, it would

28  have shown that the legal name for their putative client was "Pierce Biotechnologies,

THEODORA ☉ ORINGHER
COUNSELORS AT LAW

Inc.," and not Pierce Chemical.  It also would have shown that Pierce Bio changed its name from "Pierce Chemical Company" on June 6, 2002, more than seven years before "Robert Laurance" executed the POA on behalf of Pierce Chemical.  A true and accurate copy of the search results for Pierce Bio on the Illinois Secretary of State's corporate data base is attached hereto as Exhibit 12.  Any legitimate, law-abiding Customs broker, upon seeing these search results, would have immediately contacted Pierce Bio to clarify why a recently-signed POA would have been executed in a name that had not been the company's legal name for *more than seven years*.  Wang and Celco did not seek such clarification because, as members of the conspiracy, they already knew the reasons for the discrepancy.

77.  As reflected in the ACS/ABI report requested and printed out by Wang, Pierce Bio, the true owner of taxpayer identification number 36-2548893, had been importing goods into the United States on the basis of an active, continuous bond that had been put into place on October 2, 2005, nearly four years before the POA had been executed.  For each shipment imported into the United States by Pierce Bio on the basis of this continuous bond, some Customs broker *other than Wang or Celco* had filed formal entry papers with CBP.  In other words, Wang and Celco knew from this information that Pierce Bio already had a pre-existing relationship with some other Customs broker and thus Pierce Bio had no need for their brokerage services.  This fact would have alerted any legitimate, law-abiding Customs broker that illicit activity was afoot.

78.  In addition, the POA was executed by "Robert Laurance" on July 22, 2009.  The POA, on its face, contained a revocation date of July 30, 2009, meaning that the POA was to be active for only eight days.  Not only did Wang and Celco accept a POA from an unknown freight forwarder, Eastern Direct, on behalf of an unknown client ("Pierce Chemical"), the POA was obviously intended for a one-time use.  These are the hallmarks of what CBP calls its "greatest compliance risk."

THEODORA ORINGHER
COUNSELORS AT LAW

79.    The regulation at 19 CFR § 111.36 requires a Customs broker to deal directly with their importing client, *i.e.*, to send their invoices for services and copies of the entry papers directly to the actual importer. The only exception to this rule allows a Customs broker to send invoices and copies of the entry papers to some other entity, *e.g.*, a freight forwarder, *only where the actual importer has provided a written waiver to this regulation to the Customs broker.*

80.    Wang and Celco never sent copies of the relevant entry papers or invoice to their putative client. Instead, they sent these items to Eastern Direct, a freight forwarder. A true and accurate copy of the invoice sent by Wang and Celco to Eastern Direct is attached hereto as Exhibit 13. Wang and Celco neither sought nor procured the required written waiver from the actual importer, as identified on the entry papers prepared by Wang and Celco, and thus they knowingly and intentionally violated 19 CFR § 111.36. Of course, the actual importer was one of the John Doe Defendants herein, making such a written waiver unnecessary. However, had Wang and Celco actually believed that Pierce Bio was the actual importer, they would have contacted Pierce Bio to obtain the necessary written waiver. The fact that they did not shows that Wang and Celco knew that such direct contact with Pierce Bio would have jeopardized the success of their conspiracy to steal Pierce Bio's identity.

81.    Despite knowing that "Robert Laurance" and Pierce Chemical were fraudulent entities, Celco and Wang willfully accepted a commercial invoice, packing list, and bill of lading from Eastern Direct and, based on these documents, filed Customs Forms 7501 and 3461 with CBP. True and accurate copies of the commercial invoice, packing list, and bill of lading are attached hereto as Exhibit 14.

82.    These documents list Pierce Chemical as the importer of 127,440 "browse product catalog[s]," the company's telephone number as 815-556-7634, the fax number as 815-425-0637, and the e-mail address as PIERCECHEMICAL@HOTMAIL.COM. Any legitimate, law-abiding Customs broker, already on alert to the discrepancy between the name Pierce Chemical appearing on the POA and the name Pierce Bio

appearing in ACS, would have been suspicious of this information and would have attempted to verify it by contacting Pierce Bio directly and/or searching appropriate Internet websites, as is set forth in Administrative Message 05-0441.

83.     For example, a search of Pierce Bio's website, as set forth above, would have revealed that Pierce Bio's e-mail address is pierce.cs@thermofisher.com and not PIERCECHEMICAL@HOTMAIL.COM.  No legitimate, law-abiding Customs broker would have believed that a company such as Pierce Bio would actually use Hotmail.com, a generic service to which anyone with Internet access may subscribe, as its official e-mail hosting service.  This is particularly so in light of the fact that Pierce Bio's legitimate e-mail address, as shown on its website, uses the "@thermofisher.com" root address.  In addition, a search of Pierce Bio's website would have revealed that its telephone number is 1-800-874-3723 and its fax number is 1-800-842-5007, both of which differ from the numbers given on the commercial invoice, packing list, and bill of lading.  Finally, a search of Pierce Bio's website would have shown that it is highly improbable that Pierce Bio, a manufacturer of exotic biological materials for highly-specialized uses, would be importing 127,440 "product browse catalog[s]." .  Wang and Celco made no attempt at all to search Pierce Bio's website, no attempt to contact Pierce Bio at its published phone numbers and e-mail address, and no attempt to even contact "Robert Laurance" of Pierce Chemical because, as members of the conspiracy, they already knew that Pierce Bio was not the actual importer of the counterfeit COACH brand handbags and wallets.

84.     Despite the fact that the POA, the commercial invoice, the packing list, and the bill of lading were all executed in the name of Pierce Chemical, Wang and Celco listed "Pierce Biotechnologies, Inc." as the importer of record in box numbers 25 and 26 of Customs Form 7501 because that name must match taxpayer identification number 36-2548893 listed in box number 23 of that same form.  For this same reason, Wang and Celco listed "Pierce Biotechnologies, Inc." as the importer of record in box numbers 10 and 11 of Customs Form 3461.  Had Wang and Celco listed "Pierce

1    Chemical Company" on these forms – as their putative client was identified on the
2    POA, commercial invoice, packing list, and bill of lading – the discrepancy would have
3    invited CBP to inspect the contents of the shipment.  As members of the conspiracy to
4    import counterfeit COACH brand handbags and wallets, Wang and Celco could not
5    allow that to happen.

6          85.    Wang and Celco had no legal authority to list "Pierce Biotechnologies,
7    Inc." as the importer of record on Customs Forms 7501 and 3461.  A Customs broker's
8    legal authority to list a name on formal entry papers is limited to the name on the POA.
9    Wang and Celco made this illegal and unauthorized change, however, in order to
10   correct their co-conspirator's bungled attempt to steal the identity of Pierce Bio.
11   Knowingly submitting these false Customs Forms to CBP violated 19 C.F.R. § 111.32
12   and subjected Wang and Celco to severe criminal and civil sanctions and loss of their
13   Customs broker licenses.   No legitimate, law-abiding Customs broker would risk
14   criminal and civil sanctions and loss of their livelihood for the mere $65 that Wang and
15   Celco claim they were paid to act as Customs brokers on this shipment.   Wang and
16   Celco also would not have incurred such risks for a mere $65.  Wang and Celco must
17   have been paid, or promised, far more than $65 to knowingly file fraudulent entry
18   papers with CBP.

19         86.    In addition to filing fraudulent entry papers with CBP, Wang and Celco
20   also prepared an official document, called a Delivery Order, to grant a trucking
21   company access to the gated and guarded container yard at the Port of Los Angeles for
22   the purpose of picking up and transporting the counterfeit handbags and wallets to parts
23   unknown within the United States.  A true and accurate copy of the Delivery Order
24   prepared by Wang and Celco is attached hereto as Exhibit 15.  By preparing this
25   Delivery Order, Wang and Celco personally furthered the conspiracy's efforts to
26   transport the counterfeit handbags and wallets in commerce in the United States.

27         87.    Wang and Celco also filed fraudulent entry papers based on the fraudulent
28   POA executed in the name of Pierce Chemical to enter yet another shipping container

THEODORA ORINGHER
COUNSELORS AT LAW

filled with counterfeit goods.  This other container was filled with 10,080 pairs of counterfeit Nike® brand shoes and was also seized by CBP on or about August 7, 2009. Wang and Celco, without legal authority, also used Pierce Bio's name on the Customs Forms filed with CBP to enter this container.  Wang and Celco also prepared a Delivery Order to facilitate local transportation for this container of counterfeit goods.

