Samuel Watkins, Esq. (State Bar No. 272162)
swatkins@tocounsel.com
THEODORA ORINGHER PC
10880 Wilshire Boulevard, Suite 1700
Los Angeles, California 90024-4101
Telephone: (310) 557-2009
Facsimile: (310) 551-0283

Attorneys for Plaintiffs Coach, Inc.
and Coach Services, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COACH, INC., a Maryland Corporation; and COACH SERVICES, INC., a Maryland Corporation, <br><br> Plaintiffs, <br><br> vs. <br><br> CELCO CUSTOMS SERVICE CO., a California Corporation; SHEN HUEI FENG WANG, aka "CELINE" WANG, an individual; and DOES ONE through TEN, inclusive, <br><br> Defendants. | Case No. CV11-10787 MMM (PJWx) <br><br> Honorable Margaret M. Morrow <br><br> **PLAINTIFFS' MEMORANDUM OF CONTENTIONS OF LAW AND FACT** <br><br> PRETRIAL CONFERENCE <br> DATE: February 25, 2013 <br> TIME: 9:00 a.m. <br> PLACE: Roybal, Courtroom 780 <br><br> TRIAL <br> DATE: March 26, 2013 <br> TIME: 8:30 a.m. <br> PLACE: Roybal, Courtroom 780 |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................. 1

II.   THE PARTIES' CLAIMS AND DEFENSES [L.R. 16-4.1] ........................... 3

    A.    PLAINTIFFS' CLAIMS AND ELEMENTS ......................................... 3

        1.    Summary of Plaintiffs' Claims [L.R. 16-4.1 (a), (b)] ................... 3

        2.    Key Evidence In Support Of Plaintiffs' Claims [L.R. 16-4.1 (c)] ........................................................................ 7

        3.    Summary of Defendants' Counterclaims and Affirmative Defenses [L.R. 16-4.1 (d), (e)] ........................................... 10

        4.    Key Evidence In Opposition To Defendants' Affirmative Defenses [L.R. 16-4.1 (f)] .............................................. 14

        5.    Anticipated Evidentiary Issues [L.R. 16-4.1 (h)] ..................... 16

III.  BIFURCATION OF ISSUES [L.R. 16-4.3] ............................................. 17

IV.  JURY TRIAL [L.R. 16-4.4] .............................................................. 17

    A.    ISSUES TRIABLE TO THE JURY. ............................................. 17

    B.    ISSUES TRIABLE TO THE COURT. ........................................... 18

V.    ATTORNEYS' FEES [L.R. 16-4.5] ...................................................... 19

VI.  ABANDONMENT OF ISSUES [L.R. 16-4.6] ........................................... 19

1

## TABLE OF AUTHORITIES

2

**Page**

3

4 **CASES**

5 *Au-Tomotive Gold, Inc. v. Volkswagen of America, Inc.,*
603 F.3d. 1133 (9th Cir. 2010)..................................................................14

6
*Bar-Meir v. N. Am. Die Casting Ass'n,*
7 55 Fed. Appx. 389 (8th Cir.2003) .........................................................18

8 *Crosby v. Nat'l Foreign Trade Council,*
530 U.S. 363 (2000) ................................................................................13

9
*Danjaq LLC v. Sony Corp.,*
10 263 F.3d 942 (9th Cir. 2001) ..................................................................19

11 *Disenos Artisticos E Industriales, S.A. v. Work,*
676 F.Supp. 1254 (E.D.N.Y. 1987) ..........................................................6

12
*EEOC v. Peabody W. Coal Co.,*
13 400 F.3d 774 (9th Cir. 2005), cert. denied, 546 U.S. 1150 (2006) .................13

14 *Feltner v. Columbia Pictures Television, Inc.,*
523 U.S. 340 (1998) ................................................................................18

15
*Granite State Insurance Company v. Smart Modular Technologies, Inc.,*
16 76 F.3d 1023 (9th Cir. 1996) .............................................................12, 18

17 *Houbigant, Inc. v. ACB Mercantile, Inc.,*
914 F.Supp. 964 (S.D.N.Y.1995) .............................................................6

18
*Jarrow Formulas, Inc. v. Nutrition Now, Inc.,*
19 304 F.3d 829 (9th Cir. 2002) ..................................................................11

20 *Louis Vuitton Malletier, S.A. v. Akonac Solutions, Inc.,*
658 F.3d 937, 942 (9th Cir. 2011) ........................................................4, 5

21
*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.,*
22 518 F.Supp.2d 1197 (C.D. Cal. 2007)....................................................14

23 *Philip Morris USA, Inc. v. Castworld Products, Inc.,*
219 F.R.D. 494 (C.D. Cal. 2003) (citing 15 U.S.C. § 1125(a)(1))...................5

24
*Sebastian Int'l Inc. v. Russolillo,*
25 186 F.Supp.2d 1055 (C.D. Cal. 2000)......................................................6

26 *Sias v. City Demonstration Agency,*
588 F.2d 692 (9th Cir. 1978) ..................................................................13

27
*U.S. v. Kaczynski,*
28 551 F.2d 1120 (9th Cir. 2009) ................................................................19

THEODORA ORINGHER
COUNSELORS AT LAW

*PLAINTIFFS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW*

*U.S. v. King Features Entm't, Inc.*,
    843 F.2d 394 (9th Cir. 1988) ................................................................12

*Walter v. Drayson*,
    496 F.Supp.2d 1162 (D. Haw. 2007) ....................................................13


