John B. Stephens, Bar No. 142718
  (john@sf-lawyers.com)
Laura A. Forbes, State Bare No. 151071
  (laura@sf-lawyers.com)
**STEPHENS FRIEDLAND LLP**
4695 MacArthur Court, Suite 1550
Newport Beach, CA  92660
Telephone:  (949) 468-3200
Facsimile:   (949) 468-3201

Attorney for Defendants
CELCO CUSTOMS SERVICES
CO. and SHEN HUEI FENG WANG
aka CELINE WANG

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COACH, INC. a Maryland corporation; and COACH SERVICES, INC., a Maryland corporation,<br><br>                    Plaintiffs,<br><br>          vs.<br><br>CELCO CUSTOMS SERVICES CO., a California corporation; and DOES 1through 10, inclusive,<br><br>                    Defendants. | Case No.  CV 11-10787 MMM (FMOx)<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR NEW TRIAL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**[Notice of Motion and Motion for JMOL filed concurrently herewith]**<br><br>Honorable Margaret M. Morrow<br><br>Date:          January 13, 2014<br>Time:         10:00 a.m.<br>Courtroom: 780 |

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR NEW TRIAL**

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on January 13, 2014, at 10:00 a.m. or as soon thereafter as the matter may be heard in Courtroom 780 of the above-captioned Court, located at 255 East Temple Street, Los Angeles, California 90012, defendants Celco Customs Service Co. and Shen Huei Feng Wang, aka Celine Wang (collectively, "Defendants"), will and hereby do move this Court pursuant to Federal Rule of Civil Procedure 59(a) for an order granting a new trial of this action or, pursuant to Federal Rule of Civil Procedure 59(e), an order altering or amending the judgment. This motion is filed concurrently with Defendants' Motion for Judgment as a Matter of Law (JMOL), and is made in the alternative to the Motion for JMOL.

This Motion is made on the grounds that (1) the damages award is grossly excessive; (2) the verdict is against the clear weight of the evidence; (3) the jury instructions and verdict form were legally erroneous; and (4) a new trial is necessary to prevent a miscarriage of justice.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3 which took place on April 22, 2013.

This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the prior pleadings and papers on file in this action, any matter judicially noticeable, and on such further evidence and argument as may be presented at or before a hearing on this matter.

Dated:  September 20, 2013                              STEPHENS FRIEDLAND LLP


                                                        By:   /s/ John B. Stephens
                                                        John B. Stephens
                                                        Attorneys for Defendants
                                                        CELCO CUSTOMS SERVICES CO.
                                                        and SHEN HUEI FENG WANG a/k/a
                                                        CELINE WANG

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR NEW TRIAL**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................ 1

II.   FACTUAL AND PROCEURAL HISTORY ....................................... 1

      A.    Brief Summary of Facts ....................................................... 1

      B.    Procedural History .............................................................. 3

III.  IF THE COURT DENIES DEFENDANTS' MOTION FOR
      JUDGMENT AS A MATTER OF LAW, DEFENDANTS ARE
      ENTITLED TO A NEW TRIAL ....................................................... 4

      A.    Legal Standard ..................................................................... 4

      B.    A New Trial Is Warranted on the Ground that the Jury's
            Findings Are Against the Clear Weight of the Evidence ....... 5

            1.    The jury's findings that Defendants are liable for
                  Contributory Trademark Infringement, Contributory
                  False Designation of Origin and Unlawful
                  Importation are against the clear weight of the
                  evidence ...................................................................... 6

            2.    The jury's findings that Defendants' conduct was
                  "willful" are against the clear weight of the evidence ......... 7

            3.    The jury's finding that Plaintiffs are entitled to
                  statutory damages is against the clear weight of the
                  evidence ...................................................................... 10

      C.    A New Trial Is Warranted on the Issue of Damages ........... 11

            1.    Factors to be considered in awarding statutory
                  damages ...................................................................... 12

            2.    The $8 million damages award was grossly excessive
                  and unsupported by the evidence ............................... 13

STEPHENS FRIEDLAND LLP
4695 MacArthur Court, Suite 1550
Newport Beach, California 92660
Telephone: (949) 468-3200
Facsimile: (949) 468-3201

i

TABLE OF CONTENTS

1

## TABLE OF CONTENTS (Con't)

2

**Page**

3
4
5

3.    The damage award violates Defendants' Constitutional rights and constitutes a miscarriage of justice ....................................................................... 18

6
7

D.   A New Trial Is Warranted Based on Errors in the Jury Instructions and Verdict Form ................................................. 21

8
9
10

1.    The instructions given the jury failed to properly state the elements required for Contributory Trademark Infringement and Contributory False Designation of Origin ........................................................................ 21

11
12
13

2.    The jury was not instructed on the factors it was required to consider in awarding statutory damages ................... 22

14
15

3.    The inclusion on the Special Verdict form of drawings of five Coach marks was error ..................................... 23

16
17

IV.   THE JUDGMENT SHOULD BE AMENDED TO CORRECTLY REFLECT THE JURY'S VERDICT ................................................. 24

18

V.   CONCLUSION ........................................................................ 25

19

20

21

22

23

24

25

26

27

28

STEPHENS FRIEDLAND LLP
4695 MacArthur Court, Suite 1550
Newport Beach, California 92660
Telephone: (949) 468-3200
Facsimile: (949) 468-3201

ii

**TABLE OF CONTENTS**

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Adobe Systems, Inc. v. Tilley*,
    2010 WL 309249, *5-6 (N.D.Cal. 2010) ........................................................ 15

*Aetna Casualty & Surety Co. v. Yeatts*,
    122 F.2d 350 (4th Cir.1941) .............................................................................. 5

*AMF, Inc. v. Sleekcraft Boats*,
    599 F.2d 341 (9th Cir. 1979) ............................................................................ 21

*Beachbody, LLC v. Johannes*,
    2011 WL 3565226, *3 (C.D.Cal. 2011) ...................................................... 12, 18

*BMW of North America, Inc. v. Gore*,
    517 U.S. 559, 574, 116 S.Ct. 1589 (1996) ....................................................... 19

*Castrol, Inc. v. Pennzoil Quaker State Co.*,
    169 F.Supp.2d 332 (D.N.J.2001)........................................................................ 7

*Coach, Inc. v. Asia Pacific Trading Co., Inc.*,
    676 F.Supp.2d 914 (C.D.Cal. 2009) ................................................................ 21

*Coach, Inc. v. Cellular Planet*,
    2010 WL 2572113 (S.D.Ohio 2010) ................................................................ 14

*Coach, Inc. v. Diana Fashion*,
    2011 WL 6182332 (N.D.Cal. Dec. 13, 2011)................................................... 16

*Coach, Inc. v. Diva Shoes & Accessories*,
    2011 WL 1483436 (N.D.Cal. 2011) ........................................................... 12-13

*Coach, Inc. v. Envy*, 2012 WL 78238 *4 (E.D.Cal. 2012) ......................................... 18

*Coach, Inc. v. Horizon Trading USA, Inc.*,
    2012 WL 5451274 (S.D.N.Y. 2012)................................................................. 15

*Coach Services v. La Terre Fashion, Inc.*, 2011 U.S. Dist.
    LEXIS 127873 at *10-11 (C.D.Cal Nov. 1, 2011).......................................... 16

STEPHENS FRIEDLAND LLP
4695 MacArthur Court, Suite 1550
Newport Beach, California 92660
Telephone: (949) 468-3200
Facsimile: (949) 468-3201

i

# TABLE OF AUTHORITIES (Con't)

**Cases**                                                                                     **Page(s)**

*Coach, Inc. v. O'Brien*, 2012 WL 1255276 (S.D.N.Y. 2012) .................................... 15

*Coach, Inc. v. Sassy Couture*,
    2012 WL 162366 (W.D.Tex. 2012)....................................................................... 8

*CollegeNet, Inc. v. XAP Corp.*, 483 F.Supp.2d 1058 (D.Or. 2007)............................. 8

*Contessa Food Products, Inc. v. Lockpur Fish Processing Co.,*
    *Ltd.*, 123 Fed.Appx. 747, (9th Cir. 2005) ........................................................ 9

*Computer Access Technology Corp. v. Catalyst Enterprises, Inc.,*
    273 F.Supp.2d 1073 (N.D.Cal. 2003)......................................................... 8, 13

*Cummings v. Connell*, 402 F.3d 936 (9th Cir. 2005).................................................. 20