88.     At the request of Coach, in July and August 2011, in-house counsel for Pierce Bio sent two letter requests via certified mail to Celco for records related to the seized shipment of COACH brand hand bags and wallets entered in Pierce Bio's name. As Wang's and Celco's putative client, Pierce Bio had every legal right to request and receive copies of those records from Celco.  The first letter request was accepted by Wang and Celco, opened and reviewed, then put back into the envelope, taped closed, and returned to the U.S. postal service as having been refused by the addressee.  The second request was simply refused by Wang and Celco.  In neither case did Wang or Celco provide Pierce Bio with an explanation why its requests for records were refused. It was a violation of 19 C.F.R. § 111.39(a) for Wang and Celco to withhold the requested records from their putative client, Pierce Bio.

89.     By refusing to produce the requested documents to Pierce Bio, Wang and Celco concede that Pierce Bio was not really their client and that Wang and Celco knowingly and intentionally facilitated the importation of counterfeit Coach handbags and wallets fraudulently using Pierce Bio's name on the entry documents.

90.     In response to Plaintiffs' Requests for Production of Documents in this case, Wang and Celco have refused to produce copies of records related to the seized shipment of counterfeit COACH brand handbags and wallets and seized shipment of counterfeit NIKE brand shoes, as well as other documents relevant to their status as licensed Customs brokers.  Wang and Celco, through their legal counsel, have claimed that the documents "simply do not exist."  Based on this information, Plaintiffs allege that Wang and Celco have destroyed documents in their possession related to the claims made by Plaintiffs in this case.  No legitimate, law-abiding Customs broker would

1  destroy such documents, which are required by 19 CFR § 111.23 to be retained by the

2  Customs broker for at least five years.

3       91.    As the foregoing shows, in accepting and using the fraudulent POA in this

4  case, Wang and Celco violated a number of regulations specifically applicable to them

5  as Customs brokers, including 19 C.F.R. §§ 111.23, 111.28(a), 111.32, 111.36,

6  111.39(a), 111.39(b), and 141.46.  It is virtually impossible for any legitimate, law-

7  abiding Customs broker to innocently violate so many regulations in the course of

8  entering a single shipment of goods, the violation of any one of which would jeopardize

9  their brokers license and thus their livelihood.  Wang and Celco knowingly violated

10  these regulations because it was necessary to do so to further the goals of the

11  conspiracy.

12       92.    Based on these facts, it is clear that Celco and Wang knew that the POA

13  purportedly executed by "Robert Laurance" on behalf of "Pierce Chemical Company"

14  was fraudulent.  Celco and Wang also knew that the true importer of the goods was not

15  Pierce Bio, but was one of their co-conspirators yet to be identified by Coach.

16       93.    Wang and Celco materially participated in a conspiracy, along with the

17  John Doe Defendants, to import the shipment of counterfeit handbags and wallets

18  referenced in the Notice of Seizure in connection with their coordinated and ongoing

19  efforts to import, sell, offer for sale, and/or distribute counterfeit COACH brand goods,

20  thereby intentionally and knowingly infringing the Coach Marks.

21  ***The Likelihood of Confusion and Injury Caused by Defendants' Actions***

22       94.    As a result of the actions of Wang, Celco, and the John Doe Defendants,

23  Coach is suffering a loss of the enormous goodwill and value created in the Coach

24  Marks, and/or may suffer such loss if Defendants are allowed to continue their illegal

25  activity.

26       95.    The COACH brand handbags and wallets imported by Defendants bear

27  counterfeit marks that are identical with or substantially indistinguishable from the

28  genuine Coach Marks identified above.  Those handbags and wallets are not the same

THEODORA ORINGHER
COUNSELORS AT LAW

as genuine handbags and wallets manufactured and sold by Coach under the Coach Marks. As such, consumers who unknowingly purchase counterfeit COACH brand handbags and wallets are likely to be confused and/or disappointed by obtaining counterfeit handbags and wallets when they intended to purchase genuine COACH brand handbags and wallets. In addition, the sale of counterfeit COACH brand handbags and wallets is likely to cause confusion among consumers regarding Coach's sponsorship or approval of the counterfeit handbags and wallets. As a result of Defendants' actions, Coach is suffering a loss of the enormous goodwill Coach created in its COACH brand handbags and wallets and is losing sales of genuine goods.

96.   Defendants are likely to continue to commit the acts complained of herein, and unless restrained and enjoined, will continue to do so, thereby causing Coach irreparable harm.

## FIRST CLAIM FOR RELIEF

(For Infringement of Registered Trademarks in Violation of Section 32(1)

of the Lanham Act, 15 U.S.C. § 1114(1))

97.   Coach specifically realleges and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 96 hereof.

98.   The acts of Defendants alleged herein constitute the use in commerce, without the consent of Coach, of a reproduction, counterfeit, copy, or colorable imitation of one or more of the Coach Marks in connection with the sale, offering for sale, distribution, or advertising of goods, which use is likely to cause confusion or mistake, or to deceive consumers and therefore infringe Coach's rights in one or more of the Coach Marks, in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

99.   Defendants' use of the infringing marks was willful, intentional, and done with the knowledge that the marks are counterfeit marks, as defined in Section 34(d) of the Lanham Act, 15 U.S.C. § 1116(d).

THEODORA ORINGHER
COUNSELORS AT LAW

100.   Defendants' acts entitle Coach to damages for all of Defendants' profits derived from their past unlawful conduct, trebled, to the full extent provided under Sections 35(a) and 35(b) of the Lanham Act, 15 U.S.C. §§ 1117(a)-(b), or in the alternative to statutory damages under Section 35(c) of the Lanham Act, 15 U.S.C. § 1117(c).

101.   Coach has no adequate remedy at law for the foregoing wrongful conduct. Coach has been, and absent injunctive relief will continue to be, irreparably harmed by Defendants' actions.

## SECOND CLAIM FOR RELIEF

(For False Designation of Origin and Trademark and Trade Dress Infringement in Violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A))

102.   Coach specifically realleges and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 101 hereof.

103.   The acts of Defendants alleged herein constitute the use in interstate commerce of a word, term, name, symbol, or device, or any combination thereof, or false designation of origin, in connection with the sale, or offering for sale, of goods in violation of section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A). These acts of Defendants are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with Coach, or as to the origin, sponsorship, or approval of the counterfeit goods by Coach.

104.   Defendants' use of infringing marks was willful, intentional, and done with the knowledge that the marks are counterfeit marks, as defined in Section 34(d) of the Lanham Act, 15 U.S.C. § 1116(d).

105.   Defendants' acts entitle Coach to damages for all of Defendants' profits derived from their past unlawful conduct, trebled, to the full extent provided under Sections 35(a) and 35(b) of the Lanham Act, 15 U.S.C. §§ 1117(a)-(b), or in the alternative to statutory damages under Section 35(c) of the Lanham Act, 15 U.S.C. § 1117(c).

106.    Coach has no adequate remedy at law for the foregoing wrongful conduct. Coach has been, and absent injunctive relief will continue to be, irreparably harmed by Defendants' actions.

### THIRD CLAIM FOR RELIEF

(For Unlawful Importation of Goods Bearing Infringing Marks in Violation of Section 42 of the Lanham Act, 15 U.S.C. § 1124)

107.    Coach specifically realleges and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 106 hereof.

108.    Defendants' acts alleged herein constitute the importation of merchandise which bears copies or simulations of the federally registered Coach Marks in violation of Section 42 of the Lanham Act, 15 U.S.C. § 1124.

109.    Defendants' use of the infringing marks was willful, intentional, and done with the knowledge that the marks are counterfeit marks, as defined in Section 34(d) of the Lanham Act, 15 U.S.C. § 1116(d).

110.    Defendants' acts entitle Coach to damages for all of Defendants' profits derived from their past unlawful conduct, trebled, to the full extent provided under Sections 35(a) and 35(b) of the Lanham Act, 15 U.S.C. §§ 1117(a)-(b), or in the alternative to statutory damages under Section 35(c) of the Lanham Act, 15 U.S.C. § 1117(c).