**STATUTES**

15 U.S.C. § 1114 ..............................................................................3, 17

15 U.S.C. § 1116 ....................................................................................6

15 U.S.C. § 1117(b) ..............................................................................19

15 U.S.C. § 1117(c) ................................................................................6

15 U.S.C. § 1125(a) ......................................................................3, 4, 17

19 U.S.C. § 1526 ....................................................................................5

19 U.S.C. § 1526(a) ..............................................................................17

19 U.S.C. § 1526(c) ................................................................................6

California Civil Jury Instruction (CACI) No. 330 ...........................12, 18

California Civil Jury Instruction (CACI) No. 335 ...........................12, 18

Civil § 15.19 (2007) ...........................................................................4, 5

Civil § 15.5 (2010) ..................................................................................4


**OTHER AUTHORITIES**

Ninth Circuit Manual of Model Jury Instructions (2010 ed.) ....................17

Restatement Second of Torts, § 463 ................................................12, 18


**RULES**

Local Rule 16-4 ......................................................................................1

THEODORA ORINGHER
COUNSELORS AT LAW

1  Pursuant to Local Rule 16-4 and the Court's Orders, Plaintiffs Coach, Inc. and
2  Coach Services, Inc. ("Plaintiffs") respectfully submit their Memorandum of
3  Contentions of Fact and Law, addressing those issues believed to be necessary at trial,
4  which is scheduled to commence on March 26, 2013.

5  **I.  INTRODUCTION**

6  This is an action for contributory trademark infringement against Defendants
7  Celco Customs Service Co. ("Celco") and Shen Heui Feng Wang ("Wang")
8  (collectively, "Defendants") for their knowing and active participation in a conspiracy
9  to import at least 22,040 handbags and 10,300 wallets bearing counterfeit versions of
10  trademarks owned by Plaintiffs (the "Coach Marks") for ultimate resale in the United
11  States.  As Customs brokers, Defendants agreed to accept fraudulent shipping papers
12  from their co-conspirators, and then to use those documents as the basis for preparing
13  equally fraudulent entry papers that were filed with the United States Bureau of
14  Customs and Border Protection ("CBP") on July 27, 2009.  The filing of entry papers
15  with CBP is required before any imported goods may be released by CBP to the
16  importer.  Accordingly, the Customs brokerage services provided by Defendants to
17  facilitate the release of the counterfeit goods to their co-conspirators were materially
18  instrumental to achieving the purposes of the conspiracy, *i.e.*, to profit enormously from
19  the infringement of Plaintiffs' valuable trademarks.

20  Even though, as Customs brokers, Defendants were required by law and
21  regulation to verify the actual identities of the persons on whose behalf they filed the
22  entry papers, Defendants continue to deny any such knowledge.  Because Plaintiffs
23  have been unable to independently identify Defendants' co-conspirators, *i.e.*, the John
24  Doe defendants named in Plaintiffs' Second Amended Complaint, Plaintiffs must
25  proceed to trial only against Defendants.

26  The counterfeit handbags and wallets imported with the Defendants' assistance
27  were seized by CBP at the Port of Los Angeles / Long Beach on August 10, 2009.  This
28  shipment also contained 6,600 counterfeit belts that infringed trademarks owned by

1   Gucci America, Inc.  Just three days before, on August 7, 2009, CBP seized a related
2   shipment that had also been imported by Defendants' co-conspirators with Defendants'
3   material assistance.  This shipment contained 10,080 pairs of counterfeit shoes that
4   infringed trademarks owned by Nike, Inc.  In light of the variety of trademarks
5   infringed and the sheer quantities involved, the conspiracy to which Defendants
6   belonged must have been well-organized and well-financed.

7        The handbags and wallets seized by CBP bore counterfeit versions of the
8   following Coach Marks (as indicated):

| Registration No. | Mark | Registration Date | Image | Articles To Which Affixed |
|---|---|---|---|---|
| 2,088,706 | COACH | September 19, 1997 | COACH | Handbags and Wallets |
| 2,045,676 | COACH & LOZENGE DESIGN | March 18, 1997 | COACH | Handbags and Wallets |
| 2,626,565 | CC & DESIGN (Signature C) | September 24, 2002 | | Handbags and Wallets |
| 3,441,671 | COACH LEATHERWARE EST. 1941 | June 3, 2008 | COACH LEATHERWARE EST. 1941 | Handbags and Wallets |
| 3,338,048 | COACH STYLIZED | November 11, 2007 | COACH | Handbags only |
| 2,088,707 | COACH & TAG DESIGN | August 19, 1997 | COACH | Handbags only |

27        As the evidence at trial will show, Defendants must have been in on the ground
28   floor of the conspiracy to infringe the Coach Marks.  The shipping papers Defendants

1   accepted from their co-conspirators were so patently and facially fraudulent that no

2   law-abiding, disinterested Customs broker would have filed entry papers with CBP for

3   the two shipments full of counterfeit goods.  A law-abiding, disinterested Customs

4   broker would have refused to enter the goods and would have taken steps in reaction to

5   the papers that ultimately would have alerted law enforcement to the conspiracy.  The

6   fact that Defendants failed to take any such steps, despite having multiple and

7   independent legal obligations to do so, shows that Defendants' purposefully acted to

8   conceal the existence, and protect the vitality, of the conspiracy.

9   **II.     THE PARTIES' CLAIMS AND DEFENSES [L.R. 16-4.1]**

10       This is a civil action related to the importation of commercial quantities of

11   counterfeit goods for ultimate resale in the United States.  Jurisdiction is asserted under

12   the federal Lanham Act, 15 U.S.C. §§ 1114 and § 1125(a), and the federal Tariff Act,

13   19 U.S.C. § 1526(a).

14   **A.     PLAINTIFFS' CLAIMS AND ELEMENTS**

15       **1.     Summary of Plaintiffs' Claims [L.R. 16-4.1 (a), (b)]**

16       In light of the Court's Order of January 28, 2013 granting in part and denying in

17   part Defendants' motion to dismiss the Second Amended Complaint, Plaintiffs will

18   pursue the following three claims at trial.