*Dr. JKL Ltd. v. HPC IT Education Center,*
    749 F.Supp.2d 1038 (N.D.Cal. 2010)................................................................. 7

*Earthquake Sound Corp. v. Bumper Indus.,*
    352 F.3d 1210 (9th Cir. 2003) ........................................................................... 7

*Fonovisa, Inc. v. Cherry Auction, Inc.,*
    76 F.3d 259 (9th Cir. 1996) ............................................................................. 21

*Herman Miller, Inc. v. Alphaville Design, Inc.,*
    2009 WL 3429739, (N.D.Cal. Oct. 22, 2009) ................................................. 15

*Idaho Potato Comm'n v. G & T Terminal Packaging, Inc.,*
    425 F.3d 708 (9th Cir. 2005) ........................................................................... 10

*Landes Const. Co., Inc. v. Royal Bank of Canada,*
    833 F.2d 1365 (9th Cir. 1987) ........................................................................ 4-5

*Lindy Pen Co. v. Bic Pen Corp.,*
    982 F.2d 1400 (9th Cir.1993) ...................................................................... 7, 10

*Lockheed Martin Corp. v. Network Solutions, Inc.,*
    194 F.3d 980 (9th Cir. 1999) ........................................................................... 21

STEPHENS FRIEDLAND LLP
4695 MacArthur Court, Suite 1550
Newport Beach, California 92660
Telephone: (949) 468-3200
Facsimile: (949) 468-3201

# TABLE OF AUTHORITIES (Con't)

**Cases**                                                                      **Page(s)**

*Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.,*
    658 F.3d 936 (9th Cir. 2011) ............................................... 7, 10, 21, 24

*Malletier v. Apex Creative Intern. Corp.,*
    2010 WL 23320 (S.D.N.Y. 2010)........................................................ 22

*Microsoft Corp. v. McGee,*
    490 F.Supp.2d 874 (S.D.Ohio 2007) ................................................. 22

*Moist Cold Refrigertor Co. v. Lou Johnson Co.,*
    249 F.2d 246 (9th Cir. 1957) ............................................................... 5

*Molski v. M.J. Cable, Inc.,* 481 F.3d 724, 729 (9th Cir. 2007) ...................... 4

*Monsanto Co. v. Ralph,* 382 F.3d 1374, 1383 (Fed.Cir. 2004) ................... 11

*Moroccanoil, Inc. v. Allstate Beauty Products, Inc.,* 847
F.Supp.2d  1197 (C.D.Cal. 2012) ................................................... 15

*Murphy v. City of Long Beach,* 914 F.2d 183, 187 (9th Cir. 1990)..................... 5-6, 20

*Nike Inc. v. Variety Wholesalers, Inc.,* 274 F. Supp. 2d 1352,
1370 (S.D. Ga. 2003) ......................................................................... 9

*Passantino v. Johnson & Johnson Consumer Prods.,* 212 F.3d
493, 510 n. 15 (9th Cir. 2000)........................................................... 4

*Peer International Corp. v. Pausa Records, Inc.,*
    909 F.2d 1332 (9th Cir.1990) ......................................................... 15

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n,*
    494 F.3d 788 (9th Cir. 2007) ............................................................. 8

*Pershing Park Villas Homeowners Ass'n v. United Pac. Ins. Co.,*
    219 F.3d 895 (9th Cir.2000) ........................................................... 11

*Plumbers & Steamfitters Union, Local No. 598 v. Dillion,*
    255 F.2d 820 (9th Cir.1958) ........................................................... 18

iii

STEPHENS FRIEDLAND LLP
4695 MacArthur Court, Suite 1550
Newport Beach, California 92660
Telephone: (949) 468-3200
Facsimile: (949) 468-3201

# TABLE OF AUTHORITIES (Con't)

**Cases**                                                **Page(s)**

*Rolex Watch U.S.A., Inc. v. Zeotec Diamonds, Inc.,*
   2003 WL 23705746, *4 (C.D.Cal. 2003) ........................................ 12

*Sara Lee Corp. v. Bags of New York, Inc.,*
   36 F.Supp.2d 161 (S.D.N.Y. 1999) ................................13-14, 22-23

*Sennheiser Elec. Corp. v. Eichler,*
   2013 WL 3811775 (C.D. Cal. 2013) .................................... 12, 15, 22

*Silver Sage Partners, Ltd. v. City of Desert Hot Springs,*
   251 F.3d 814 (9th Cir. 2001) ............................................................ 4

*Skydive Arizona, Inc. v. Quattrocchi,*
   673 F.3d 1105 (9th Cir. 2012) ................................................. 11, 18

*State Farm Mut. Auto. Ins. Co. v. Campbell,*
   538 U.S. 408 (2003)........................................................... 19-20

*Sweet People Apparel, Inc. v. Zipper Clothing,*
   2012 WL 1952842, *4–5 (C.D.Cal. 2012) ........................................ 13

*Tamko Roofing Prods., Inc. v. Ideal Roofing Co., Ltd.,*
   294 F.3d 227 (1st Cir.2002)............................................................ 7

*Tiffany (NJ) Inc. v. eBay Inc.,* 600 F.3d 93 (2d Cir. 2010) ....................... 8-9

*United States E.E.O.C. v. W&O, Inc.,*
   213 F.3d 600 (11th Cir. 2000) .......................................................... 19

*U.S. v. Real Property Located at 20832 Big Rock Drive,*
   51 F.3d 1402 (9th Cir. 1985) ........................................................ 20

*Versa Prods. Co., Inc. v. Bifold Co. (Mfg.) Ltd.,*
   50 F.3d 189 (3d Cir.1995) ............................................................... 7

*Viacom Intern., Inc. v. YouTube, Inc.,*
   __ F.Supp.2d __, 2013 WL 1689071 *4 (S.D.N.Y. 2013)................................ 7

STEPHENS FRIEDLAND LLP
4695 MacArthur Court, Suite 1550
Newport Beach, California 92660
Telephone: (949) 468-3200
Facsimile: (949) 468-3201

# TABLE OF AUTHORITIES

**Cases**                                                                        **Page(s)**

*Watkins v. Bureau of Customs and Border Protection,*
    643 F.3d 1189 (9th Cir. 2011) ............................................................................ 6


**Statutes**                                                                     **Page(s)**

Federal Rule of Civil Procedure Section 59(a) ............................................................. 4

Federal Rule of Civil Procedure Section 59(d) ........................................................... 5

15 U.S.C. § 1117(c) ................................................................................................. 10-11

Lanham Act § 35 ........................................................................................................ 18


**Other**                                                                        **Page(s)**

4 Callmann on Unfair Comp., Tr. & Mono., § 22:34 ................................................ 24

5 McCarthy on Trademarks and Unfair Competition
    § 30:89 (4th ed.) ................................................................................................ 18

Nimmer on Copyright § 14.04 [E][1] (2011) ............................................................ 12

STEPHENS FRIEDLAND LLP
4695 MacArthur Court, Suite 1550
Newport Beach, California 92660
Telephone: (949) 468-3200
Facsimile: (949) 468-3201

v

**TABLE OF AUTHORITIES**

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

As set forth in defendants' Motion for Judgment as a Matter of Law, filed concurrently herewith, both the claims and the verdict in this case are unprecedented. There is no reported authority for holding a customs broker contributorily liable for trademark counterfeiting, and the evidence in this case does not warrant the verdict and judgment entered.

If the Court denies the JMOL motion, a new trial should be granted. Not only are the jury's findings of liability against the clear weight of the evidence, but there is no factual or legal basis for the jury's award of $8 million, collectively, against the defendants. Plaintiffs are not entitled to this windfall judgment which, if allowed to stand, would be a miscarriage of justice and a violation of the defendants' constitutional rights.

## II.   FACTUAL AND PROCEDURAL HISTORY

### A.   Brief Summary of Facts

Celco Customs Services Co. ("Celco") is a customs broker that was incorporated in 2002. (Reporter's Transcript of Jury Trial ("RT") at 171:22-25.) Celco is solely owned by Shen Huei Feng Wang, aka Celene Wang ("Wang"). (RT 172:1-4.) Wang has been in the customs brokerage business since 1981. (RT 172:14-19.) As a customs broker, Celco is in the business of filing entry papers with U.S. Customs relating to the importation of goods to the United States. (RT 172:20-23.) The form Celco files with the U.S. Customs is known as Form 3461. (RT 172:20-173:1.) Celco files these forms electronically by accessing the Automated Broker Interface (ABI) system. (RT 173:2-10.) By the act of pushing the "send" button to file the Form 3461, the goods in question officially "enter" the United States. (RT 211:6-13.) Celco processes approximately 4,600-4,700 entry transactions per year or approximately 18 transactions per business day. (RT 344:15-345:1.) Celco charges

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR NEW TRIAL**

1  $65-$85 per transaction; it charged $65 for the entry transaction in question.  (RT
2  270:8-10, 344:18-20.)