111.    Coach has no adequate remedy at law for the foregoing wrongful conduct. Coach has been, and absent injunctive relief will continue to be, irreparably harmed by Defendants' actions.

### FOURTH CLAIM FOR RELIEF

(For Unlawful Importation of Goods Bearing Registered United States Trademarks in Violation of Section 526(a) of the Tariff Act, 19 U.S.C. § 1526(a))

112.    Coach specifically realleges and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 111 hereof.

113.   Defendants' acts alleged herein constitute the importation of merchandise which bears imitations of the Coach Marks without Coach's consent, in violation of Section 526(a) of the Tariff Act, 19 U.S.C. § 1526(a).

114.   Defendants' use of the infringing marks was willful, intentional, and done with the knowledge that the marks are counterfeit marks, as defined in Section 34(d) of the Lanham Act, 15 U.S.C. § 1116(d).

115.   Defendants' acts entitle Coach to damages for all of Defendants' profits derived from their past unlawful conduct, trebled, to the full extent provided under Sections 35(a) and 35(b) of the Lanham Act, 15 U.S.C. §§ 1117(a)-(b), or in the alternative to statutory damages under Section 35(c) of the Lanham Act, 15 U.S.C. § 1117(c).

116.   Coach has no adequate remedy at law for the foregoing wrongful conduct. Coach has been, and absent injunctive relief will continue to be, irreparably harmed by Defendants' actions.

**FIFTH CLAIM FOR RELIEF**

(For Civil Conspiracy)

117.   Coach specifically realleges and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 116 hereof.

118.   Coach is informed and believes and thereon alleges that at all times herein mentioned each of the Defendants was the agent and employee of each of the remaining Defendants, and in doing the things hereinafter alleged, was acting within the course and scope of such agency.

119.   In or about July 2009, Defendants knowingly and willfully conspired and agreed among themselves to, without Coach's consent, import, distribute, sell, and/or offer for sale commercial quantities of counterfeit handbags and wallets that bear spurious marks, appearances, and features that are either identical to or substantially indistinguishable from the Coach Marks.

120.   Defendants did the acts and things herein alleged pursuant to, and furtherance of, the conspiracy and above-alleged agreement.

121.   The last overt act currently known to Coach in pursuance of the above-described conspiracy occurred in July 2009 when Wang and Celco filed fraudulent entry papers with CBP and prepared a Delivery Order in order to facilitate the importation, release, and distribution of the counterfeit handbags and wallets into U.S. commerce.

122.   As a proximate result of the wrongful acts herein alleged, Coach has been generally damaged in an amount to be proved at trial.

123.   Coach has no adequate remedy at law for the foregoing wrongful conduct. Coach has been, and absent injunctive relief will continue to be, irreparably harmed by Defendants' actions.

### **PRAYER**

WHEREFORE, Plaintiff Coach prays for judgment as follows:

A.   For judgment that:

   (i)   Defendants have violated Section 32 of the Lanham Act, 15 U.S.C. § 1114;

   (ii)   Defendants have violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a);

   (iii)   Defendants have violated Section 42 of the Lanham Act, 15 U.S.C. § 1124;

   (iv)   Defendants have violated Section 526 of the Tariff Act, 19 U.S.C. § 1526(a);

   (v)   Defendants' violations of Sections 32, 43(a), and 42 of the Lanham Act and Section 526 of the Tariff Act were willful, intentional, and done with knowledge that the infringing marks were counterfeit; and

1        (vi)    Defendants are jointly and severally liable to Coach for their

2                acts undertaken pursuant to a civil conspiracy.

3        B.      For an injunction restraining and enjoining Defendants and their

4   divisions, subsidiaries, officers, agents, employees, attorneys, and all those persons in

5   active concert or participation with them who receive actual notice of the order by

6   personal service or otherwise, from (i) purchasing, importing, distributing, selling, or

7   offering for sale, counterfeit COACH brand goods, or assisting, aiding or abetting any

8   other person or entity in doing so; and (ii) using the Coach Marks or trademarks

9   confusingly similar therewith, or assisting, aiding or abetting any other person or entity

10  in doing so.

11       C.      For an order requiring Defendants, within thirty (30) days after entry

12  of judgment, to deliver up to counsel for Coach any and all goods in their possession,

13  custody, and/or control that infringe the Coach Marks.

14       D.      For an order requiring Defendants, within thirty (30) days after entry

15  of judgment, to recall all goods sold or distributed by them that infringe the Coach

16  Marks.

17       E.      For an order requiring Defendants, within thirty (30) days after entry

18  of judgment, to deliver up to counsel for Coach any and all documents in their

19  possession, custody, and/or control that reflect or relate to the purchase, importation,

20  storage, shipping, or sale of goods that infringe the Coach Marks.

21       F.      For an order requiring Defendants, within thirty (30) days after entry

22  of judgment, to prepare and deliver to counsel for Coach a complete list of entities from

23  whom Defendants purchased, and to whom they sold, goods that infringe the Coach

24  Marks.

25       G.      For an order requiring Defendants, within thirty (30) days after entry

26  of judgment, to file with the Court and serve upon counsel for Coach a written report,

27  under oath, setting forth in detail the manner in which Defendants have complied with

28  paragraphs B through F above.

1    H.     For an order (i) requiring Defendants to account for and pay over to

2   Coach all of Defendants' profits derived from their unlawful conduct to the full extent

3   provided for by Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a); (ii) trebling the

4   amount of damages Defendants are required to pay over to Coach (*i.e.*, Defendants'

5   profits derived from their unlawful conduct), and awarding Coach its costs, attorneys'

6   fees, and prejudgment interest to the full extent provided for by Section 35(b) of the

7   Lanham Act, 15 U.S.C. § 1117(b); and (iii) as an alternative to awarding Defendants'

8   profits, trebled, under Sections 35(a) and 35(b), awarding Coach statutory damages of

9   $2 million per counterfeited Coach Mark, as provided for by Section 35(c) of the

10  Lanham Act, 15 U.S.C. § 1117(c).

11    I.     For costs of suit, attorneys' fees, and such other and further relief as

12  the Court shall deem appropriate.

13  DATED: November 9, 2012      THEODORA ORINGHER PC

14

15    By:

16           Samuel R. Watkins, Esq.
             Attorneys for Coach, Inc. and Coach Services, Inc.

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1



U.S. Customs and Border Protection

Summer 2012 Webinar Series

# The Role of the Broker:
## Establishing *bona fides*

Part of CBP's
*Initiatives for 21st Century Trade*
June 21, 2012

Exhibit 1 - 1 of 10
Page 35 of 63

1

# Housekeeping

- Make sure the volume is turned up on your computer
- Ask questions and add comments using the "Chat" feature
- View in "Full Screen" if you'd like to hide the CC
- Producer has responsibility for the content of this webinar
- We will not be showing the comments and questions to the audience today but they will be posted (with responses) to the website
- We will be conducting web polls today (your vote will be anonymous)
- June 7th webinar is posted and Q&A will be posted shortly
- Contact us offline at **RoleoftheBroker@cbp.dhs.gov**

2

Exhibit 1 - 2 of 10
Page 36 of 63

3

# Validating importers

- How can brokers enhance their relationships with their importers, particularly those importers who represent the greatest compliance risk for CBP (e.g., one-time/unknown importers)?

- Establishing *bona fides*

- "Level the playing field" for brokers

- **Improve compliance and reduce risk** for CBP

- Corresponding regulations in Part 141 (Right to Make Entry)

- CBP Form 5106

Exhibit 1 - 3 of 10
Page 37 of 63

4

# Your hosts today

- **Jeremy Baskin**, Senior Advisor to the Executive Director, Regulations & Rulings, Office of International Trade

- **John Leonard**, Director for Textile/Apparel Policy & Programs, Office of International Trade

- **Rick McManus**, Senior Attorney, Office of the Chief Counsel

- **Elena Ryan**, Acting Director for Trade Facilitation & Administration, Office of International Trade

Exhibit 1 - 4 of 10
Page 38 of 63

5

# CBP concerns (no particular order)

- The broker has not made sure that the IOR really is the owner/purchaser of the goods

- Shell companies and identity theft

- Brokers getting Powers of Attorney from third parties (usually a freight forwarder)

- The broker may not have established direct communication with the IOR if using a third party

- Billings are not from the broker to the IOR

- Commercial feasibility of limiting the waiver provision in 111.36(a)?