19   **Claim 1:  Contributory Trademark Infringement Under 15 U.S.C. § 1114.**

20       Summary:  Plaintiffs allege violation of 15 U.S.C. § 1114 due to the Defendants

21   continuing to supply Customs brokerage services to their co-conspirators after

22   Defendants knew, or had reason to know, that their co-conspirators were engaged in the

23   manufacture and importation of commercial quantities of counterfeit goods infringing

24   the Coach Marks for resale in the United States. Defendants' co-conspirators directly

25   infringed the Coach Marks by having manufactured and transported the counterfeit

26   handbags and wallets in commerce by importing them into the Port of Los Angeles /

27   Long Beach. By providing brokerage services to their co-conspirators, Defendants are

28   contributorily liable for trademark infringement.

1  <u>Elements</u>:  To prove contributory infringement against Defendants, Plaintiffs will
2  first have the burden of proving underlying direct infringement by Defendants' co-
3  conspirators.  Those elements are: (1) that the Coach Marks are valid, protectable
4  trademarks; (2) that Plaintiffs own the Coach Marks; and (3) that Defendants' co-
5  conspirators used the Coach Marks without the consent of the Plaintiffs in a manner
6  that is likely to cause confusion among ordinary consumers as to the source,
7  sponsorship, affiliation, or approval of the goods.

8          To prove contributory infringement, Plaintiffs will have the burden of proving
9  that: (1) Defendants supplied Customs brokerage services to their co-conspirators; (2)
10  the co-conspirators used the services provided by Defendants to infringe Plaintiffs'
11  trademarks; (3) Defendants knew, or should have known, that their co-conspirators
12  would use their Customs brokerage services to infringe Plaintiffs' trademarks; and (4)
13  Plaintiff was damaged by the infringement.

14          <u>Source</u>:  Ninth Circuit Manual of Model Jury Instructions: Civil § 15.5 (2010), §
15  15.19 (2007); *Louis Vuitton Malletier, S.A. v. Akonac Solutions, Inc.*, 658 F.3d 937, 942
16  (9th Cir. 2011).

17  **Claim 2:  Contributory False Designation of Origin Under 15 U.S.C. §**
18  **1125(a).**

19          <u>Summary</u>:  Plaintiffs allege violation of 15 U.S.C. § 1125(a) due to the
20  Defendants continuing to supply Customs brokerage services to their co-conspirators
21  after Defendants knew, or had reason to know, that their co-conspirators were engaged
22  in the manufacture and importation of commercial quantities of counterfeit goods
23  infringing the Coach Marks for resale in the United States.  Defendants' co-conspirators
24  violated 15 U.S.C. § 1125(a) by having manufactured and transported the counterfeit
25  handbags and wallets in commerce by importing them into the Port of Los Angeles /
26  Long Beach.  By providing brokerage services to their co-conspirators, Defendants are
27  contributorily liable for false designation of origin.

28          <u>Elements</u>:  To prove contributory false designation of origin against Defendants,

THEODORA ORINGHER
COUNSELORS AT LAW

1   Plaintiffs will first have the burden of proving underlying direct false designation of

2   origin by Defendants' co-conspirators.  Those elements are: "that [the co-conspirators]

3   used in commerce any word, term, name, symbol, or device, or any combination thereof

4   . . . which is likely to cause confusion, or to cause mistake, or to deceive as to the

5   affiliation, connection, or association of [the co-conspirators] with Plaintiff[s], or as to

6   the origin, sponsorship, or approval of [their] goods by Plaintiff[s]."  *Philip Morris*

7   *USA, Inc. v. Castworld Products, Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003) (citing 15

8   U.S.C. § 1125(a)(1)).

9           To prove contributory false designation of origin, Plaintiffs will have the burden

10  of proving that: (1) Defendants supplied Customs brokerage services to their co-

11  conspirators; (2) the co-conspirators used the services provided by Defendants to

12  infringe Plaintiffs' trademarks; (3) Defendants knew, or should have known, that their

13  co-conspirators would use their Customs brokerage services to infringe Plaintiffs'

14  trademarks; and (4) Plaintiff was damaged by the infringement.

15          Source:  *Philip Morris USA, Inc. v. Castworld Products, Inc.*, 219 F.R.D. 494,

16  499 (C.D. Cal. 2003) (citing 15 U.S.C. § 1125(a)(1)); Ninth Circuit Manual of Model

17  Jury Instructions: Civil § 15.19 (2007); *Louis Vuitton Malletier, S.A. v. Akonac*

18  *Solutions, Inc.*, 658 F.3d 937, 942 (9th Cir. 2011).

19          **Claim 3:  Unlawful Importation Under 19 U.S.C. § 1526.**

20          Summary:  Plaintiffs allege violation of 19 U.S.C. § 1526 due to the Defendants:

21  (1) filing entry papers that facilitated the importation of the counterfeit handbags and

22  wallets that infringed the Coach Marks into the Port of Los Angeles / Long Beach; and

23  (2) preparing a Delivery Order to facilitate the pick-up and further distribution of the

24  counterfeit handbags and wallets in the United States.

25          Elements:   To prove unlawful importation against Defendants, Plaintiffs will

26  have to prove that Defendants were dealing in the counterfeit handbags and wallets that

27  had been imported into the Port of Los Angeles / Long Beach.