3       Plaintiff Coach, Inc. manufactures handbags, wallets and other products for
4  import into the United States and elsewhere.  Plaintiff Coach Services, Inc., a wholly
5  owned subsidiary, provides administrative support for Coach, Inc.  (Coach, Inc. and
6  Coach Services, Inc. may be referred to collectively herein as "Plaintiffs" or
7  "Coach.")   Coach has more than 500 independent retail locations in the North
8  America as well as 20 different countries.  (RT 123:13-25, 124:5-19.)

9       On July 27, 2009, Wang received a power of attorney from a freight forwarder
10 with whom she had worked in the past, Eastern Direct Systems.  (RT 180:21-181:9.)
11 Celco also received a commercial invoice, a packing list and a bill of lading regarding
12 the shipment of goods in question. (RT 200:14-17)).  The power of attorney
13 authorized Celco to enter a container of goods into the U.S. on behalf of Pierce
14 Chemical Company (Trial Exhibit ("Tr. Ex.") 8.)  Wang queried the ABI system and
15 determined that the taxpayer identification on the power of attorney belonged to
16 Pierce Biotechnologies, Inc.  (RT 183:2-17.)   She requested an IRS letter from
17 Eastern Direct after noticing the discrepancy in the names on the power of attorney
18 and the ABI system.  (RT 183:25-184:2; 206:18-23; 338:4-9.)

19      Before receiving the IRS letter, however, Wang pushed the "send" button to
20 officially enter a container of goods into the United States by filing the Form 3461 on
21 July 27, 2009.  (RT 211:6-13.)  She thought Pierce Biotechnologies, Inc. in the ABI
22 system was the same company as Pierce Chemical Company on the power of attorney
23 and shipping documents, with Pierce Chemical being a "dba."  (RT 205:16-206:11,
24 209:23-25.)  After the fact, Wang verified that she was correct.  (RT 210:1-6.)
25 Neither Wang nor Celco viewed any of the products in the containers.  (RT 339:1-9.)
26 She had no idea what goods were in the containers, much less knowledge that the
27 containers contained goods that may have borne counterfeit Coach trademarks.  (*Id.*)
28

STEPHENS FRIEDLAND LLP
4695 MacArthur Court, Suite 1550
Newport Beach, California 92660
Telephone: (949) 468-3200
Facsimile: (949) 468-3201

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION FOR NEW TRIAL**

A few minutes after pushing the "send" button, Wang was informed that the goods had been held by Customs. (RT 211:19-25.) Three days after the goods were entered into the U.S., two customs officers visited Celco, informing Celco that they were not allowed to take any further action with respect to the shipment. (RT 342:5-17.)

On or about September 8, 2009, Coach was notified that goods were seized based on their alleged infringement of one Coach trademark. (RT 130:19-131:4; Tr. Ex. 4.) Coach did not file the instant lawsuit until December 29, 2011. (Docket No. 1.) In that interval, the goods were destroyed by Customs. They never entered the U.S. marketplace and Coach never suffered any damages as a result of any alleged trademark counterfeiting. Likewise, neither Celco nor anyone else received any profit from the sale of the goods in U.S. commerce. Celco's total revenue regarding this transaction was $65.00. (RT 270:8-10.)

**B.    Procedural History**

Plaintiffs filed their original Complaint in this matter against Celco on December 29, 2011. [Docket No. 1.] Celco filed an answer on March 7, 2012. [Docket No. 7.] On November 9, 2012, Plaintiffs filed a Second Amended Complaint, naming Celco and Wang as defendants. [Docket No. 40.]

The case went to a three-day jury trial on March 26-28, 2013. On March 27, at the close of Plaintiffs' case-in-chief, Defendants moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a). (RT 357:22-359:11.) The Court denied the motion the same day. (RT 396:6-374:6.)

On March 28, 2013, the jury returned its Verdict Form, finding both defendants liable for contributory trademark infringement, contributory false designation of origin, and unlawful importation. [Docket No. 128.] Despite the fact that the jury was not shown any sample or photograph of the alleged infringing goods, nor presented with testimony from any witness who had observed the goods, the jury found that defendants had engaged in willful contributory infringement with respect

- 3 -

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR NEW TRIAL**

1  to five specific Coach trademarks.  The jury awarded statutory damages against Celco
2  in the amount of $4,000,000 and against Wang in the amount of $4,000,000.  *See id.*

3  After judgment was erroneously entered on March 29, 2013, the Court vacated
4  the judgment to give the parties an opportunity to file briefs regarding Defendants'
5  affirmative defenses.  Judgment on the Verdict for the Plaintiff(s) was subsequently
6  entered on August 26, 2013 against Defendants in the amount of $8,000,000.

7  Concurrently herewith, Defendants have filed a Renewed Motion for Judgment
8  as a Matter of Law ("JMOL Motion").  The instant Motion for New Trial is made in
9  the alternative, to be considered only if the Court denies Defendants' JMOL Motion.

10 **III.   IF THE COURT DENIES DEFENDANTS' MOTION FOR JUDGMENT**
11 **AS A MATTER OF LAW, DEFENDANTS ARE ENTITLED TO A NEW**
12 **TRIAL**

13 **A.   Legal Standard**

14 Under Rule 59(a), a new trial may be granted "for any of the reasons for which
15 new trials have heretofore been granted in actions at law in the courts of the United
16 States."  Fed.R.Civ.Proc. 59(a).  Thus, a motion for a new trial may be granted when
17 the verdict is against the weight of the evidence, the damages are excessive, or to
18 prevent a miscarriage of justice.  *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th
19 Cir. 2007); *Passantino v. Johnson & Johnson Consumer Prods.*, 212 F.3d 493, 510 n.
20 15 (9th Cir. 2000); *Silver Sage Partners, Ltd. v. City of Desert Hot Springs*  251 F.3d
21 814, 819 (9th Cir. 2001).

22 In contrast to a JMOL motion, when deciding a new trial motion, the court can
23 weigh the evidence and assess the credibility of witnesses; it does not presume that
24 the verdict is correct; nor need it view the evidence in the light most favorable to the
25 party in whose favor the verdict was rendered.  *See Landes Const. Co., Inc. v. Royal*
26 *Bank of Canada*, 833 F.2d 1365, 1371 (9th Cir. 1987).  By granting a new trial, the
27 court can "set aside the verdict of the jury, even though supported by substantial
28 evidence, where, in [the court's] conscientious opinion, the verdict is contrary to the

- 4 -

STEPHENS FRIEDLAND LLP
4695 MacArthur Court, Suite 1550
Newport Beach, California 92660
Telephone: (949) 468-3200
Facsimile: (949) 468-3201

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION FOR NEW TRIAL**

1   clear weight of the evidence." *Murphy v. City of Long Beach*, 914 F.2d 183, 187

2   (9th Cir. 1990); *Landes Const. Co.* 833 F.2d at 1371; *Silver Sage Partners*, 251 F.3d at

3   819.  In sum, a verdict should be set aside where, after giving full respect to the jury's

4   findings, the judge "is left with the definite and firm conviction that a mistake has

5   been committed by the jury." *Landes*, 833 F2d at 1371–1372.

6          The trial judge is ultimately responsible for the conduct of the litigation, and is

7   also responsible for ensuring that a party is not a victim of a miscarriage of justice.

8   *See Murphy,* 914 F.2d at 187 (*citing Cheney v. Moler,* 285 F.2d 116, 118–19 (10th

9   Cir.1960) (duty of trial judge to ensure that just verdict is returned); *Moist Cold*

10  *Refrigertor Co. v. Lou Johnson Co.,* 249 F.2d 246, 256 (9th Cir. 1957) (trial judge may

11  grant new trial to avoid miscarriage of justice); *Aetna Casualty & Surety Co. v. Yeatts,*

12  122 F.2d 350, 352–55 (4th Cir.1941) (detailing the traditional discretion afforded a

13  trial judge)).  The court's control over a trial is illustrated by the court's *sua sponte*

14  power to grant a new trial on grounds not alleged by a party. *See* Fed.R.Civ.P. 59(d).