Exhibit 1 - 5 of 10
Page 39 of 63

6

# 19 CFR 111.36 (a)

- *Employment by unlicensed person other than importer.* When a broker is employed for the transaction of customs business by an unlicensed person who is not the actual importer, the broker must transmit to the actual importer either a copy of his bill for services rendered or a copy of the entry, unless...**the importer has in writing waived transmittal** of the copy of the entry or bill for services rendered.

Exhibit 1 - 6 of 10
Page 40 of 63

# Webinar schedule

**Start time is 3pm EDT and will generally be about 90 minutes**

**http://connect.hsin.gov/rotb/**

**You do not need to sign up; please join us at the scheduled time**

June 7th        Overview

June 21st       Establishing *bona fides*

June 28th       Broker permitting

July 12th       Continuing education (Part 1)

July 26th       Understanding impacts to business practices

7

Exhibit 1 - 7 of 10
Page 41 of 63

8

# Webinar schedule (cont)

**Start time is 3pm EDT and will generally be about 90 minutes**

**http://connect.hsin.gov/rotb/**

Aug 9th        Continuing education (Part 2)

Aug 23rd       Developing reg alternatives and evaluating
               economic impacts

Sept 6th       Broker penalties

Sept 20th      Wrap-up and summary of major themes

Exhibit 1 - 8 of 10
Page 42 of 63

# Webinars

- Miss a webinar? We'll post to the CBP.gov website.
  - Recording
  - Q&As

- Would your **association** like to hold a webinar with us to discuss local issues? Contact us at **RoleoftheBroker@cbp.dhs.gov**

9

Exhibit 1 - 9 of 10

Page 43 of 63

10

# Websites and communication tools

Questions? Comments? Concerns?

Email us at **RoleoftheBroker@cbp.dhs.gov**

Our trade transformation website:

**www.cbp.gov/xp/cgov/trade/trade_transformation/**

Sign up for Trade Updates!

CSMS messages and Twitter

And **YOU!**

Exhibit 1 - 10 of 10
Page 44 of 63

# EXHIBIT 2

**Celco Customs Service Co.**

9560 Flair Drive, Suite 228, El Monte, CA 91731   Tel: 626-442-5588 · Fax: 626-442-5829

CUSTOMS POWER OF ATTORNEY

* Capacity = President, Vice President, Secretary or Treasurer

IRS# 36-2548893

Check appropriate circle
☐ Individual    ☐ Sole Proprietorship
☐ Partnership   ☒ Corporation

KNOW ALL MEN BY THESE PRESENTS: That, __Pierce Chemical Company__
                                     (Full Name of person, partnership, or corporation, or sole proprietorship) (Identify)

a corporation doing business under the laws of the State of __Illinois__                                    doing business at

having an office and place of business at __3747 North Meridian Road Rockford, Illinois 61105__

hereby constitutes and appoints each of the following persons __Celco Customs Service Company__ through its licensed official(s) and its authorized employee(s) as a true and lawful agent and attorney of the Grantor named above for and in the name, place, and stead of said Grantor from this day and in all Customs Districts, and in no other name, to make, endorse, sign, declare, or swear to any entry, withdrawal, declaration, certificate, bill of lading, manifest, cause or any other document required by law or regulation in connection with the importation, transportation, or exportation of any merchandise shipped or consigned by or to said Grantor, or to any person as or to any condition which may be imposed by law or regulation in connection with such merchandise; to receive any merchandise deliverable to said Grantor;

To make endorsements on bills of lading conferring authority to transfer title, to make entry or collect drawback, and to make, sign, declare, or swear to any supplemental statement, schedule, supplemental schedule, certificate of delivery, certificate of manufacture, certificate of manufacture and delivery, abstract of manufacturing records, declaration of proprietor documents which may be required by law or regulation for drawback purposes, regardless of whether such bill of lading, sworn statement, schedule, certificate, abstract, declaration, or other affidavit of document is intended for filing in any Customs District;

To sign, seal, and deliver for and as the act of said Grantor any bond required by law or regulation in connection with the entry or withdrawal of imported merchandise or merchandise exported with or without benefit of drawback, or in connection with the entry, clearance, lading, unlading or navigation of any vessel or other means of conveyance owned or operated by said Grantor, and any and all bonds which may be voluntarily given and accepted under applicable laws and regulations, consignee's and owner's declarations provided for in section 485, Tariff Act of 1930, as amended, or affidavits in connection with the entry of merchandise;

To authorize other Customs Brokers to act as Grantor's agent; to receive, endorse and collect checks drawn for the account of the United States of Treasury of the United States, if Grantor is a consignee of the United States, to accept service of process on behalf of the Grantor.

And generally to transact Customs business in which Grantor is or may be concerned or interested and which any properly be transacted or performed by any and all agents, so that every act and thing done and properly to do anything whatsoever requisite and necessary to be done in the premises as fully as said Grantor could do if present; the said Grantor hereby ratifying and confirming all that the said agent and attorney shall lawfully do by virtue of these presents; the foregoing Power of Attorney to remain in full force and effect under the __30th__ day of __July__, __20 09__, or until notice of revocation in writing duly given to and received by a District Director of Customs. If the said Grantor of this Power of Attorney is a partnership, the said power shall in no case have any force or effect after the expiration of 2 years from the date of its execution.

IN WITNESS WHEREOF, the said __Pierce Chemical Company__                      has caused these presents to be sealed and

signed: (Signature) __Robert Laurance__ (by) __Robert Laurance__, Vice President

WITNESS                                          (Corporate Seal)    (Date) __July 22, 2009__

Exhibit 2 - 1 of 1
Page 45 of 63

# EXHIBIT  3

SEP-21-2009  15:00  CELCO CUSTOMS SERVICE CO.  626 442 0141  P.01

EST: 3  PAPERLESS  Page 1
Form Approved OMB No. 1651-0022
EXP. 03-31-2012

DEPARTMENT OF HOMELAND SECURITY
U.S. Customs and Border Protection

## ENTRY SUMMARY

| | |
|---|---|
| 1. Filer Code/Entry No. BDGL-3046482-2 | 2. Entry Type 01 ABI/A | 3. Summary Date 08/26/09 717 |

| 4. Surety No. 891 | 5. Bond Type 8 | 6. Port Code 2704 | 7. Entry Date 08/14/09 |
|---|---|---|---|

| 8. Importing Carrier MAERSK ALFIRK | 9. Mode of Transport 11 | 10. Country of Origin CN | 11. Import Date 07/24/09 |
|---|---|---|---|

| 12. B/L or AWB No. MAEU SZHVJM535 | 13. Manufacturer ID CNCOLPRI3ZHO | 14. Exporting Country CN | 15. Export Date 07/11/09 |
|---|---|---|---|

| 16. I.T. No. | 17. I.T. Date | 18. Missing Docs | 19. Foreign Port of Lading 57078 | 20. U.S. Port of Unlading 2704 |
|---|---|---|---|---|

| 21. Location of Goods/G.O. No. W185 Voyage: 907 | 22. Consignee No. 36-254889300 | 23. Importer No. 36-254889300 | 24. Reference No. |
|---|---|---|---|