28          Source:  *Sebastian Int'l Inc. v. Russolillo*, 186 F.Supp.2d 1055, 1070-71 (C.D.

THEODORA ORINGHER
COUNSELORS AT LAW

1   Cal. 2000) ("Liability under [§ 1526] is not limited to the importer"), citing *Houbigant,*
2   *Inc. v. ACB Mercantile, Inc.*, 914 F.Supp. 964, 982 (S.D.N.Y.1995) (denying
3   defendants' motion to dismiss because "[t]he complaint allege[d] that the [ ] defendants
4   were responsible for and beneficiaries of an illegal scheme to sell counterfeit goods"
5   even though they did not actually import the goods); *Disenos Artisticos E Industriales,*
6   *S.A. v. Work*, 676 F.Supp. 1254, 1272 (E.D.N.Y. 1987) ("[Section 1526] liability is not
7   limited to importers only.   While subsection (a) bars importation and might be
8   construed to apply only to importers, subsection (c) specifically provides a remedy
9   against "[a]ny person dealing in any such merchandise").

10           **Prayer For Relief – Statutory Damages And Injunctive Relief**

11           Plaintiffs seek statutory damages for Defendants' contributory trademark
12   infringement, contributory false designation of origin, and illegal importation of tens of
13   thousands of handbags and wallets bearing counterfeit versions of the Coach Marks.
14   Pursuant to 15 U.S.C. § 1117(c) and 19 U.S.C. § 1526(c), Plaintiffs are entitled to
15   statutory damages of up to $2,000,000 *per* trademark infringed *per* type of goods
16   involved.   In this case, the counterfeit Coach® brand handbags bore six trademarks
17   belonging to Plaintiffs; the counterfeit Coach® brand wallets bore four trademarks
18   belonging to Plaintiffs.   Accordingly, Defendants are liable for up to $20 million in
19   statutory damages.

20           Plaintiffs also seek, pursuant to 15 U.S.C. § 1116 and 19 U.S.C. §1526(c),
21   injunctive relief requiring Defendants and their divisions, subsidiaries, officers, agents,
22   employees, attorneys, and all those persons in active concert or participation with them
23   who receive actual notice of the order by personal service or otherwise, from (i)
24   purchasing, importing, distributing, selling, or offering for sale, counterfeit Coach®
25   brand goods, or assisting, aiding or abetting any other person or entity in doing so; and
26   (ii) using the Coach Marks or trademarks confusingly similar therewith, or assisting,
27   aiding or abetting any other person or entity in doing so.

28

**2.    Key Evidence In Support Of Plaintiffs' Claims [L.R. 16-4.1 (c)]**

**Claim 1:  Contributory Trademark Infringement Under 15 U.S.C. § 1114.**

Plaintiffs will introduce the following categories of evidence establishing that the Defendants' co-conspirators directly infringed the Coach Marks and that Defendants' contributorily infringed the Coach Marks:

- Evidence showing that on or about July 24, 2009, the Motor Vessel "Maersk Alfirk" arrived into the Port of Los Angeles / Long Beach from Yantian, China bearing, among others, ocean shipping container number EASU4665337, falsely manifested to hold "browse product catalog," but which, in actuality, held more than 20,000 counterfeit handbags and 10,000 wallets that infringed the Coach Marks.

- Evidence showing that members of CBP's Import Specialist Team 725 inspected the contents of container number EASU4665337 on or about July 24, 2009 and, based on information and specialized training provided to them by Plaintiffs regarding how to distinguish genuine Coach® brand products from counterfeit versions, determined that the trademarks found on the handbags and wallets contained therein were counterfeit versions of the Coach Marks and notified Plaintiffs of that determination.

- Testimony confirming: (1) that the handbags and wallets found inside container number EASU4665337 by CBP's Import Specialist Team 725 were not manufactured or imported by or with the consent of Plaintiffs; (2) that the copies of the Coach Marks found thereon were counterfeit; (3) that the Coach Marks are valid and protectable, federally-registered trademarks owned by Plaintiffs; (4) that the counterfeit handbags and wallets had a street value of nearly $9 million; (5) that Pierce Biotechnologies, Inc. was not the actual importer of the counterfeit goods, but a victim of identity theft; and (6) that the importation of counterfeit goods by way of identity theft has been a growing problem for Plaintiffs over the last several years.

- Shipping papers and correspondence showing that the counterfeit handbags and wallets were falsely manifested as "browse product catalog," and that they were being imported ostensibly by "Pierce Chemical Company," a non-existent company, acting through its purported Vice President "Robert Laurance," a non-existent person, who was using a telephone number, fax number, and e-mail address that

purportedly belonged to the non-existent "Pierce Chemical Company" and that did not belong to Pierce Biotechnologies, Inc.

- A Customs Power of Attorney ("POA") purportedly executed by "Robert Laurance" on behalf of "Pierce Chemical Company" that bears the tax identification number actually belonging to "Pierce Biotechnologies, Inc.," an innocent victim of identity theft.

- Documents and testimony showing that, on the morning of July 27, 2009, Wang received, by e-mail, copies of the fraudulent shipping papers and the fraudulent POA from "Jeffery," a person previously unknown to Wang who was an employee of Eastern Direct Systems, Inc. ("EDS"), a freight forwarder located in New York.

- Documents and testimony showing that Wang immediately used these fraudulent shipping papers to personally file entry papers with CBP without taking any actions whatsever to verify the authenticity of the POA, the existence of "Robert Laurence," the existence of "Pierce Chemical Company," or the authority of "Robert Laurance" to execute the POA on behalf of "Pierce Chemical Company."

- Documents and testimony showing that, even though the shipping papers and POA all identified the importer of record to be "Pierce Chemical Company," Wang nevertheless filed entry papers in the name of "Pierce Biotechnologies, Inc."

- Documents and testimony showing that Defendants never contacted "Pierce Chemical Company" or "Pierce Biotechnologies, Inc." for any reason whatsoever, including for the purpose of clarifying Defendants' authority to enter goods on behalf of either entity.