15  **B.     A New Trial Is Warranted on the Ground that the Jury's Findings**

16  **Are Against the Clear Weight of the Evidence**

17         In their concurrently-filed Motion for Judgment as a Matter of Law, Defendants

18  set forth the reasons why there is insufficient evidence to support the jury's verdict

19  finding Defendants liable for contributory trademark infringement, contributory false

20  designation of origin and unlawful importation and awarding $4 million against each

21  Defendant.[1]  These same grounds support, in the alternative, the granting of a new

22  trial on each of these claims.

23         In considering whether a new trial is warranted based on these grounds,

24  however, the Court *must* weigh the evidence and assess for itself the credibility of

25  witnesses: "It is clear that the district judge had the right, and indeed the duty, to

26

27  [1] Defendants' Memorandum of Points and Authorities in support of their Motion for

28  JMOL ("JMOL Memo.") is incorporated by this reference as though fully set forth
    herein.

STEPHENS FRIEDLAND LLP
4695 MacArthur Court, Suite 1550
Newport Beach, California 92660
Telephone: (949) 468-3200
Facsimile: (949) 468-3201

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION FOR NEW TRIAL**

1   weigh the evidence as he saw it, and to set aside the verdict of the jury, even though
2   supported by substantial evidence, where, in his conscientious opinion, the verdict is
3   contrary to the clear weight of the evidence, or . . . to prevent . . . a miscarriage of
4   justice." *Murphy,* 914 F.2d at 187.

> **1.   The jury's findings that Defendants are liable for
>     Contributory Trademark Infringement, Contributory False
>     Designation of Origin and Unlawful Importation are against
>     the clear weight of the evidence.**

9   As set forth in Defendants' JMOL Motion, there was insufficient evidence as a
10  matter of law to support Defendants' claims for Contributory Trademark
11  Infringement, Contributory False Designation of Origin and Unlawful Importation.
12  (*See* JMOL Memo. at page 13, line 17.) If the Court disagrees, and denies
13  Defendants' JMOL motion as to any of those claims, then a new trial is nonetheless
14  warranted because the jury's findings are against the clear weight of the evidence.

15  The jury's findings that five specific marks were counterfeited are against the
16  clear weight of the evidence. Indeed, the primary evidence regarding the alleged
17  counterfeit marks was offered through Coach's employee, Mr. Lau, who testified that
18  the marks on goods the container were "comparable" to Coach's genuine marks, even
19  though he had never seen the goods in the container or their marks. Without evidence
20  of these marks, the jury could not reasonably conclude that they were "identical" to
21  the genuine Coach marks or that they were used in a manner "likely to cause
22  confusion among ordinary consumers." While the Notice of Seizure references one
23  trademark, the Ninth Circuit has held that notices of seizure "are not final
24  determinations that goods seized are counterfeit." *Watkins v. Bureau of Customs and
25  Border Protection*, 643 F.3d 1189, 1195 (9th Cir. 2011).

26  In addition, the jury's findings that Defendants are contributorily liable for
27  trademark infringement or false designation of origin are against the clear weight of
28  the evidence. There was no evidence that Defendants *continued* to supply any

- 6 -

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION FOR NEW TRIAL**

services to the importer with actual or constructive knowledge *that alleged counterfeit Coach goods were in the container*. *See Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.,* 658 F.3d 936, 942 (9th Cir. 2011); *Viacom Intern., Inc. v. YouTube, Inc.,* __ F.Supp.2d __, 2013 WL 1689071 *4 (S.D.N.Y. 2013) ("In imputing knowledge of the willfully disregarded fact, one must not impute more knowledge than the fact conveyed.")  Nor was there any evidence that Defendants had *direct control and monitoring* over the *instrumentality used to infringe* Coach's marks. *Louis Vuitton,* 658 F.3d at 942.

Unlike the typical case in which contributory infringement has been found, Defendants did not lease real property or websites to retailers who sold infringing goods.  Rather, Defendants acted as a Customs broker, and their only misstep was in negligently failing to discover the reason for the name discrepancy in the Customs documents prior to pushing the "send" button.  Consequently, the jury's findings as to Defendants' liability for contributory counterfeiting are unfounded and warrant a new trial if the Motion for JMOL is not granted.

## 2.  The jury's findings that Defendants' conduct was "willful" are against the clear weight of the evidence.

Willful infringement occurs when the defendant knowingly and intentionally infringes on a trademark.  *See Earthquake Sound Corp. v. Bumper Indus.,* 352 F.3d 1210, 1217-17 (9th Cir. 2003); *Dr. JKL Ltd. v. HPC IT Education Center,* 749 F.Supp.2d 1038, 1050 (N.D.Cal. 2010).  "Willful [misconduct] carries a connotation of deliberate intent to deceive.  Courts generally apply forceful labels such as 'deliberate,' 'false,' 'misleading,' or 'fraudulent' to conduct that meets this standard." *Lindy Pen Co. v. Bic Pen Corp.,* 982 F.2d 1400, 1406 (9th Cir.1993).

A finding of willful misconduct under the Lanham Act must be supported by clear and convincing evidence.  *See Tamko Roofing Prods., Inc. v. Ideal Roofing Co., Ltd.,* 294 F.3d 227, 229 (1st Cir.2002). *See also Versa Prods. Co., Inc. v. Bifold Co. (Mfg.) Ltd.,* 50 F.3d 189, 208 (3d Cir.1995); *Castrol, Inc. v. Pennzoil Quaker State*

- 7 -

STEPHENS FRIEDLAND LLP
4695 MacArthur Court, Suite 1550
Newport Beach, California 92660
Telephone: (949) 468-3200
Facsimile: (949) 468-3201

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR NEW TRIAL**

*Co.*, 169 F.Supp.2d 332, 341 & n. 8 (D.N.J.2001); *CollegeNet, Inc. v. XAP Corp.*, 483 F.Supp.2d 1058 (D.Or. 2007).  Where a new trial is necessary on a claim of trademark infringement, there must also be a new trial on the issue of willfulness.  *Computer Access Technology Corp. v. Catalyst Enterprises, Inc.*, 273 F.Supp.2d 1073, 1077 (N.D.Cal. 2003).

Here, the jury's finding that Defendants' conduct was "willful" (special verdict nos. 5, 8, 12, 15, 19 and 21) was not supported by clear and convincing evidence.  The jury was instructed that in order to find that either Defendant had acted "willfully," they must find:

1. The defendant acted in bad faith; *and*

2. The defendant acted with deliberate disregard for or willful blindness to plaintiffs' rights; or

3. The defendant acted with the intent that a counterfeit mark be used in connection with the sale, offering for sale, or distribution of goods or services.

(Jury Instruction No. 19 [Docket 129].)

The jury's finding that Defendants acted in bad faith is against the clear weight of the evidence.  This is not a case in which Defendants continued to sell infringing products after receiving cease-and-desist letters,[2] and there is no evidence that prior to pushing the "send" button Defendants had any knowledge that the container held allegedly counterfeit Coach products.

Moreover, a finding of "willful blindness" must be based on Defendants' knowledge or suspicion not just that "something was amiss," but that that the container held counterfeit Coach products.  *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d

---

[2] *Cf. Louis Vuitton,* 658 F.3d at 940-41; (plaintiffs sent defendants 18 notice of infringement); *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 793 (9th Cir. 2007) (plaintiffs sent defendants multiple notices that their services were being used to infringe); *Coach, Inc. v. Sassy Couture*, 2012 WL 162366 (W.D.Tex. 2012).

- 8 -

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR NEW TRIAL**

93, 107 (2d Cir. 2010); *Louis Vuitton*, 658 F.3d at 943; *Contessa Food Products, Inc. v. Lockpur Fish Processing Co., Ltd.*, 123 Fed.Appx. 747, 750 (9th Cir. 2005).  No evidence was presented at trial that Wang or Celco knew or suspected the container held counterfeit Coach goods.  At most, the evidence adduced at trial established that Wang knew there was a discrepancy in names in the Customs documents, and she was negligent in not waiting for the IRS letter she had requested from the freight forwarder before pushing the button to authorize entry of the container.