25. Ultimate Consignee Name and Address
PIERCE BIOTECHNOLOGIES INC
3747 N MERIDIAN RD

Destination: CA
City ROCKFORD        State IL  Zip 611019316

26. Importer of Record Name and Address
PIERCE BIOTECHNOLOGIES INC
3747 N MERIDIAN RD

City ROCKFORD        State IL  Zip 611019316

| 27. Line No. | 28. Description of Merchandise 29. A. HTSUS No. B. ADA/CVD No. | 30. A. Grossweight B. Manifest Qty. | 31. Net Quantity in HTSUS Units | 32. A. Entered Value B. CHGS C. Relationship | 33. A. HTSUS Rate B. ADA/CVD Rate C. IRC Rate D. Visa No. | 34. Duty and I.R. Tax Dollars Cents |
|---|---|---|---|---|---|---|
| 001 | PRTD CATLGS,PRICE LISTS,NOTICE 4911.10.0040 | 540 CARTO 16,920 KG | 127,440.00 NO | $26,762 C $2,700 N | FREE | $0.00 |
| | 499 - Merchandise Processing Fee 501 - Harbor Maintenance Fee | | | | 0.2100% 0.1250% | $56.20 $33.45 |
| | Totals for Invoice CP200907012 | Invoice Value 26,762.00 USD | +/- MMV | Exchange 1.00000 | | Entered Value 26,762.00 USD |

| Other Fee Summary for Block 39 499 - MPF  $56.20 501 - HMF  $33.45 | 35. Total Entered Value $ 26,762 | CBP USE ONLY | | TOTALS |
|---|---|---|---|---|
| | Total Other Fees $ 89.65 | A. LIQ CODE | B. Ascertained Duty | 37. Duty $0.00 |
| | | REASON CODE | C. Ascertained Tax | 38. Tax |
| 36. DECLARATION OF IMPORTER OF RECORD (OWNER OR PURCHASER) OR AUTHORIZED AGENT | | | D. Ascertained Other | 39. Other $89.65 |
| | | | D. Ascertained Total | 40. Total $89.65 |

I declare that I am the ☐ Importer of record and that the actual owner, purchaser, or consignee for CBP purposes is as shown above, OR ☒ owner or purchaser or agent thereof. I further declare that the merchandise ☐ was obtained pursuant to a purchase or agreement to purchase and that the prices set forth in the invoices are true, OR ☒ was not obtained pursuant to a purchase or agreement to purchase and the statements in the invoices as to value or price are true to the best of my knowledge and belief. I also declare that the statements in the documents herein filed fully disclose to the best of my knowledge and belief the true prices, values, quantities, rebates, drawbacks, fees, commissions, and royalties and are true and correct, and that all goods or services provided to the seller of the merchandise either free or at reduced cost are fully disclosed.
I will immediately furnish to the appropriate CBP officer any information showing a different statement of facts.

| 41. DECLARANT NAME Wen Shi, ATTY IN FACT | TITLE | SIGNATURE | DATE 08/25/09 |
|---|---|---|---|

42. Broker/Filer Information (Name, address, phone number)
Celco Customs Service Co.
9660 Flair Dr. Suite 226
El Monte, CA 91731  626-442-3588

43. Broker/Importer File No.
3046482

CBP Form 7501 (06/09)

Exhibit 3 - 1 of 2
Page 46 of 63

09/21/09  MON 16:09  [TX/RX NO 8460]

SEP-21-2009  15:01      CELCO CUSTOMS SERVICE CO.                    626 442 0141      P.02

QUIK PICK / BOX #50

**U.S. DEPARTMENT OF HOMELAND SECURITY**
**Bureau of Customs and Border Protection**

Form Approved
OMB No. 1651-0024

## ENTRY/IMMEDIATE DELIVERY     JUL 27 2009

Celco Customs Service Co.
9660 Flair Dr. Suite 226
El Monte, CA 91731  626-442-3588 Fax: 626-442-5829

Page: 1
ABI CERTIFIED
CST# 717
EST# 3

19 CFR 142.3, 142.16, 142.22, 142.24

| 1. ARRIVAL DATE | 2. ELECTED ENTRY DATE | 3. ENTRY TYPE CODE/NAME | 4. ENTRY NUMBER |
|---|---|---|---|
| 072409 | 072709 | 01 | BDQ-3046482-2 |

| 5. PORT | 6. SINGLE TRANS. BOND | 7. BROKER/IMPORTER FILE NUMBER |
|---|---|---|
| 2704 | | 3046482 |

| 8. CONSIGNEE NUMBER | 9. IMPORTER NUMBER |
|---|---|
| 36-254889300 | SAME |

| 10. ULTIMATE CONSIGNEE NAME | 11. IMPORTER OF RECORD NAME |
|---|---|
| PIERCE BIOTECHNOLOGIES INC<br>3747 N MERIDIAN RD<br>ROCKFORD, IL 611019316 | SAME |

| 12. CARRIER NAME | 13. VOYAGE/FLIGHT/TRIP | 14. LOCATION OF GOODS-CODE(S)/NAME(S) |
|---|---|---|
| MAEU | 907 | W185MAERSK SEALAND - APM TERMINALS |

| 15. VESSEL CODE/NAME |
|---|
| MAERSK ALFIRK |

| 16. U.S. PORT OF UNLADING | 17. MANIFEST NUMBER | 18. G.O. NUMBER | 19. TOTAL VALUE |
|---|---|---|---|
| 2704 | | | 26,762 |

20. DESCRIPTION OF MERCHANDISE

BROWSE PRODUCT CATALOG

| 21. IT/BL/AWB CODE | 22. IT/BL/AWB NO. | 23. MANIFEST QUANTITY | 24. H.S. NUMBER | 25. COUNTRY OF ORIGIN | 26. MANUFACTURER NO. |
|---|---|---|---|---|---|
| M | MAEU SZHVJM535 | 540  CARTO | 4911.10.0040 | CN | CNCOLPRI3ZHO |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

**27. CERTIFICATION**

I hereby make application for entry/immediate delivery. I certify that the above information is accurate, the bond is sufficient, valid, and current, and that all requirements of 19 CFR Part 142 have been met.

SIGNATURE OF APPLICANT

X YIU LEE - ATTY IN FACT

| PHONE NO. | DATE |
|---|---|
| 626-442-3588 | 07/27/09 |

**28. CBP USE ONLY**

☐ OTHER AGENCY ACTION REQUIRED, NAMELY:

☐ CBP EXAMINATION REQUIRED

☐ ENTRY REJECTED, BECAUSE:

29. BROKER OR OTHER GOVT. AGENCY USE

Containers:
UESU4665337
Req. Exam at: W344 PRICE TRANSFER { C.E.S }
Transfer By:
  Entry Bond [ ]        Carrier Bond [ ]
  CHL Bond [ ]          CFS Bond [ ]
Paired Cities Req: Yes [ ]  No [X]

DELIVERY AUTHORIZED:

| SIGNATURE | DATE |
|---|---|

Paperwork Reduction Act Notice: This information is needed to determine the admissibility of imports into the United States and to provide the necessary information for the examination of the cargo and to establish the liability for payment of duties and taxes. Your response is necessary. The estimated average burden associated with this collection of information is 15 minutes per respondent or recordkeeper depending on individual circumstances. Comments concerning the accuracy of this burden estimate and suggestions for reducing this burden should be directed to Bureau of Customs and Border Protection, Information Services Branch, Washington, DC 20229, and to the Office of Management and Budget, Paperwork Reduction Project (1651-0024), Washington, DC 20503.

CBP Form 3461 (01/89)

Exhibit 3 - 2 of 2
Page 47 of 63

09/21/09  MON 16:09  [TX/RX NO 8460]

# EXHIBIT 4



301 E. Ocean Blvd
Long Beach, CA 90802

**U.S. Customs and
Border Protection**

2009-2704-001104
nl

SEP 0 8 2009

Coach Inc.
516 West 34th St.
New York, NY 10001
Attn: April Pyatt

Re: Seizure of Infringing Merchandise

Dear Ms. Pyatt:

Our records show that Coach, Inc. is the owner of the trademark recorded under trademark recordation numbers (TMK) 09-00492, and Customs and Border Protection (CBP) has seized articles found to infringe upon said trademark.

Pursuant to Title 19, Code of Federal Regulations, Section 133.21 (counterfeit trademark), you are being provided the following information concerning said seizure:

Date and port of entry: July 24, 2009; Los Angeles/Long Beach harbor

Description of merchandise (including quantity): handbags, 22,040ea; wallets, 10,300ea

Country of Origin: China

Name and address of exporter: HECNY Shipping Limited, Blocke East, 43/F, Int'l Trade, Centre Blgd, 3002, Renmin South, Rd. Luohu District, Shenzhen, China

Name and address of importer: Pierce Biotechnologies, Inc., 3747 N. Meridian Road, Rockford, IL 61101-9316

Any questions not answered by this letter should be directed to Nicole M. Lopez of my staff at (562) 366-5545.