- Documents and testimony showing that Wang and Celco sent their invoice for services to EDS, and not to "Pierce Biotechnologies, Inc.," their putative client, and showing that Wang and Celco never requested, much less obtained, the legally-required waiver from Pierce Biotechnologies, Inc. to send their invoices directly to EDS.

- Documents and testimony showing that Wang prepared a Delivery Order to facilitate the pick-up and further transportation of the counterfeit handbags and wallets in the United States.

- Testimony from an expert in the field of Customs law, regulation, and practice and, in particular, the duties, responsibilities, and liabilities of

Customs brokers as defined by applicable law and regulations and industry practice, that: (1) importers of counterfeit goods often do so by stealing the identity of another person or entity with a good track record with CBP and import their illicit goods using that stolen identity; (2) the POA and shipping papers at issue in this case, on their face, raise serious issues of fraudulent preparation into which a law-abiding and disinterested Customs broker would have inquired as a matter of industry practice and compliance with applicable laws and regulations; (3) had a law-abiding and disinterested Customs broker contacted Pierce Biotechnologies, Inc. to verify the POA and shipping papers, the identity theft scheme in this case would have unraveled and no entry papers would have been filed with CBP; and (4) under the circumstances presented in this case, Wang's actions in filing entry papers with CBP without ever contacting Pierce Biotechnologies, Inc., or taking any other steps, to verify the authenticity of the POA and the shipping papers and to clarify her authority to file entry papers with CBP on behalf of Pierce Biotechnologies, Inc. and to obtain a written waiver to directly invoice EDS in lieu of Pierce Biotechnologies, Inc., violated, and so departed from, law, regulation, and industry practice that Defendants must have been knowing participants in the scheme to import the counterfeit handbags and wallets by stealing the identity of Pierce Biotechnologies, Inc.

• Documents and testimony showing that Defendants had previously filed entry papers with CBP related to counterfeit goods based on a fraudulent Power of Attorney, and subsequently failed to devise or implement any remedial procedures or processes to verify the authenticity of Powers of Attorney and prevent a recurrence of relying on a fraudulent Power of Attorney to enter goods.

• Documents and testimony showing that container number EASU4665337 also held counterfeit belts infringing federally-registered trademarks owned by Gucci America, Inc.

• Documents and testimony showing that Defendants also filed entry papers with CBP to facilitate the importation of a second ocean shipping container in the name of Pierce Biotechnologies, Inc. that contained over 10,000 pairs of counterfeit shoes that infringed federally-registered trademarks owned by Nike, Inc.

• Documents and testimony showing that Wang knew that both shipments at issue in this case held counterfeit goods at the time she filed entry papers with CBP and that, when CBP detected the goods, she took

affirmative steps to evade scrutiny of her role in the importation of the goods by CBP, steps consistent only with guilty knowledge.

- Documents and testimony showing that Defendants' co-conspirators had arranged for the importation of two additional ocean shipping containers, also likely containing counterfeit Coach® brand handbags and wallets, to be imported into the United States in August 2009, using Customs brokerage services to be supplied by Defendants.

- Documents and testimony showing highly valuable assets purchased by Wang around the time of and subsequent to her filing the relevant entry papers with CBP that cannot be explained by the level of income to which she will admit.

**Claim 2:  Contributory False Designation Of Origin Under 15 U.S.C. § 1125(a).**

- Plaintiffs incorporate all evidence cited in Claim 1, above.

**Claim 3:  Illegal Importation Under 19 U.S.C. § 1526.**

- Plaintiffs incorporate all evidence cited in Claim 1, above.

**3.    Summary of Defendants' Counterclaims and Affirmative Defenses [L.R. 16-4.1 (d), (e)]**

Defendants have made no counterclaims in this case.  Defendant Wang has not filed an answer or any affirmative defenses in this case.  Defendant Celco filed an answer in response to Plaintiffs' original Complaint, but has not answered either the First Amended Complaint or the Second Amended Complaint.  In its answer to the original Complaint, Celco asserted a number of "affirmative defenses," many of which are not, in fact, affirmative defenses but purport only to negate elements of Plaintiffs' claims, *e.g.*, First Affirmative Defense (failure to state facts sufficient to constitute a cause of action); Second Affirmative Defense (claims barred to extent they lack a basis in fact or law); Sixth Affirmative Defense (lack of standing); Seventh Affirmative Defense (Plaintiffs' claims are moot, unripe and nonjusticiable); Eighth Affirmative Defense (Plaintiffs' injuries caused by third parties); Tenth Affirmative Defense (Celco

THEODORA ORINGHER
COUNSELORS AT LAW

1   not legally responsible); Thirteenth Affirmative Defense (reservation of right to assert

2   additional affirmative defenses); Fifteenth Affirmative Defense (Celco not liable for

3   contributory infringement because it lacked control over counterfeit goods); Sixteenth

4   Affirmative Defense (Celco not liable for contributory infringement because it lacked

5   knowledge of counterfeit nature of goods); Seventeenth Affirmative Defense (Celco not

6   liable because it did not know its activities constituted infringement); Eighteenth

7   Affirmative Defense (Celco not liable for contributory infringement because it lacked

8   knowledge of counterfeit nature of goods); Twentieth Affirmative Defense (Plaintiffs'

9   damages not caused by Celco); Twenty-First Affirmative Defense (Plaintiffs' prayer for

10  treble damages barred because Celco did not knowingly infringe); Twenty-Second

11  Affirmative Defense (Plaintiff's prayer for statutory damages barred because Celco did

12  not willfully use Plaintiffs' trademarks); Twenty-Third Affirmative Defense (standards

13  of conduct alleged by Plaintiffs do not apply to Celco).  These improper "affirmative

14  defenses" will not be discussed individually below.