Clear, and even gross, negligence in failing to suspect goods are counterfeit does not equate to a finding of willful blindness.  *Nike Inc. v. Variety Wholesalers, Inc.*, 274 F. Supp. 2d 1352, 1370 (S.D. Ga. 2003) *aff'd*, 107 F. App'x 183 (11th Cir. 2004).  Thus, the court in *Nike* found that defendant company (Variety) was not "willfully blind" when purchasing counterfeit Nike products, even though Variety had "450 stores and nearly $600 million in annual gross revenue, . . . had been sued several times for trademark counterfeiting and infringement, had knowledge that labels and hangtags could be counterfeited, and was aware that counterfeit goods were available on secondary markets."  *Id*. at 1370.  The court noted that if Variety had been "reasonably prudent," it "would have suspected" that the Nike goods it purchased might be counterfeit.  *Id*.  Yet, after considering the evidence, the court concluded that Variety "did not know of a high probability of illegal conduct and purposefully contrive to avoid learning of it," and "did not fail to inquire further out of fear of the result of its inquiry."  *Id*.  While Nike contended that undisputed evidence that Variety did not obtain "unsanitized invoices" for every purchase of a purported "Nike" product compelled a finding of willful blindness, the court disagreed, stating:

> Nike ignores the fact that Variety failed to insist on unsanitized invoices not out of a fear that such invoices would expose purported Nike products as counterfeit, but rather out of an honestly held belief that such insistence would be futile. However objectively unreasonable, Variety

- 9 -

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR NEW TRIAL**

1    honestly believed that vendors refused to provide such invoices not to

2    hide the fact that they were selling counterfeit products, but rather to

3    preserve their own role as middlemen between manufacturers and

4    Variety by refusing to identify any intermediate suppliers.

5  *Id.*

6    Likewise, here, the evidence supports no more than a finding that Wang was

7  negligent in failing to insist on a corrected power of attorney before concluding the

8  transaction by pushing the "send" button.  Wang sought confirmation of the identity

9  of the importer through communications with the freight forwarder because she

10 believed the freight forwarder wanted to preserve its role as "middleman" (RT

11 216:25-217:16), not because she chose to be willfully blind as to potentially unlawful

12 conduct.  The jury's findings that Celco and Wang acted "willfully" are against the

13 clear weight of the evidence.

14         **3.     The jury's finding that Plaintiffs are entitled to statutory**

15                  **damages is against the clear weight of the evidence.**

16    In order to be entitled to an award of statutory damages under Section 1117(c),

17 Plaintiffs had to prove that: (1) Defendants intentionally used a counterfeit mark in

18 commerce; (2) knowing the mark was counterfeit; (3) in connection with the sale,

19 offer for sale, or distribution of goods; and (4) Defendants' use was likely to confuse

20 or deceive consumers.  *Idaho Potato Comm'n v. G & T Terminal Packaging, Inc.*, 425

21 F.3d 708, 721 (9th Cir. 2005); *Lindy Pen Co.,* 982 F.2d at 1406.  Thus, as a threshold

22 issue, Plaintiffs had to prove that the goods in the container were "counterfeit" *i.e.,*

23 that (a) they bore a non-genuine mark *identical* to the registered, genuine mark of

24 another, where (b) the genuine mark was registered for use on the same goods to

25 which the infringer applied the mark.  15 U.S.C. § 1117(c); *Louis Vuitton,* 658 F.3d at

26 946.

27    As set forth in the JMOL Motion, the jury was not presented with any evidence

28 showing the allegedly "counterfeit" marks that it could compare with the genuine

- 10 -

STEPHENS FRIEDLAND LLP
4695 MacArthur Court, Suite 1550
Newport Beach, California 92660
Telephone: (949) 468-3200
Facsimile: (949) 468-3201

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION FOR NEW TRIAL**

1  marks.  The jury therefore could not have determined that the marks were "identical"

2  or that they were used on the same goods for which the marks were registered.  For

3  this same reason, having never seen the goods or the marks they bore, the jury could

4  not reasonably have determined that the goods in the container were "likely to

5  confuse or deceive consumers."

6       The evidence presented to the jury weighs clearly against a finding that

7  Defendants intentionally used counterfeit marks.  As a result, Plaintiffs are not

8  entitled to an award of statutory damages under 15 U.S.C. § 1117(c).

9       **C.    A New Trial Is Warranted on the Issue of Damages**

10       Even if the Court determines that a factual basis for statutory damages exists,

11  the magnitude of the award warrants the granting of a new trial.  Under Rule 59 the

12  Court may order a new trial or grant a remittitur when the damages award is "grossly

13  excessive or monstrous, clearly not supported by the evidence or based only on

14  speculation or guesswork."  *See Monsanto Co. v. Ralph*, 382 F.3d 1374, 1383

15  (Fed.Cir. 2004).  *See also Skydive Arizona, Inc. v. Quattrocchi*, 673 F.3d 1105, 1115

16  (9th Cir. 2012) (a verdict based on the bias, passion, or sympathy of the jury cannot

17  be permitted to stand); *Pershing Park Villas Homeowners Ass'n v. United Pac. Ins.*

18  *Co.*, 219 F.3d 895, 905 (9th Cir.2000) ("A new trial is necessary where it is found that

19  passion and prejudice tainted the jury's verdict.").  Such is the case here.

20       No evidence was presented at trial of actual damages.  The goods in question

21  were seized by U.S. Customs and destroyed prior to their entry into the marketplace.

22  Plaintiffs did not—and could not—offer any evidence that they suffered any damage

23  as a result of the conduct.  Plaintiffs also did not—and could not—offer any evidence

24  that Defendants made any profit (other than the $65 broker fee) from the alleged

25  wrongful conduct.

26       Nevertheless, the jury returned a verdict awarding plaintiffs statutory damages

27  of $4,000,000 against Celco and $4,000,000 against Wang, which was combined in

28  the judgment to total an $8 million award against both Defendants, jointly and

- 11 -

STEPHENS FRIEDLAND LLP
4695 MacArthur Court, Suite 1550
Newport Beach, California 92660
Telephone: (949) 468-3200
Facsimile: (949) 468-3201

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION FOR NEW TRIAL**

1  severally.  This award is grossly excessive, not supported by the evidence presented

2  and so disproportionate to any evidence presented of defendants' assets as to violate

3  defendants' Constitutional rights.

### 1.   Factors to be considered in awarding statutory damages

5  Although Section 1117(c) does not provide guidelines for determining an

6  appropriate statutory damages award, courts faced with determining statutory

7  damages under the Lanham Act have analogized to the body of case law interpreting a

8  similar provision in the Copyright Act.  *Sennheiser Elec. Corp. v. Eichler*, 2013 WL

9  3811775 (C.D. Cal. 2013).  In determining the appropriate amount

10 of statutory damages to award, a court should "consider the defendant's profits, as

11 well as saved expenses, the plaintiff's lost revenues, and the defendant's state of

12 mind."  *Rolex Watch U.S.A., Inc. v. Zeotec Diamonds, Inc.*, 2003 WL 23705746, *4

13 (C.D.Cal. 2003) (quoting *Louis Vuitton Malletier and Oakley, Inc. v. Veit*, 211

14 F.Supp.2d 567, 584 (E.D.Pa. 2002)). The resulting statutory damage award should be

15 "low enough to bear some rational relationship to the amount of damages incurred . . .

16 but substantial enough to deter similarly situated businesses from engaging in similar

17 conduct in the future." *Id.* at *5.  *See also Coach, Inc. v. Diva Shoes & Accessories*,

18 2011 WL 1483436 (N.D.Cal. 2011) ("[B]ecause statutory damages are meant to serve

19 as a substitute for actual damages the Court should discern whether the requested

20 damages 'bear some relation to the actual damages suffered'"); *Coach, Inc. v.*

21 *O'Brien*, 2012 WL 1255276 (S.D.N.Y. 2012) (statutory damages should at least be

22 "woven out of the same bolt of cloth as actual damages," quoting 4 M. B. Nimmer &

23 D. Nimmer, Nimmer on Copyright § 14.04[E][1] (2011)).  In addition, there must be a

24 "plausible relationship" between the damages sought by plaintiff and the defendant's

25 infringing conduct. *Sennheiser*, 2013 WL 3811775 at *8.[3]

---

26 [3] On this point, the court in *Sennheiser* invited a comparison between *Beachbody,*

27 *LLC v. Johannes*, 2011 WL 3565226, *3 (C.D.Cal. 2011) (finding that plaintiff's

28 request for $2,150,000 in statutory damages was unreasonable and did not have a
"plausible relationship" to the defendant's profits from infringement where there were