Sincerely,

Robert P. Thierry
Director, Fines, Penalties
and Forfeitures

Exhibit 4 - 1 of 1
Page 48 of 63

# EXHIBIT 5



Exhibit 5 - 1 of 2

Page 49 of 63



Exhibit 5 - 2 of 2
Page 50 of 63

# EXHIBIT  6

Department of the Treasury
U.S. Customs Service
141.32.CR.

# Customs Power of Attorney

ID# _____

Check appropriate box:
☐ Individual
☐ Partnership
☐ Corporation
☐ Sole Proprietorship

KNOW ALL MEN BY THESE PRESENTS: That, _____

_____ (Full Name of person, partnership, or corporation, or sole proprietorship (Identify)

a corporation doing business under the laws of the State of _____ or a _____

doing business as _____ residing at _____

having an office and place of business at _____, hereby constitutes and appoints each of the following persons

_____ (Give full name of each agent designated)

as a true and lawful agent and attorney of the grantor named above for and in the name, place, And stead of said grantor from this date and in all Customs Districts, and in no other name, to make, endorse, sign, declare, or swear to any entry, withdrawal, declaration, certificate, bill of lading, carnet or other document required by law or regulation in connection with the importation, transportation, or exportation of any merchandise shipped or consigned by or to said grantor; to perform any act or condition which may be required by law or regulation in connection with such merchandise; to receive any merchandise deliverable to said grantor;
To make endorsements on bills of lading conferring authority to transfer title, make entry or collect drawback, and to make, sign, declare, or swear to any statement, supplemental statement, schedule, supplemental schedule, certificate of delivery, certificate of manufacture, certificate of manufacture and delivery, abstract of manufacturing records, declaration of proprietor on drawback entry, declaration of exporter on drawback entry, or any other affidavit or document which may be required by law or regulation for drawback purposes, regardless of whether such bill of lading, sworn statement, schedule, certificate, abstract, declaration, or other affidavit or document is intended for filing in any customs district;
To sign, seal, and deliver for and as the act of said grantor any bond required by law or regulation in connection with the entry or withdrawal of imported merchandise or merchandise exported with or without benefit of drawback, or in connection with the entry, clearance, lading, unlading or navigation of any vessel or other means of conveyance owned or operated by said grantor, and any and all bonds

which may be voluntarily given and accepted under applicable Laws and regulations, consignee's and owner's declarations provided for in section 485, Tariff Act of 1930, as amended or affidavits in connection with the entry of merchandise.
To sign and swear to any document and to perform any act that may be necessary or required by law or regulation in connection with the entering, clearing, lading, unlading, or operation of any vessel or other means of conveyance owned or operated by said grantor;
To authorize other Customs Brokers to act as grantor's agent; to receive, endorse and collect checks issued for Customs duty refunds in grantor's name drawn on the Treasurer of the United States; if the grantor is a nonresident of the United States, to accept service of process on behalf of the grantor;
And generally to transact at the customhouses in any district, any and all customs business, including making, signing, and filing of protests under section 514 of the Tariff Act of 1930, in which said grantor is or may be concerned or interested and which may properly be transacted or performed by an agent and attorney, giving to said agent and attorney full power and authority to do anything whatever requisite and necessary to be done in the premises as fully as said grantor could do if present and acting, hereby ratifying and confirming all that the said agent and attorney shall lawfully do by virtue of these presents:
the foregoing power of attorney to remain in full force and effect until the _____ day of _____, 2____, or until notice of revocation in writing is duly given to and received by a District Director of Customs.  If the donor of this power of attorney is a partnership, the said power shall in no case have any force or effect after the expiration of 2 years from the date of its execution.

IN WITNESS WHEREOF, the said

Has caused these presents to be sealed and signed: (Signature) _____

(Capacity) _____

WITNESS: _____ (Date) _____

(Corporate seal)

Customs Form 5291 (10-07-80)

Exhibit 6 - 1 of 1
Page 51 of 63

# EXHIBIT  7

ADMINISTRATIVE MESSAGE 05-0441          04/20/2005
TITLE: BRO-VALIDATING THE POWER OF ATTORNEY


TO      : ALL ABI FILERS


FROM    : OFFICE OF FIELD OPERATIONS, BROKER COMPLIANCE


SUBJECT : VAILDATING THE POWER OF ATTORNEY


THE PURPOSE OF THIS ADMINISTRATIVE MESSAGE IS TO SUGGEST WAYS BROKERS
CAN VALIDATE POWERS OF ATTORNEY (POA).

BECAUSE THE POA CAN AUTHORIZE THE MOVEMENT OF CONVEYANCES AND
MERCHANDISE INTO THE UNITED STATES, IT IS CRITICAL THAT IT BE EXAMINED
CAREFULLY. BY ENSURING THAT EACH POA IS VALID, THE BROKER JOINS CUSTOMS
AND BORDER PROTECTION ON THE NATIONAL SECURITY FRONTLINES IN VERIFYING
THE DATA USED TO SCREEN WHAT ENTERS THIS COUNTRY.

IN ADDITION TO SECURITY, THE BROKER'S OWN PROFESSIONAL BUSINESS
INTERESTS AND CONTINUING OBLIGATION TO DEMONSTRATE "REASONABLE CARE"
REQUIRE VERIFICATION OF THE POA GRANTOR'S IDENTITY AND LEGAL AUTHORITY
(POSITION IN A COMPANY OR PARTNERSHIP) TO ENTER INTO A POA.


  HERE ARE SOME WAYS THE BROKER CAN VALIDATE A POWER OF ATTORNEY


    -   TO THE GREATEST EXTENT POSSIBLE, HAVE POAS COMPLETED IN PERSON
        SO THE GRANTOR'S PERSONAL IDENTIFICATION (DRIVERS LICENSE,
        PASSPORT, ETC.) CAN BE REVIEWED.

    -   CHECK APPLICABLE WEB SUTES TO VERIFY THE POA GRANTOR'S BUSINESS
        AND REGISTRATION WITH STATE AUTHORITIES.

    -   IF THE PRINCIPAL USES A TRADE OR FICTITIOUS NAME IN DOING
        BUSINESS, CONFIRM THAT THE NAME APPEARS ON THE POA.

    -   VERIFY THAT THE IMPORTER'S NAME, IMPORTER NUMBER AND EMPLOYER
        IDENTIFICATION NUMBER (ALSO KNOWN AS THE FEDERAL TAX
        IDENTIFICATION NUMBER) ON THE POA MATCH WHAT IS IN ACS.

    -   CHECK WHETHER THE POA GRANTOR IS NAMED AS A SANCTIONED OR
        RESTRICTED PERSON OR ENTITY BY THE U.S. GOVERNMENT. (SEE THE "LIST
        TO CHECK" AT WWW.BIS.DOC.GOV/COMPLIANCEANDENFORCEMENT/INDEX.HTM.)


IF YOU HAVE ANY QUESTIONS OR COMMENTS ABOUT POA REQUIREMENTS AND
VALIDATION PROCEDURES, PLEASE CONTACT A MEMBER OF THE BROKER MANAGEMENT
BRANCH, TRADE COMPLIANCE AND FACILITATION, OFFICE OF FIELD OPERATIONS,
AT (202) 344-2580.

Exhibit 7 - 1 of 1

Page 52 of 63

# EXHIBIT  8

printer friendly page
Case 2:12-cv-07467-MMM-PJW   Document 40   Filed 11/09/12   Page 61 of 78   Page ID #:549
Page 1 of 1

Print this Page
Close this Window

**Printer Friendly Version Of:**
http://www.cbp.gov/xp/cgov/trade/trade_programs/broker/validating_poa.xml
**Printed:**
Thu Nov 8 13:35:51 PST 2012

# Validating the Power of Attorney
09/04/2009

Because the Power of Attorney (POA) can authorize the movement of conveyances and merchandise into the United States, it is critical that it be examined carefully. By ensuring that each POA is valid, the broker joins U.S. Customs and Border Protection on the national security frontlines in verifying the data used to screen what enters this country.

In addition to security, the broker's own professional business interests and continuing obligation to demonstrate "reasonable care" require verification of the POA grantor's identity and legal authority (position in a company or partnership) to enter into a POA.