15      **Third Affirmative Defense (laches)**

16      <u>Summary</u>:  Celco contends that Plaintiffs' claims are barred by laches.

17      <u>Elements</u>:  Celco has the burden of establishing: (1) Delay in filing the suit; (2)

18  that the delay in filing the suit was for an unreasonable period; and (3) that the

19  unreasonable delay was prejudicial to Celco.

20      <u>Source</u>:  *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 838 (9th

21  Cir. 2002).

22      **Fourth Affirmative Defense (contributory negligence, mistake, or fraud)**

23      <u>Summary</u>:  Celco contends that Plaintiffs' claims are barred or reduced by

24  contributory negligence, mistake, or fraud.

25      <u>Elements</u>:  For contributory negligence, Celco has the burden of establishing

26  "conduct on the part of [Plaintiffs] which falls below the standard to which [they]

27  should conform for [their] own protection, and which is a legally contributing cause

28  cooperating with the negligence of the defendant in bringing about [Plaintiffs'] harm."

THEODORA ORINGHER
COUNSELORS AT LAW

1   For mistake, Celco has the burden of providing that: (1) Celco was mistaken about
2   some factual matter related to a contract; (2) that Plaintiffs knew Celco was mistaken
3   and used that mistake to take advantage of Celco; (3) Celco's mistake was not caused
4   by its excessive carelessness; (4) Celco would not have agreed to enter into the contract
5   if it knew about the mistake.  For fraud, Celco has the burden of proving: (1) that
6   Plaintiffs made a representation; (2) that Plaintiffs knew was not true; (3) that Plaintiffs
7   made the representation to persuade Celco to agree to a contract; (4) that Celco
8   reasonably relied on the contract; and (5) that Celco would not have entered into the
9   contract if it had known that the representation was not true."

10       <u>Source</u>:   Restatement Second of Torts, § 463 (contributory negligence);
11   California Civil Jury Instruction (CACI) No. 330, Affirmative Defense – Unilateral
12   Mistake of Fact (mistake); California Civil Jury Instruction (CACI) No. 335,
13   Affirmative Defense – Fraud (fraud).

14       **Fifth Affirmative Defense (waiver and estoppel)**

15       <u>Summary</u>:  Celco contends that Plaintiffs' claims are barred by the doctrines of
16   waiver and estoppel.

17       <u>Elements</u>:   For waiver, Celco has the burden of establishing: (1) Plaintiffs'
18   intentional relinquishment of a known right with knowledge of its existence; and (2) the
19   intent to relinquish that known right.  For estoppel, Celco has the burden of proving: (1)
20   Plaintiffs were apprised of the facts of Celco's acts of infringement; (2) Plaintiffs must
21   have intended that their conduct be relied upon; (3) Celco must have been ignorant of
22   its own acts of infringement; and (4) Celco must have relied on Plaintiffs' conduct to its
23   injury.

24       <u>Source</u>:  *U.S. v. King Features Entm't, Inc.*, 843 F.2d 394, 399 (9th Cir. 1988)
25   (waiver); *Granite State Insurance Company v. Smart Modular Technologies, Inc.*, 76
26   F.3d 1023 (9th Cir. 1996) (estoppel).

27       **Ninth Affirmative Defense (failure to mitigate damages)**

28       <u>Summary</u>:  Celco contends that Plaintiffs' claims are barred because Plaintiffs

THEODORA ORINGHER
COUNSELORS AT LAW

1  failed to mitigate their damages.

2      Elements:  Plaintiffs are unaware of the failure to mitigate damages ever being

3  applied in the context of statutory damages under the Lanham Act.  In other contexts,

4  Celco would have the burden of establishing that: (1) the damages suffered by Plaintiffs

5  could have been avoided; and (2) that Plaintiffs failed to use reasonable care and

6  diligence in avoiding the damages.

7      Source:  *Sias v. City Demonstration Agency*, 588 F.2d 692, 696-97 (9th Cir.

8  1978).

9      **Eleventh Affirmative Defense (failure to join indispensable party)**

10     Summary:  Celco contends that Plaintiffs have failed to join a necessary or

11  indispensable party without whom this action cannot proceed.

12     Elements:  Defendants' motion to dismiss the Second Amended Complaint on

13  this basis was denied by the Court on January 28, 2013.  In any event, Celco would

14  have the burden of establishing that: (1) a nonparty is "necessary" and should be joined

15  under Rule 19(a); (2) it is not feasible to order the nonparty joined; and (3) the nonparty

16  is "indispensable."

17     Source:  *Walter v. Drayson*, 496 F.Supp.2d 1162, 1172 (D. Haw. 2007), citing

18  *EEOC v. Peabody W. Coal Co.*, 400 F.3d 774, 778 (9th Cir. 2005), cert. denied, 546

19  U.S. 1150 (2006).

20     **Twelfth Affirmative Defense (preemption)**

21     Summary:  Celco contends that Plaintiffs' claims are or may be preempted by

22  other applicable law.

23     Elements:  Plaintiffs are unaware of claims asserted under the *federal* Lanham

24  Act and the *federal* Tariff Act ever being preempted by other law.  In any event, Celco

25  would have the burden of establishing that: (1) Plaintiffs' claims are asserted under a

26  *state* law; and (2) Plaintiffs' state law claims conflict with a federal statute or the U.S.

27  Constitution.

28     Source:  *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372-373 (2000).

THEODORA ORINGHER
COUNSELORS AT LAW

**Fourteenth Affirmative Defense (unclean hands)**

Summary:  Celco contends that Plaintiffs' claims are barred by the doctrine of unclean hands.