- 12 -

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION FOR NEW TRIAL**

1       A determination of the amount statutory damages "must look to the full range

2   of factors." *Sara Lee Corp. v. Bags of New York, Inc.*, 36 F.Supp.2d 161, 167

3   (S.D.N.Y. 1999). Actual damages, such as profits and losses, is "a typical starting

4   point for such analysis." *Id.*

5       **2.   The $8 million damages award was grossly excessive and**

6           **unsupported by the evidence.**

7       This is not a case in which actual damages are "uncertain" due to defendant

8   defaulting or being uncooperative in discovery. Instead, Plaintiffs suffered no losses

9   because the goods were never marketed.[4] *See Diva Shoes,* 2011 WL 1483436 at *8

10  ("Given that the counterfeit bags sold by Defendants are significantly less expensive

11  than authentic Coach merchandise, the shoppers who buy from Defendants are

12  arguably not likely to purchase authentic Coach products. Thus, the revenues lost as a

13  direct result of Defendants' infringing activities may not be substantial. Absent some

14  evidentiary showing, the Court cannot reach any conclusion about the magnitude of

15  lost revenues to Coach"). Nor is there any evidence that Defendants profited from

---

16  no figures confirming defendant's profits and the complaint failed to allege that

17  defendant actually sold any counterfeit goods) and *Sweet People Apparel, Inc. v.*

18  *Zipper Clothing,* 2012 WL 1952842, *4–5 (C.D.Cal. 2012) (awarding plaintiff
    $150,000 in statutory damages per infringed mark where plaintiffs alleged that their

19  jeans retailed for approximately $100 and that sales of the jeans totaled tens of

20  millions of dollars, and the statutory damages award bore a " 'plausible relationship'
    to [d]efendants' infringing activities and the profits [d]efendants may have realized

21  from those activities").

22  [4] Plaintiffs presented minimal evidence regarding the retail price of one type of Coach

23  handbag and wallet (RT 286:4-7, 286:15-18), but absolutely no evidence that of lost

24  sales. Nevertheless, in closing argument, Plaintiffs' counsel asked the jury to award
    $8 million based purportedly on the retail value of the goods purportedly

25  counterfeited. (RT 487:19-488:5.) The resulting award was entirely speculative and
    unsupported by the evidence. *See Computer Access Technology,* 273 F.Supp.2d at

26  1076-77; *Coach, Inc. v. Envy,* 2012 WL 78238 *4 (E.D.Cal. 2012) (Plaintiffs'

27  statements that they do not have information as to how many goods were sold or the

28  amount of revenues lost by Plaintiffs . . . is not sufficient to support a $100,000.00
    damages request).

- 13 -

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION FOR NEW TRIAL**

1  their conduct.  Wang testified that the sole compensation Defendants received was the

2  $65.00 fee charged to process the customs paperwork.  (RT 270:8-10.)  *Diva Shoes,*

3  *supra,* at *7 ($1 million requested award was "grossly disproportionate" to

4  defendants' potential profits of approximately $23,000).

5      The multi-million dollar windfall award in this case did not bear any "plausible

6  relationship" to Defendants' conduct.  There was no "continuing" conduct by

7  Defendants.  They did not sell infringing products in the face of cease-and-desist

8  notices.  Wang simply pushed the "send" button, before waiting for a response to her

9  confirmation request that "Pierce Biotechnical" and "Pierce Chemical Co." were the

10  same company.  Once she received notice that the goods were being held by Customs,

11  she took no further action.  *See, e.g., Coach, Inc. v. Cellular Planet*, 2010 WL

12  2572113 (S.D.Ohio 2010) (awarding $100,000 per violation against defendant

13  retailers who sold counterfeit goods but only $10,000 per violation against defendant

14  who "did not offer the infringing goods for sale" but permitted retailers to sell

15  counterfeit goods on its property) .

16      The facts in this case stand in stark contrast to those in *Sara Lee Corp. v. Bags*

17  *of New York, Inc.*, 36 F. Supp. 2d 161 (S.D.N.Y. 1999), where the court held statutory

18  damages of $750,000 were not excessive because defendants conducted a "methodical

19  long-time operation of a counterfeit Coach factory," infringing Coach trademarks for

20  over two years, defying all attempts at deterrence and supporting the counterfeiting

21  operation by concealing evidence and lying under oath repeatedly.  There is no justice

22  in awarding over 10 times the statutory damages as were awarded to Coach in *Sara*

23  *Lee Corp.*

24      Moreover, in the Special Verdict form, the jury was permitted to find that

25  Defendants had infringed up to five separate Coach marks, and instructed that it could

26  base the amount of its damages award on the number of marks counterfeited.

27  Plaintiffs presented *no evidence* that five of Coach's marks had been counterfeited.

28  As detailed in the JMOL Motion, and as the Court ruled during trial, Mr. Lau's

- 14 -

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION FOR NEW TRIAL**

testimony regarding his opinion after reviewing inadmissible photographs purportedly of the seized goods was not relevant on this point. (RT 247:4-8.) Even if the Court were to consider the Notice of Seizure (Tr. Ex. 4) as evidence of counterfeiting, the jury would have been entitled to award damages for only on two instances of infringement. *See* RT 422:18-24 (Plaintiffs' counsel concedes that based on the Notice of Seizure, there would be two instances of infringement). A new trial is warranted on this ground alone.

This is not a case in which a very large award is necessary to deter similar conduct in the future. There was no evidence of Celco's or Wang's net worth, and thus, there is no basis to conclude that an $8 million judgment bears any reasonable proportion to their assets. The award of $8 million collectively against these parties does not serve a "deterrent" effect, it delivers a fatal blow. "Statutory damages are intended to serve as a deterrent, but that does not justify such a windfall." *Herman Miller, Inc. v. Alphaville Design, Inc.* (N.D.Cal. Oct. 22, 2009) 2009 WL 3429739, *9 (*citing Peer International Corp. v. Pausa Records, Inc.,* 909 F.2d 1332, 1332 (9th Cir.1990)).[5]

A review of cases in which courts have awarded statutory damages under Section 1117(c) reveals that the magnitude of the award against Defendants in this case is wholly out of proportion to the nature of Defendants' conduct. For instance, in *Moroccanoil, Inc. v. Allstate Beauty Products, Inc.*, 847 F.Supp.2d 1197 (C.D.Cal. 2012), the court awarded $60,000 in statutory damages under §1117(c) upon a default

---

[5] *See also Sennheiser*, 2013 WL 3811775 at *8 (statutory damages need not be substantial to achieve deterrence goal; citing cases); *Adobe Systems, Inc. v. Tilley*, 2010 WL 309249, *5-6 (N.D.Cal. 2010) ("[W]hile the plaintiff in a trademark or copyright infringement case is entitled to damages that will serve as a deterrent, it is not entitled a windfall."); *Coach, Inc. v. O'Brien*, 2012 WL 1255276 (S.D.N.Y. 2012) ("[A] plaintiff should not reap a windfall multi-million dollar award from the actions of a single small-scale infringer"); *Coach, Inc. v. Horizon Trading USA, Inc.*, 2012 WL 5451274 (S.D.N.Y. 2012) (noting that in awarding statutory damages, courts have often issued awards far below the statutory maximum).

- 15 -

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR NEW TRIAL**

judgment against defendant that sold counterfeit beauty products on its website. The court found that $20,000 per counterfeit mark infringed was "a conservative award and appropriate under the circumstances." *Id.* at 1203.