Here are some ways the broker can validate a Power of Attorney:

- To the greatest extent possible, have POAs completed in person so the grantor's personal identification (driver's license, passport, etc.) can be reviewed.
- Check applicable Web sites to verify the POA grantor's business and registration with State authorities.
- If the principal uses a trade or fictitious name in doing business, confirm that the name appears on the POA.
- Verify that the importer's name, importer number and Employer Identification Number (also known as the Federal Tax Identification Number) on the POA match what is in ACS.
- Check whether the POA grantor is named as a sanctioned or restricted person or entity by the U.S. Government. See the Bureau of Industry and Security's Export Enforcement page. ( Export Enforcement )

Questions concerning this should be directed to the:

Office of International Trade
Trade Policy and Programs
( Broker Compliance Points of Contact )

## see also:

▶ **on cbp.gov:**

   Memorandum: Guidance: Suggested Steps for Obtaining a Valid Power of Attorney
   (pdf - 47 KB.)

   Broker Compliance Points of Contact

▶ **on the web:**

   Export Enforcement

Exhibit 8 - 1 of 1

Page 53 of 63

# EXHIBIT  9



**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

August 18, 2011

Honorable Jack B. Weinstein
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

                    Re: Nike Inc. v. Cathy Chiu Lam CHB et al.
                        CV-10-1163 (Weinstein, J.) (Levy, M.J.)

Dear Judge Weinstein:

        The United States of America respectfully submits this letter in response to Your Honor's
Order June 13, 2011 (Dkt. 72).

        The United States is not in a position to comment specifically on the claims and defenses
asserted in this action. However, the United States can provide general information about the role
of the customs broker in import and export transactions. A customs broker is required to
exercise "responsible supervision and control" over an import or export transaction. 19 C.F.R.
§ 111.28(a). "Responsible supervision and control" is defined as:

                that degree of supervision and control necessary to ensure the
                proper transaction of the customs business of a broker, including
                actions necessary to ensure that an employee of a broker provides
                substantially the same quality of service in handling customs
                transactions that the broker is required to provide . . .

19 C.F.R. § 111.1.

        A customs broker, prior to engaging in an import or export transaction, must obtain a
valid power of attorney from a principal. 19 C.F.R. § 141.46. As part of his or her obligation to
exercise "responsible supervision and control", the customs broker must exercise reasonable care
to ensure that the power of attorney in his or her possession is valid. Customs and Border
Protection ("CBP") has published on its website a guidance to brokers, which lists methods by
which brokers may validate a power of attorney. That guidance is annexed hereto.  Pursuant to
19 U.S.C. § 1641(d)(1)(C), CBP may commence an administrative proceeding seeking monetary

Exhibit 9 - 1 of 2
Page 54 of 63

2

penalties and/or revocation or suspension of license against a broker who fails to take exercise reasonable care to validate a power of attorney.  CBP has issued administrative rulings related to the obligations of a customs broker. These rulings are available at rulings.cbp.gov, which has a search function.

The United States hopes that the foregoing will be helpful to the Court and the parties.

Respectfully submitted,

LORETTA E. LYNCH
United States Attorney
Eastern District of New York

By:    /s
_____
ELLIOT M. SCHACHNER
Assistant United States Attorney
(718) 254-6053

cc:
       All counsel of record
       (Via ECF)

Exhibit 9 - 2 of 2

Page 55 of 63

# EXHIBIT  10

FEB-27-2010  14:40                                                      P.001

To: CELINE

From: SELINA

TOTAL: 5 PAG

**Subject:** RE: upcoming ocean freight shipment..
**From:** Pierce Robert <piercechemical@hotmail.com>
**Date:** Wed, 22 Jul 2009 17:15:33 -0400
**To:** <jeffrey@edsintl.net>
**CC:** <selina@edsintl.net>, <cecily.zhang@corp.globalmarket.com>

Hi, Jeffrey:

There are two spreadsheets on each Excel file. the first sheet is the Invoice and the 2nd sheet is the packing list. I have attached both Excel files again plus the filled out POA. I'll send delivery instructions later. Fees will be paid by China factory. These are scheduled to arrive Friday. Let me know if you need anything else.

Thanks for your help.

Robert

> Date: Wed, 22 Jul 2009 15:06:07 -0400
> From: jeffrey@cdsintl.net
> To: piercechemical@hotmail.com
> CC: selina@cdsintl.net; cecily.zhang@corp.globalmarket.com
> Subject: Re: upcoming ocean freight shipment..
>
> Robert,
>
> Yes! Cecily did forward me the documents but there were no commercial
> invoice attached to it. Therefore would you please send me the invoice's
> for both 630ctns & 540ctns shipment from Yantian, China to Los
> Angeles... In the mean time, please fill out the POA listed above and
> return it back to my attention.
>
> Once you have the delivery instruction available please let me know so
> that I can provide you our trucking rates..
>
>
> If you have any question please contact me
>
>
> Best Regards
> Jeffrey S
> Eastern Direct Systems
> 149-09 183rd Street, Suite# 210
> Springfield Garden, NY 11413
> Tel: 718-995-4736
> Fax: 718-995-4737
>
>

Exhibit 10 - 1 of 1
Page 56 of 63

# EXHIBIT 11

NetChb - Transmission

*Net* **Chb**

Contact Us     Logout

Home   Account   Trade Partners   Entries   ISF   Statements   Transmissions   Resources   Accounting

### Transmission

| | |
|---|---|
| Transmission Type | Importer Bond Query |
| Transmitted By | celcoc |
| Transmitted | Thu, 03/04/10 12:19 PM PST |

**Response**                                                        Received: Thu, 03/04/10 12:19 PM PST

```
Importer Number:      36-254889300
Status:               CBPF 5106 is on file with a continuous bond
Company Name:         PIERCE BIOTECHNOLOGIES INC
Address:              3747 N MERIDIAN RD
City:                 ROCKFORD
State:                IL
Zip:                   61101-9316
Surety Code:          891
Bond Code:            A1 - Importer or Broker
Bond Amount:          $50,000.00
Bond Filed at Port:   9900
Bond Effective Date:  10/02/05
Bond Number:          9905N9920
The bond information has been updated
```

Exhibit 11 - 1 of 1

Page 57 of 63

# EXHIBIT  12



WWW.CYBERDRIVEILLINOIS.COM

JESSE WHITE
SECRETARY OF STATE

## CORPORATION FILE DETAIL REPORT

| Entity Name | PIERCE BIOTECHNOLOGY, INC. | File Number | 17966286 |
|---|---|---|---|
| Status | ACTIVE | | |
| Entity Type | CORPORATION | Type of Corp | FOREIGN BCA |
| Qualification Date (Foreign) | 03/29/1965 | State | DELAWARE |
| Agent Name | CAPITOL CORPORATE SERVICES INC | Agent Change Date | 01/04/2011 |
| Agent Street Address | 1315 W LAWRENCE AVE | President Name & Address | SETH H HOOGASIAN 81 WYMAN ST WALTHAM MA 02454 |
| Agent City | SPRINGFIELD | Secretary Name & Address | SAME |
| Agent Zip | 62704 | Duration Date | PERPETUAL |
| Annual Report Filing Date | 02/27/2012 | For Year | 2012 |
| Old Corp Name | 06/06/2002 - PIERCE CHEMICAL COMPANY | | |

Return to the Search Screen

Purchase Certificate of Good Standing
(One Certificate per Transaction)

BACK TO CYBERDRIVEILLINOIS.COM HOME PAGE

Exhibit 12 - 1 of 1

Page 58 of 63

# EXHIBIT 13



**Celco Customs Service Co.**
9660 Flair Dr. Suite 226
El Monte, CA 91731
TEL: (626) 442-3588 FAX: (626) 442-5829

# Invoice

Invoice No: 3046482
Invoice Date: 07/27/09

Bill To
Eastern Direct Systems Int'l Corp.
149-09  183rd St. #210
Springfield Garden , NY 11413

| Payment Terms 2 WEEKS | | | | |
|---|---|---|---|---|
| Entry Number BDQ-3046482-2 | Customer Reference No | | Master B/L No MAEU SZHVJM535 | House B/L No |
| Manifest Quantity 540 CARTO | Gross Weight 16,920 Kgs | Commercial Description BROWSE PRODUCT CATALOG | | |
| Arrival Date 07/24/09 | Carrier MAEU MAERSK LINES, INC. | | | Vessel Name MAERSK ALFIRK |
| Country of Export China | | Importer of Record PIERCE BIOTECHNOLOGIES INC | | |
| Containers UESU4665337 | | | | |

| Description | Amount |
|---|---|
| Entry Fee | $65.00 |
| Estimated Customs Duty | $89.65 |
| **Total** | **$154.65** |