Elements:  Celco would have the burden of establishing: (1) inequitable conduct by Plaintiffs; (2) that Plaintiffs' conduct directly relates to the claims they have asserted against Celco; and (3) that Plaintiffs' conduct injured Celco.

Source:  *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F.Supp.2d 1197, 1223 (C.D. Cal. 2007).

**Nineteenth Affirmative Defense (exhaustion)**

Summary:  Celco contends that Plaintiffs' claims are barred by the doctrine of exhaustion.

Elements:  Plaintiffs assume that Celco's assertion of "exhaustion" refers to the "first sale doctrine."  Celco would have the burden of establishing that: (1) Celco purchased genuine goods bearing genuine trademarks at an authorized sale; and (2) Celco resold those goods in a manner that would not cause consumer confusion.

Source:  *Au-Tomotive Gold, Inc. v. Volkswagen of America, Inc.*, 603 F.3d. 1133 (9th Cir. 2010).

**4.     Key Evidence In Opposition To Defendants' Affirmative Defenses [L.R. 16-4.1 (f)]**

Evidence in Opposition to Third Affirmative Defense (laches).  Plaintiffs incorporate by reference the evidence described in Section II.A.2., which shows that the counterfeit goods at issue in this case were imported in July 2009 in the name of a victim of identity theft, Pierce Biotechnologies, Inc.  Plaintiffs did not learn until July 2011 that Defendants were involved in conspiracy to import counterfeit Coach® brand goods in a manner that would implicate Pierce Biotechnologies, Inc. while actively concealing their own participation.  Plaintiffs filed the instant case against Celco five months later, in December 2011.  Celco will not be able to demonstrate any unreasonable delay in filing this suit against it, nor will Celco be able to demonstrate

1  that it has been prejudiced by Plaintiffs finally piercing the veil of secrecy shrouding

2  Celco's participation in the scheme.

3       Evidence in Opposition to Fourth Affirmative Defense (contributory negligence,

4  mistake, or fraud). Plaintiffs incorporate by reference the evidence described in Section

5  II.A.2., which shows Celco's knowing and intentional infringement of Plaintiffs'

6  trademarks.   Plaintiffs played no role in the manufacture and importation of the

7  counterfeit handbags and wallets at issue, and only found out about the scheme after

8  CBP had seized the goods. Plaintiffs had no opportunity to engage in any conduct even

9  potentially giving rise to contributory negligence, mistake, or fraud. None of Plaintiffs'

10 claims sound in negligence and thus the affirmative defense of contributory negligence

11 is inapplicable.   In any event, California is a comparative negligence jurisdiction,

12 further making the affirmative defense of contributory negligence inapplicable.

13 Plaintiffs were party to no contracts with Celco or any other party that could even

14 potentially give rise to mistake or fraud.

15      Evidence in Opposition to Fifth Affirmative Defense (waiver and estoppel).

16 Plaintiffs incorporate by reference the evidence described in Section II.A.2., which

17 shows Celco's knowing and intentional infringement of Plaintiffs' trademarks.

18 Plaintiffs played no role in the manufacture and importation of the counterfeit handbags

19 and wallets at issue, and only found out about the scheme after CBP had seized the

20 goods. Plaintiffs had no opportunity to waive any rights with respect to Celco nor

21 engage in any conduct giving rise to a defense of estoppel.

22      Evidence in Opposition to Eleventh Affirmative Defense (failure to join

23 indispensable party).   Plaintiffs incorporate by reference the evidence described in

24 Section II.A.2., which shows Celco's knowing and intentional participation in a

25 conspiracy to infringe Plaintiffs' trademarks. All other members of this conspiracy are

26 merely joint tortfeasors and not indispensable parties under Rule 19.  This issue has

27 already been litigated and resolved in Plaintiffs' favor as part of Defendants' motion to

28 dismiss Plaintiffs' Second Amended Complaint.

THEODORA ORINGHER
COUNSELORS AT LAW

1   Evidence in Opposition to Twelfth Affirmative Defense (preemption). Plaintiffs

2 incorporate by reference the evidence described in Section II.A.2., which shows

3 Celco's knowing and intentional infringement of Plaintiffs' trademarks in violation of

4 the federal Lanham Act and federal Tariff Act. Plaintiffs do not assert any claims under

5 state law, and thus Celco cannot identify any basis for this affirmative defense.

6   Evidence in Opposition to Fourteenth Affirmative Defense (unclean hands).

7 Plaintiffs incorporate by reference the evidence described in Section II.A.2., which

8 shows Celco's knowing and intentional infringement of Plaintiffs' trademarks.

9 Plaintiffs played no role in the manufacture and importation of the counterfeit handbags

10 and wallets at issue, and only found out about the scheme after CBP had seized the

11 goods. Plaintiffs had no opportunity to engage in any conduct giving rise to a defense

12 of unclean hands and certainly have done nothing to cause harm to Celco.

13   Evidence in Opposition to Nineteenth Affirmative Defense (exhaustion).

14 Plaintiffs incorporate by reference the evidence described in Section II.A.2., which

15 shows Celco's knowing and intentional infringement of Plaintiffs' trademarks.

16 Plaintiffs played no role in the manufacture and importation of the counterfeit handbags

17 and wallets at issue, and only found out about the scheme after CBP had seized the

18 goods. Because Plaintiff did not manufacture, or authorize the manufacture of, the

19 goods at issue or the counterfeit trademarks that appear on those goods, the doctrine of

20 "exhaustion" or "first sale" does not even apply. Even if the doctrine of "exhaustion"

21 or "first sale" even remotely applied, the sale of counterfeit goods, by definition, causes

22 consumer confusion and thus vitiates this defense.