The $8 million damages award is also grossly excessive compared with damages awards in other cases involving the same Plaintiffs and Coach products. For example, in *Coach, Inc. v. Diana Fashion*, 2011 WL 6182332 (N.D.Cal. Dec. 13, 2011), Plaintiffs secured a default judgment against a retailer who sold products bearing at least four allegedly counterfeit Coach trademarks. The retailer failed to answer the complaint and continued to sell the infringing products. The court granted Plaintiffs' request for $50,000 in statutory damages, finding that this amount "bear[s] a plausible relationship to Defendants' infringing activities and the profits Defendants may have realized from those activities," and would serve to deter future infringement by defendants or others. The court further noted that "a statutory damage award of $50,000 is in line with default judgments granted by other district courts in similar circumstances." *Id.* at *5 (*citing Coach Services v. La Terre Fashion, Inc.*, 2011 U.S. Dist. LEXIS 127873 at *10-11 (C.D.Cal Nov. 1, 2011) (granting an award of $45,000). Other statutory damage awards obtained by Plaintiffs in cases within this Circuit range from $6,000 to $1,000,000, as follows:

- $40,000 in *Coach, Inc. v. Sexy Fashion*, 2012 WL 5398830 (C.D.Cal. 2012) (court held $100,000 amount requested by Coach was "unreasonable in light of the evidence before the Court," which, unlike the instant case, included photographs of allegedly infringing products);

- $10,000 in *Coach v. American Fashion Gift*, 2013 WL 950938 (C.D.Cal. 2013) (court held that "[b]ased on the paucity of supporting evidence, it would be inappropriate to award Coach $100,000 in statutory damages" as Coach had requested);

- $1,000,000 in *Coach Services, Inc. v. YMN, Inc.*, 2011 WL 1752091 (C.D.Cal. 2011) (defendants continued to import, distribute and sell counterfeit Coach

- 16 -

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION FOR NEW TRIAL**

goods for eight months after being served with complaint and refused to cooperate in discovery);

- $100,000 in *Coach, Inc. v. Zhou Hui Yin*, 2011 WL 7268428 (N.D.Cal. 2011) (finding award of $10,000 for each of 10 violations "is reasonable in light of the value of Coach's marks, the number of infringement violations and Defendant's undisputed sale of counterfeit goods, and will likely serve to deter Defendant and other from engaging in this type of trademark infringement in the future.");

- $140,000 in *Coach, Inc. v. Diva Shoes & Accessories*, 2011 WL 1483436 (N.D.Cal. 2011) (denying Coach's request for $1 million where "Coach has provided no evidence of its revenues lost, either as a result of Defendants' infringing activities or as a result of counterfeiting in general," and noting that "in other recent cases brought by Coach, Coach has found much lower awards sufficient to deter violators" (citing awards in other *Coach* cases));

- $6,000 in *Coach Services, Inc. v. Cheap Sunglasses*, 2010 WL 2696799 (S.D.Cal. 2010) (infringement of one mark on one type of product sold on defendant's website).

Given this range of damages awards, it would be manifestly unjust to allow an $8 million judgment to stand against Defendants who are customs brokers – not direct infringers and who profited from the infringement. As one district court summarized, in denying Coach's request for $100,000 in statutory damages on default:

"[Plaintiffs] have not provided the Court with any evidence that this damages award is proper . . . . There is no evidence, for example, regarding what products in particular were obtained, the value of the items, the presence of other products in the store, or how the introduction of these products into the market specifically effected [sic] Coach's profit.  Plaintiffs' statements that they do not have information as to how many goods were sold, or the amount of revenues lost by Plaintiffs

- 17 -

STEPHENS FRIEDLAND LLP
4695 MacArthur Court, Suite 1550
Newport Beach, California 92660
Telephone: (949) 468-3200
Facsimile: (949) 468-3201

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR NEW TRIAL**

because Defendants failed to appear in this action, is not sufficient to support a $100,000.00 damage request. . . . ***Plaintiffs are reminded that it is their burden to establish the relief they are seeking***."

*Coach, Inc. v. Envy*, 2012 WL 79238 (E.D.Cal. 2012) (emphasis added). Likewise, Coach failed to present such evidence in this case.

### 3. The damage award violates Defendants' Constitutional rights and constitutes a miscarriage of justice.

In reviewing an award of monetary recovery under the Lanham Act § 35, the Ninth Circuit has stated that the trial court has "extremely wide discretion" to determine an appropriate award. 5 McCarthy on Trademarks and Unfair Competition § 30:89 (4th ed.) (quoting *Friend v .H.A. Friend & Co.*, 416 F.2d 526, 533 (9th Cir. 1969)). In exercising this discretion, courts have usually required proof of some actual confusion or deception. *Id*.

While there is no "necessary mathematical relationship" required between statutory damages awarded and the extent or profitability of defendant's activities, there must be a plausible relationship. *Beachbody*, 2011 WL 3565226 *3. Moreover, while statutory damages can be appropriately awarded to approximate actual damages, they cannot be based on pure speculation or swayed by passion or prejudice. A verdict based on the bias, passion, or sympathy of the jury, or an award that is "grossly excessive" or "monstrous," cannot be permitted to stand. *Skydive Arizona*, 673 F.3d at 1115 (*citing Plumbers & Steamfitters Union, Local No. 598 v. Dillion*, 255 F.2d 820, 824 (9th Cir.1958)).

The magnitude of the award, particularly in light of the paucity of evidence in this case, the lack of instruction provided the jury in calculating an award, and the awards deemed reasonable in similar situations, indicates the jury's award was made on an entirely improper basis. Viewed at any angle, the juxtaposition between the damages award and Defendants' proven assets is so great as to shock the conscience and violate their constitutional rights.

- 18 -

STEPHENS FRIEDLAND LLP
4695 MacArthur Court, Suite 1550
Newport Beach, California 92660
Telephone: (949) 468-3200
Facsimile: (949) 468-3201

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR NEW TRIAL**

"Elementary notions of fairness enshrined in our constitutional jurisprudence dictate that a person receive fair notice not only of the conduct that will subject him to a punishment, but also of the severity of the penalty" that may be imposed. *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 574, 116 S.Ct. 1589 (1996). "Due process prohibits the imposition of grossly excessive or arbitrary punishments on a tortfeasor." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416, 123 S.Ct. 1513 (2003). "To the extent an award is grossly excessive, it furthers no legitimate purpose and constitutes an arbitrary deprivation of property. *Id.*, 538 U.S. at 417.

The Supreme Court has identified three guideposts for evaluating whether a damages award comports with due process: (1) the reprehensibility of defendant's conduct; (2) the ratio between harm suffered and the award; and (3) the difference between the award and civil penalties authorized or imposed in comparable cases. *State Farm*, 538 U.S. at 418 (*citing BMW*, 517 U.S. at 575). Applying these guideposts, the $8,000,000 awarded collectively against Defendants can only be seen as a form of civil punishment administered without due process.[6]

Damages imposed to punish a defendant should reflect "the enormity of his offense." *BMW*, 517 U.S. at 575. Thus, courts look to the following "aggravating factors" in determining whether conduct is particularly reprehensible: (1) whether the harm suffered was purely economic, rather than physical; (2) whether a defendant evinced indifference or reckless disregard for the health and safety of others; (3) whether harm was intentionally inflicted; and (4) whether the target was financially vulnerable. *See United States E.E.O.C. v. W&O, Inc.*, 213 F.3d 600, 614 (11th Cir. 2000) (*citing BMW*, 517 U.S. at 576). None of these "aggravating factors" is supported by the evidence: Coach suffered no physical (or economic) harm; Defendants did not evince indifference to anyone's health or safety; Defendants did

---

[6] Indeed, the jury was instructed that "[t]he purpose of statutory damages is to penalize the infringer and deter future violations of the trademark laws." (Jury Instruction 19.)

- 19 -

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION FOR NEW TRIAL**

not intentionally inflict harm on Coach; and Coach is not "financially vulnerable." Defendants' conduct cannot be deemed "reprehensible."

Plaintiffs presented no evidence that they suffered *any* harm as a result of Defendants' actions. Thus, the "ratio" between such harm ($0.00) and the $8 million award is simply non-existent. The appropriate remedy for a technical violation that does not cause harm is not punitive damages, but nominal damages. *See Cummings v. Connell*, 402 F.3d 936, 942-43 (9th Cir. 2005).

Defendants had no fair notice that, through providing customs brokerage services, they faced an unprecedented, multi-million-dollar statutory damages award. There is no case in American jurisprudence imposing civil liability under the Lanham Act based on a customs broker's failure to confirm the validity of a power of attorney. Defendants thus had no notice that their conduct would subject them to liability or that they might be found liable for the incomprehensible statutory damages awarded in this case. *See State Farm,* 538 U.S. at 428. Indeed, if Wang had been cited by the CBP for violating a Customs regulation imposed on customs brokers, the penalty would have been $10,000. Even that penalty was not assessed here. (RT 348:5-14.) Furthermore, even in situations where contributory infringement is typically found, and involving much more egregious conduct, courts consistently have awarded considerably lower statutory damages. Under these circumstances, upholding a verdict of $8,000,000 in civil damages against Defendants would result in violation of Defendants' due process rights, and effect a clear miscarriage of justice.