Notes
Duties and Fees of $89.65 are due by 08/07/09

Exhibit 13 - 1 of 1

Page 59 of 63

# EXHIBIT  14

Invoice Date: 2009-7-11

T/T Date: 2009-7-11

# *INVOICE*

INVOICE No.CP200907012
To: PIERCE CHEMICAL COMPANY
Add:3747 NORTH MERIDIAN ROAD ROCKFORD,LLLINOIS 61105
Tel: 815-556-7634 FAX:815-425-0637

From :COLOURFUL PRINTING (ZHONGSHAN) MANUFACTURER
Add: XINFU ROAD,XIAOLI 3RD INDUSTRIAL ZONE,
     DONGFENG ZHONGSHAN GUANGDONG

Loading Port:YANTIAN,CHINA          Discharg Port:LOS ANGELES,CA
Ctnr No:UESU4665337

| Carton No. | Description | Unit price (USD) | Q'ty (pcs) | Amount (USD) |
|---|---|---|---|---|
| N/M | BROWSE PRODUCT CATALOG | $0.21 | 127440 | US$26,762.40 |

4911·10·0040    Total Amount:  US$26,762.40   EU

COUNTRY OF ORIGIN: CHINA

Exhibit 14 - 1 of 3

Page 60 of 63



Invoice Date: 2009-7-11
T/T Date: 2009-7-11

# *Packing list*

Packing No. CP200907012
To: PIERCE CHEMICAL COMPANY
Add:3747 NORTH MERIDIAN ROAD ROCKFORD,LLLINOIS 61105
Tel: 815-556-7634 FAX:815-425-0637

From :COLOURFUL PRINTING (ZHONGSHAN) MANUFACTURER
Add: XINFU ROAD,XIAOLI 3RD INDUSTRIAL ZONE,
DONGFENG ZHONGSHAN GUANGDONG

Loading Port:YANTIAN,CHINA     Discharg Port:LOS ANGELES,CA
Ctnr No:UESU4665337

| Carton No. | Description | Q'ty/ctn (pcs ) | Measurement (CM) | Q'ty (ctn ) | G.W (kg) | N.W (kg) |
|---|---|---|---|---|---|---|
| N/M | BROWSE PRODUCT CATALOG | 127440 --------------- 236Pcs/Ctns | 66.8CBM | 540 | 16920 | 16593 |

TOTAL:     540CARTONS .127440PCS.     16920KG.

COUNTRY OF ORIGIN: CHINA

Exhibit 14 - 2 of 3
Page 61 of 63

304648

| | |
|---|---|
| **Shipper**<br><br>COLOURFUL PRINTING (ZHONGSHAN) MANUFACTURER<br>XINFU ROAD, XIAOLI 3RD INDUSTRIAL ZONE,<br>DONGFENG<br>ZHONGSHAN GUANGDONG<br>TEL: 86-760-22628181 | **Hecny Shipping Limited**<br>BLOCK EAST,43/F, INTERNATIONAL TRADE, CENTRE<br>BUILDING,3002,RENMIN SOUTH ROAD, LUOHU<br>DISTRICT,SHENZHEN,CHINA.<br><br>## Bill of Lading |
| **Consignee**<br><br>PIERCE CHEMICAL COMPANY<br>3747 NORTH MERIDIAN ROAD ROCKFORD, ILLINOIS<br>61105<br>TEL:815-556-7634 FAX: 815-425-0637<br>EMAIL: PIERCECHEMICAL@HOTMAIL.COM | **For reference only**<br>NVOCC SCAC:HYSL<br>MBL#:MAEUSZHVJM535<br>AMS#:HYSLFSZX09070220 |
| **Notify Party**<br><br>SAME AS CONSIGNEE | **Delivery Agent**<br>HECNY TRANSPORTATION (USA) INC - LAX<br>1460 FRANCISCO STREET TORRANCE CA 90501<br>CONTACT PERSON:IMPORT DEP.<br>TEL:310 3473400 FAX:310 3473419<br>EMAIL:LAX_DCENTER@HECNYUSA.COM |

| Place of receipt / Pre-carriage by | Combined transport - Pre carriage from | Place of issue | | B/L No. |
|---|---|---|---|---|
| YANTIAN | | SHENZHEN | | |
| **Vessel** | Voy.No. | Port of loading | Date of issue | |
| MAERSK ALFIRK 0907 | | YANTIAN | 07/11/2009 | FSZX09070220 |
| **Port of discharge** | Final destination (for merchant's ref. only) | Place of delivery | | |
| LOS ANGELES, CA | LOS ANGELES, CA | LOS ANGELES, CA | | |

| Marks and numbers | Number and kind of packages / Description of goods | | Gross weight kos | Measurement |
|---|---|---|---|---|
| N/M | CONTAINER # /SEAL # | CTNS | KGS | CBM |
| | UESU4665337 /CN5985995 /40# | 540   CY-CY | 16920.00 | 66.900 |
| | SHIPPER'S LOAD & COUNT & SEALED STC:<br>1 X 40#<br>TOTAL . 540 CARTONS ONLY<br><br>BRONSE PRODUCT CATALOG<br><br>THIS SHIPMENT CONTAINS NO WOOD PACKING MATERIALS.<br>FREIGHT PREPAID | | | |

Above particulars as declared by shipper

| | Prepaid | Collect | |
|---|---|---|---|
| OCEANFREIGHT AND CHARGES<br>Rates, Weight and / or Measurement<br>subject to correction | | | Received for shipment in apparent good order and condition.<br>Terms of this Bill of Lading can be found on the reverse side of the Negotiable<br>Copy.<br>IN WITNESS WHEREOF, the carrier by its agents has signed<br>three (3) original Bill of Lading all of this tenor and date, one of<br>which being accomplished the others to stand void.<br>Place and date of issue as indicated above. |
| AS ARRANGED | | | |

Exhibit 14 - 3 of 3<br>Page 62 of 63

# EXHIBIT  15

# DELIVERY ORDER



## Celco Customs Service Co.

9660 Flair Dr. Suite 226
El Monte, CA 91731
TEL: (626) 442-3588 FAX: (626) 442-5829

| Celco Customs Service Co.<br>9660 Flair Dr. Suite 226<br>El Monte, CA 91731 | | DATE<br>7/28/09 | OUR REF. NO.<br>3046482 |
|---|---|---|---|
| | | THE MERCHANDISE DESCRIBED BELOW<br>WILL BE ENTERED AND/OR FORWARDED<br>AS FOLLOWS: | |

| CARRIER<br>MAEU MAERSK ALFIRK 907 | | LOCATION<br>W185 MAERSK SEALAND - APM TER | ORIGIN/DESTINATION PORT<br>YANTIAN, CHINA/LOS ANGELES, CA |
|---|---|---|---|
| B/L OR AWB. NO.<br>MAEU SZHVJM535 | ARR./DEPT. DATE<br>07/24/09 | FREE TIME EXP. | LOCAL DELIVERY OR TRANSFER BY (DELIVERY ORDER ISSUED TO:) |
| PIERCE BIOTECHNOLOGIES INC | | HOUSE NO. | ENTRY-B/L NO.<br>BDQ-3046482-2 | CUST. REF. NO. |
| FOR DELIVERY TO | | ROUTE | |

| NO. OF PKGS. | DESCRIPTION OF ARTICLES, SPECIAL MARKS & EXCEPTIONS | WEIGHT | DO NOT USE |
|---|---|---|---|
| 540 | BROWSE PRODUCT CATALOG | 37,302 Lb | |
| | Container No.      Container Size/Type      Seal Nos.<br>UESU4665337      40 ft | | |

**INLAND FREIGHT** ▶ PREPAID/COLLECT **Collect**

ORIGINAL DELIVERY ORDER

Received in Good Order
By: _____
Date: _____   Time: _____

WEN SHI - ATTY IN FACT
PER:

**DELIVERY CLERK: DELIVER
TO CARRIER SHOWN ABOVE**

Exhibit 15 - 1 of 1