23    **5.**  **Anticipated Evidentiary Issues [L.R. 16-4.1 (h)]**

24   None of the parties has filed a motion *in limine*. The only evidentiary issue

25 anticipated by Plaintiffs is Defendants' recently declared intention to offer into

26 evidence one or more "Coach handbag" and "Coach wallet" of unknown origin and

27 provenance and for an undeclared reason. Plaintiffs do not believe that any of the

28 handbags or wallets to be proffered by Defendants was part of the shipment of

THEODORA ORINGHER
COUNSELORS AT LAW

1   counterfeit Coach® brand handbags and wallets seized by CBP in this case and thus

2   question the authenticity, relevancy, and probative value of such evidence.  Without

3   knowing the source of these goods and Defendants' intentions with respect to them,

4   Plaintiffs oppose the use of these items at trial and their admissibility into evidence.

**5.    Identification of Issues of Law [L.R. 16-4.1 (i)]**

Plaintiffs believe that the Court's January 28, 2013 Order disposing of Defendants' motion to dismiss the Second Amended Complaint has clarified any potential issues of law in this case.

**III.    BIFURCATION OF ISSUES [L.R. 16-4.3]**

Plaintiffs do not make a request, and are unaware of any request by Defendants, to bifurcate any issues in this case.

**IV.    JURY TRIAL [L.R. 16-4.4]**

Neither Plaintiffs nor Wang has made a demand for a jury trial as of the date of filing of this memorandum.  In its answer to Plaintiffs' original Complaint, Docket No. 7, at page 1, Celco included the words "Jury Trial Demanded" in a header immediately preceding paragraphs responding to the allegations in the Complaint.  Nowhere else in its answer, however, does Celco actually make a jury demand.  Moreover, in the parties' Rule 26(f) Joint Report, Docket No. 14, at page 6, the parties agree that no party has made a jury demand.

**A.    ISSUES TRIABLE TO THE JURY.**

Should Wang make a timely jury demand, however, the following issues would be triable to a jury:

1.    Defendants' liability for contributory trademark infringement and unlawful importation under the three claims asserted by Plaintiffs pursuant to 15 U.S.C. §§ 1114 and 1125(a) and 19 U.S.C. § 1526(a).[1]

---

[1] <u>Authority</u>:  Ninth Circuit Manual of Model Jury Instructions (2010 ed.), (footnote continued)

THEODORA ORINGHER
COUNSELORS AT LAW

2.    If not stricken by the Court as inapplicable to this case as a matter of law, Celco's Fourth Affirmative Defense (contributory negligence, mistake, fraud).[2]

3.    Statutory damages.[3]

**B.    ISSUES TRIABLE TO THE COURT.**

The following issues are triable to the Court:

1.    Plaintiffs' claims for injunctive relief.

2.    Celco's First Affirmative Defense (failure to state a claim) (already resolved by the Court's October 28, 2013 order disposing of Defendants' motion to dismiss Plaintiffs' Second Amended Complaint); Third Affirmative Defense (laches); Fifth Affirmative Defense (waiver and estoppel); Sixth Affirmative Defense (standing); Seventh Affirmative Defense (mootness, ripeness, and non-justiciability); Eleventh Affirmative Defense (failure to join indispensable party) (already resolved by the Court's October 28, 2013 order disposing of Defendants' motion to dismiss Plaintiffs' Second Amended Complaint); Twelfth Affirmative Defense (preemption); and Fourteenth Affirmative Defense (unclean hands).[4]

---

Instructions Nos. 15.0, 15.5, 15.19. This also subsumes Celco's Second, Eighth, Tenth, Fifteenth, Sixteenth, Seventeenth, Eighteenth, Nineteenth, Twentieth, Twenty-First, Twenty-Second, and Twenty-Third Affirmative Defenses.

[2] Authority:  Restatement Second of Torts, § 463 (contributory negligence); California Civil Jury Instruction (CACI) No. 330, Affirmative Defense – Unilateral Mistake of Fact (mistake); California Civil Jury Instruction (CACI) No. 335, Affirmative Defense – Fraud (fraud).

[3] Authority:  *Bar-Meir v. N. Am. Die Casting Ass'n*, 55 Fed. Appx. 389, 390-91 (8th Cir.2003) (When trademark owner elects statutory damages defendant has a right to a jury determination of the amount of statutory damages), citing *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 353-54 (1998).  This also subsumes Celco's Ninth Affirmative Defense (failure to mitigate damages).

[4] Authority:  *See generally Granite State Ins. Co. v. Smart Modular Techs., Inc.*, 76 F.3d 1023, 1027 (9th Cir. 1996) ("A litigant is not entitled to have a jury resolve a disputed affirmative defense if the defense is equitable in nature."); *Danjaq LLC v.* (footnote continued)

THEODORA ORINGHER
COUNSELORS AT LAW

1    **V.     ATTORNEYS' FEES [L.R. 16-4.5]**

2         Plaintiffs may be entitled to their attorneys' fees under 15 U.S.C. § 1117(b) in

3    light of the willfulness of Defendants' intentional counterfeiting of the Coach Marks.

4    **VI.     ABANDONMENT OF ISSUES [L.R. 16-4.6]**

5         None.

6

7    DATED: February 4, 2013         THEODORA ORINGHER PC

8

9                                    By:   /S/ - Samuel Watkins

10                                         Samuel Watkins

11                                         Attorneys for Plaintiffs Coach, Inc. and Coach
                                           Services, Inc.

12

13

14

15

16

17

18

19

20

21

22

23

24

25   ───────────────────

26   *Sony Corp.*, 263 F.3d 942, 962 (9th Cir. 2001) ("there is no right to a jury on the
     equitable defense of laches"); *U.S. v. Kaczynski*, 551 F.2d 1120, 1129 (9th Cir. 2009)

27   ("The doctrine of unclean hands is an equitable doctrine …").

28