**D.    A New Trial Is Warranted Based on Errors in the Jury Instructions and Verdict Form**

When jury instructions or special verdict forms contain substantial errors, a new trial is warranted. *See, e.g., Murphy,* 914 F.2d at 187; *U.S. v. Real Property Located at 20832 Big Rock Drive*, 51 F.3d 1402, 1407-08 (9th Cir. 1985). Several substantial errors occurred in this case, and a new trial is warranted on this ground.

- 20 -

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR NEW TRIAL**

1.    **The instructions given the jury failed to properly state the elements required for Contributory Trademark Infringement and Contributory False Designation of Origin.**

First, Jury Instruction Nos. 15 and 17 incorrectly state the elements of claim for Contributory Trademark Infringement (No. 15) and Contributory False Designation of Origin (No. 17). Specifically, these instructions fail to include the requirement that a defendant must "continue" to supply services to one it knows or has reason to know is engaging in trademark infringement or false designation of origin. *See, e.g., Louis Vuitton,* 658 F.3d at 942; *Perfect 10*, 494 F.3d at 807; *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir. 1996); *Coach, Inc. v. Asia Pacific Trading Co., Inc.*, 676 F.Supp.2d 914, 927 (C.D.Cal. 2009). This omission was critical because there was no evidence that Defendants "continued" to provide any services to their client after learning that the container held allegedly counterfeit Coach products.

The instructions also failed to include, as required for claims of contributory infringement/false designation based on the provision of services, the requirement that defendant had "direct control and monitoring over the instrumentality that caused the infringement/false designation." *Louis Vuitton*, 658 F.3d at 942; *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 984 (9th Cir. 1999). This omission was significant because there was no evidence that Defendants had any "direct control" over the importer or freight forwarder or had any way to "monitor" what was in the container.

In addition, the jury received no instruction regarding the factors of the critical test for determining "likelihood of confusion," as set down by the Ninth Circuit in *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979).[7] If the jury had

---

[7] These factors are: (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines. *Sleekcraft Boats*, 599 F.2d at 348-49, *abrogated by Mattel, Inc. v.*

- 21 -

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR NEW TRIAL**

been advised of these factors, they likely would have realized that there was insufficient evidence for them to conclude that a "likelihood of confusion" existed.

### 2.    The jury was not instructed on the factors it was required to consider in awarding statutory damages

As noted above, a determination of the amount of statutory damages to award under Section 1117(c) is not unfettered but must be based on consideration of "the full range of factors," including defendant's profits and plaintiff's losses. Moreover, there must be a "plausible relationship" between the damages sought by plaintiff and the defendant's infringing conduct. *Sennheiser,* 2013 WL 3811775 at *8.

Here, the jury was not provided *any* instruction as to the factors it must consider in arriving at an appropriate amount of statutory damages. Instead, the jury was advised solely that the "purpose" of statutory damages "is to penalize the infringer and deter future violations of the trademark laws." (*See* Jury Instruction No. 19 [Docket 129].) In fact, the provision of Section 1117 authorizing statutory damages was added in 1996, and amended in 2008, largely to provide a remedy in cases where damages in counterfeiting cases were difficult to prove due to defendants' default or failure to cooperate in discovery[8]—circumstances not present here. "Because a key purpose of § 1117(c) is to provide a monetary remedy in cases of amorphous damage, courts assessing statutory damages must exercise discretion in

---

*Walking Mountain Prods.*, 353 F.3d 792 (9th Cir. 2003); *Asia Pacific Trading, Inc.,* 676 F.Supp.2d at 919.

[8] *See Sara Lee Corp.*, 36 F.Supp.2d at 165-166 ("Statutory damages are most appropriate when the infringer's nondisclosure during fact finding leaves damages uncertain"); *Microsoft Corp. v. McGee*, 490 F.Supp.2d 874, 882 (S.D.Ohio 2007) ("statutory damages are appropriate in default judgment cases because the information needed to prove actual damages is within the infringers' control and is not disclosed"); *Malletier v. Apex Creative Intern. Corp.*, 2010 WL 23320 (S.D.N.Y. 2010) (statutory damages under the Lanham Act are "particularly appropriate" for default cases, where defendants fail to provide complete and accurate records of their sales and profits).

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR NEW TRIAL**

STEPHENS FRIEDLAND LLP
4695 MacArthur Court, Suite 1550
Newport Beach, California 92660
Telephone: (949) 468-3200
Facsimile: (949) 468-3201

1   examining whatever facts and considerations are available in a setting of limited

2   information." *Sara Lee Corp.*, 36 F.Supp.2d at 166.

3       In sum, the jury did not receive any guidance regarding the factors to be

4   considered in assessing statutory damages, much less the "full range of factors" it was

5   required to consider, and the jury instruction given did not state that statutory

6   damages are meant to substitute for actual damages.  This factor alone warrants the

7   granting of a new trial.

8           **3.**    **The inclusion on the Special Verdict form of drawings of five**

9                  **Coach marks was error.**

10      Finally, on the Special Verdict form, the jury was presented with drawn

11  representations of five Coach trademarks and asked whether each of these marks was

12  infringed.  As discussed in the JMOL Motion, while the jury had been shown these

13  marks on "genuine" Coach products, there was no evidence that these marks were

14  found on the goods in the container.  Thus, there was no basis on which the jury

15  reasonably could find that the marks on the seized goods were would cause a

16  "likelihood of confusion" and thus were infringing.  (*See* JMOL Memo. at page 21,

17  line 24 to page 22, line 5.)  Under these circumstances, including representations of

18  these marks on the Special Verdict form and inviting the jury to find infringement

19  was prejudicial error.

20  **IV.**    **THE JUDGMENT SHOULD BE AMENDED TO CORRECTLY**

21          **REFLECT THE JURY'S VERDICT**

22      If Defendants' motions for JMOL and new trial are both denied and the

23  judgment is permitted to stand, the judgment should be amended to reflect the jury's

24  verdict.  The judgment for $8 million against Celco and Wang is erroneous and

25  contrary to the verdict, which awarded statutory damages of $4,000,000 against each

26  defendant, based on identical conduct.

27      "If two or more persons are jointly and severally liable for infringement of the

28  same mark on the same type of goods, the plaintiff still receives only one award of

- 23 -

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR NEW TRIAL**

1  statutory damages; the amount is not multiplied by the number of defendants liable."

2  4 Callmann on Unfair Comp., Tr. & Mono., § 22:34 (*citing Louis Vuitton*, 658 F.3d

3  936). As the Ninth Circuit court explained:

> [A] plaintiff may receive a single statutory award for all infringements of
>
> any one copyrighted work from either (1) any one defendant, where that
>
> defendant is separately liable or (2) multiple defendants, where those
>
> defendants are jointly and severally liable. . . . With respect to damages
>
> for contributory trademark infringement, logic compels the same result.

9  *Louis Vuitton*, 658 F.3d at 947. In that case, the jury was asked to specify a separate

10  statutory damage award against each of two defendants, which numbers were then

11  added to provide a total damages award. On appeal, the court held this was error,

12  stating, "There was no legal basis for multiplying the award by the number of

13  defendants." *Id.*

14  Similarly, here, the jury found Defendants Celco and Wang each liable for

15  $4,000,000 in statutory damages, based on alleged contributory infringement of the

16  same trademarks. When it came time to enter judgment, Plaintiffs, over Defendants'

17  objection, requested that judgment be entered holding Defendants jointly and

18  severally liable for a total amount of $8 million. Here, as in *Akanoc,* multiplying the

19  separate damages awards by the number of defendants was error.

20  / / / /

21  / / / /

22  / / / /

23  / / / /

24  / / / /

25  / / / /

26  / / / /

27  / / / /

28  / / / /

STEPHENS FRIEDLAND LLP
4695 MacArthur Court, Suite 1550
Newport Beach, California 92660
Telephone: (949) 468-3200
Facsimile: (949) 468-3201

- 24 -

## V.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that, in the event the Court denies Defendants' concurrently filed Motion for Judgment as a Matter of Law, the Court grant a new trial on the issue of Defendants' liability for each claim asserted and on the issue of damages.

Dated:  September 20, 2013

STEPHENS FRIEDLAND LLP


By:___/s/ John B. Stephens_____
John B. Stephens
Attorneys for Defendants
CELCO CUSTOMS SERVICES CO.
and SHEN HUEI FENG WANG a/k/a
CELINE WANG

STEPHENS FRIEDLAND LLP
4695 MacArthur Court, Suite 1550
Newport Beach, California 92660
Telephone: (949) 468-3200
Facsimile: (949) 468-3201

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION FOR NEW TRIAL**